**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ROBERT HOSSFELD, individually and on behalf of others similarly situated, <br> *Plaintiff*, <br><br> *v.* <br><br> EVERQUOTE, INC., and FARMERS GROUP, INC. <br> *Defendants*. | Case No. 1:26-cv-11440-JCB |

**DEFENDANT EVERQUOTE, INC.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

## I.      INTRODUCTION

Plaintiff's Complaint must be dismissed pursuant to Rule 12(b)(6) because it fails to state plausible claims against EverQuote under the Telephone Consumer Protection Act ("TCPA"), the Texas Telephone Solicitation Act, and Massachusetts common law.

First, regarding Count I, Plaintiff fails to allege that he personally registered his telephone number on the National Do Not Call ("DNC") Registry, as required by the plain text of 47 C.F.R. § 64.1200(c)(2). Because only individuals who avail themselves of the TCPA's protections have a right of action, a plaintiff must affirmatively plead personal registration.

Second, regarding Count II, Plaintiff does not plausibly allege he made a DNC request to EverQuote, and the allegations demonstrate that EverQuote contacted Plaintiff within the reasonable timeframe afforded by law to process such requests. Under 47 C.F.R. § 64.1200(d)(3), a company has a "reasonable" time—up to 10 business days—to honor a do-not-call request. The single challenged text message sent by EverQuote was sent just one day after the alleged opt-out request was made to an independent third party.

1

Third, regarding Count III, Plaintiff fails to plausibly allege that EverQuote is directly or vicariously liable for the challenged prerecorded calls. Plaintiff fails to establish that EverQuote "initiated" the communications, pleading only that EverQuote sold or resold a marketing lead.

Fourth, regarding Count IV, Plaintiff's Texas Telephone Solicitation Act claim is grounded entirely on text messages, which do not qualify as an Automatic Dialing Announcing Device ("ADAD") under Texas law because they inherently lack a prerecorded or synthesized voice.

Finally, regarding Count V, Plaintiff's equitable claim for Massachusetts Common Law Restitution and Disgorgement is barred because Plaintiff has an adequate remedy at law, and it is also defective because Plaintiff fails to plead a measurable economic benefit directly conferred upon EverQuote.

Consequently, Plaintiff's Complaint must be dismissed.

## II.  PLAINTIFF'S ALLEGATIONS

Plaintiff alleges EverQuote and Farmers Group, Inc. ("FGI") violated the TCPA and state laws through a series of telemarketing calls and text messages. Plaintiff alleges that his residential telephone number "has been on the Do Not Call Registry since 2015." *See* Complaint ("Compl.") at ¶ 4. Plaintiff does not allege that he registered the telephone number on the National DNC Registry himself.

Plaintiff alleges he "demanded that the telemarketing calls stop" on March 4, 2026, during a telephone conversation with a caller from the independent "Alexander Holmes Farmers agency." *Id.* at ¶¶ 36, 41. Plaintiff alleges that "Farmers' internal DNC policies and practices do not require that Farmers agents notify the companies from whom they purchase leads (such as EverQuote) of a Do Not Call request." *Id.* at ¶ 42. Despite this, Plaintiff seeks to hold the parties liable for a single follow-up text message sent the very next day, on March 5, 2026. *Id.* at ¶ 43.

2

Plaintiff subsequently alleges that he received a "prerecorded message call on March 9, 2026," and attributes this call to EverQuote because EverQuote allegedly "sold the marketing lead" or was "reselling the lead." *Id.* at ¶¶ 46, 47, 51.

Finally, Plaintiff alleges EverQuote violated the Texas Telephone Solicitation Act because "Defendant's text messages were sent using an automatic dialing system or similar automated technology that qualifies as an automatic dialing announcing device." *Id.* at ¶ 77.

## III.    LEGAL STANDARD

"To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the complaint must state a claim that is plausible on its face." *Doane v. Benefytt Techs., Inc.*, No. CV 22-10510-FDS, 2023 WL 2465628, at *3 (D. Mass. Mar. 10, 2023) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For a claim to be facially plausible, it must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Plausibility does not require probability but 'it asks for more than a sheer possibility the defendant has acted unlawfully.'" *Gibbs v. SolarCity Corp.*, 239 F. Supp. 3d 391, 396 (D. Mass. 2017) (quoting *Iqbal*, 556 U.S. at 678). "While a complaint 'does not need detailed factual allegations,' it 'requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). The complaint must include factual allegations "respecting each material element necessary to sustain recovery under some actionable legal theory." *Katz v. Liberty Power Corp., LLC*, No. 18-CV-10506-ADB, 2019 WL 4645524, at *5 (D. Mass. Sept. 24, 2019) (quoting *Centro Médico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)); *See also Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008).

## IV.    ARGUMENT—THE COURT SHOULD DISMISS PLAINTIFF'S COMPLAINT BECAUSE IT FAILS TO STATE A PLAUSIBLE CLAIM UNDER EITHER THE

## TCPA OR THE TEXAS TELEPHONE SOLICITATION ACT.

**A.**    **Count I Must Be Dismissed Because Plaintiff Fails To Allege That He Personally Registered His Telephone Number On The National DNC Registry.**

The threshold requirement for bringing a claim under the TCPA's DNC provisions is clear and unambiguous: relief is only for a "residential telephone subscriber ***who has registered his or her*** telephone number." 47 C.F.R. § 64.1200(c)(2) (emphasis added). In *Rombough*, the Court confirmed that this language must be applied as written, holding that personal registration of the phone number on the National DNC Registry is a prerequisite to standing. *See Rombough v. Robert D. Smith Ins. Agency, Inc.,* No. 22-CV-15-CJW-MAR, 2022 WL 2713278, at *5 (N.D. Iowa June 9, 2022).. As the court in *Rombough* explained, "The plain language of § 64.1200(c) clearly requires that a person register their own telephone number on the national do-not-call registry to have standing to sue under the TCPA's do-not-call provisions. The regulation's use of the phrase 'registered his or her telephone number' plainly contemplates that the person bringing suit must have been the one to place the number on the registry." *Id.*

This requirement cannot be reinterpreted in light of policy reasoning or legislative intent. Where a statute or regulation's language is plain, courts must give effect to that plain meaning. *Campbell v. Wash. Cnty. Tech. Coll.,* 219 F.3d 3, 6 (1st Cir. 2000) ("As in other cases involving statutory interpretation, we look first to the Act's plain language. Absent ambiguity, the inquiry ends with the text of the statute.") (citations omitted). Following *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, 606 U.S. 146 (2025), this Court must independently interpret the TCPA's implementing regulations under ordinary principles of statutory construction. When it does so, the regulation's text is clear. It protects only "a residential telephone subscriber ***who has registered his or her telephone number***." 47 C.F.R. § 64.1200(c)(2) (emphasis added). The regulation's text expressly mandates personal registration—no ambiguity exists that would

4

justify looking beyond its clear language. *Id*. Thus, standing under the TCPA depends upon the individual's own affirmative act of placing the number on the DNC Registry.

EverQuote acknowledges that some courts disagree with *Rombough*'s interpretation of §  64.1200(c)—that the TCPA's DNC protections do not apply to individuals who did not personally avail themselves of its protection by registering their numbers on the National DNC Registry. For example, the court in *Tschatschula* found *Rombough* unpersuasive, reasoning that "[w]hile it is possible a third party may have registered a plaintiff's phone number before a plaintiff acquired it, this is unlikely given how infrequently people change numbers." *Tschatschula v. Protect My Car*, No. 23-cv-00985-DDD-JPO, 2024 WL 1509162, at \*5 (D. Col, Mar. 6, 2024) (quoting *Callier v. Am.-Amicable Life Ins. Co. of Texas*, No. EP-22-CV-00018-FM, 2022 WL 17732717, at \*6 (W.D. Tex. Oct. 18, 2022)). Similarly, in *Watson*, the court rejected the personal registration requirement for claims under § 64.1200(c), finding that registration on the National DNC Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *See Watson v. Manhattan Luxury Automobiles, Inc*., No. 20 CIV. 4572 (LGS), 2022 WL 4586407, at \*9 (S.D.N.Y. Sept. 29, 2022).

*Tschatschula* and *Watson* do not refute the personal registration requirement; rather, it misreads the regulatory language by suggesting that the phrase "must be honored indefinitely" allows for standing to transfer to subsequent subscribers of a pre-registered number. *See Tschatschula*, 2024 WL 1509162 at \*5. This is incorrect. The full text of the regulation provides: "No person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry . . . **Such** do-not-call registrations must be honored indefinitely…" 47 C.F.R. § 64.1200(c)(2) (emphasis added). The word "such" is a demonstrative adjective that refers back to its

antecedent—here, registrations made by "a residential telephone subscriber **who has registered his or her telephone number**." *Id*. (emphasis added). The phrase "such do-not-call registrations" does not refer to all registrations in the abstract. It refers to the specific type defined in the preceding sentence: those personally made by the subscriber. Those registrations—and only those—"must be honored indefinitely." Reading the second sentence in isolation severs "such" from its antecedent and renders it superfluous. That phrase merely obligates telemarketers to continue honoring a consumer's DNC registration until it is either voluntarily canceled or removed by the database administrator—it does not extend TCPA standing to individuals who never took the affirmative step of registering the number themselves. *Rombough* correctly interprets this provision by holding that only the individual who made the conscious choice to opt into the DNC Registry has the right to enforce its protections.

Legislative history indicates that Congress envisioned consumers proactively placing their numbers on the DNC list to obtain protection. *In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14, 038-39 (2003). Nothing suggests that the protections flow automatically to a new subscriber who did not personally register the number. This interpretation is also consistent with First Amendment principles underlying the DNC framework, which empower individuals to opt in to restrictions on protected speech. *See Martin v. Struthers*, 319 U.S. 141, 148-49 (1943).

Here, Plaintiff's Complaint is completely devoid of any allegation that he personally registered his cellular telephone number on the National DNC Registry. Plaintiff merely alleges in the passive voice that his "residential telephone number, 254-xxx-8888, has been on the Do Not Call Registry since 2015." Compl. at ¶ 4. A plaintiff who personally registered his telephone number on the DNC Registry knows that he did so—it is an affirmative, voluntary act. Plaintiff

did not make that allegation. Instead, Plaintiff fails to allege that he actually registered the phone number on the National DNC list himself, nor does he establish that he was the residential subscriber at the time of the alleged 2015 registration.

Because Plaintiff has failed to plead that he took the affirmative step of registering his telephone number, he has failed to establish that he is a "residential telephone subscriber who has registered his or her telephone number" under the plain, unambiguous language of 47 C.F.R. § 64.1200(c)(2). Consequently, Plaintiff has failed to state a plausible claim for relief and Count I should be dismissed.

**B.      Count II Must Be Dismissed Because Plaintiff Does Not Plausibly Allege He Made A DNC Request To EverQuote And The Alleged Request Was Honored Within A Reasonable Timeframe.**

Section 64.1200(d)(3) provides that "[p]ersons or entities making [telemarketing calls]…must honor a residential subscriber's do-not-call request within a ***reasonable time*** from the date such request is made. This period may not exceed ***10 business days*** from the date of such request." 47 C.F.R. § 64.1200(d)(3) (emphasis added). In other words, a defendant is accorded a "reasonable time," capped at ten business days, to comply with a residential subscriber's DNC request.

The previous version of this provision, which allowed for up to thirty days to comply, has been interpreted by courts to mean what it says—that a defendant has thirty days to comply with a consumer's DNC request. *See Orsatti v. Quicken Loans, Inc.*, No. 2:15-CV-09380 (SVW) (AGR), 2016 WL 7650574, at *7 (C.D. Cal. Sept. 12, 2016) (granting the defendant's motion to dismiss where the plaintiff failed to allege any calls more than 30 days after the plaintiff requested not to be contacted); *Wagner v. CLC Resorts & Devs., Inc.*, 32 F. Supp. 3d 1193, 1198 (M.D. Fla. 2014) (characterizing the provision as a "30–day grace period"); *Ott v. Mortg. Invs. Corp. of Ohio*,

65 F. Supp. 3d 1046, 1065 (D. Or. 2014) (same). Given this interpretation, a plaintiff must allege unauthorized communications that occur beyond this now ten-day window to sustain a claim under Section 64.1200(d)(3).

While EverQuote concedes that some courts have found a "reasonable time" to mean less than the provided time period, it is Plaintiff's burden to demonstrate a plausible claim, and ten days ought to form the presumptive limit at the pleadings stage absent factual allegations that less time is warranted.

Here, Plaintiff contends that a DNC request was made to an independent agency on March 4, 2026, and subsequently, he received a single follow-up text message from EverQuote on March 5, 2026. Compl. ¶¶ 41, 43. This one-day turnaround clearly falls within the ten-day period permitted for compliance under both the regulation and relevant case law.

Moreover, Section 64.1200(d)(3) "requires the institution of certain procedures prior to the initiation of telemarketing calls." *Simmons v. Charter Commc'ns, Inc.*, 222 F. Supp. 3d 121, 131 (D. Conn. 2016) (citation omitted), *aff'd*, 686 F. App'x 48 (2d Cir. 2017). To plausibly allege a violation of Section 64.1200(d)(3), the plaintiff must furnish sufficient factual allegations that plausibly suggest the defendant lacks the requisite safeguards mandated by the regulation. *Id.* at 139-40. ("[I]n order to prove a subsection (d)(3) violation, a plaintiff cannot rely solely on the fact that a provider failed to record or honor an individual's request to be placed on a DNC list. Rather, the plaintiff must establish that the calls he or she received were initiated prior to the implementation of proper procedures."); *Nece v. Quicken Loans, Inc.*, No. 8:16-CV-2605-T-23CPT, 2018 WL 1326885, at *8 (M.D. Fla. Mar. 15, 2018) ("An isolated failure to timely record a do-not-call request establishes no genuine dispute whether Quicken called Nece before

8

instituting a sufficient do-not-call policy."); *Buja v. Novation Capital, LLC*, No. 15-81002-CIV, 2017 WL 10398957, at *4 (S.D. Fla. Mar. 31, 2017).

Here, the only fact Plaintiff has alleged to support his claim that EverQuote did not have the mandated safeguards in place is that EverQuote sent a single follow-up text message on March 5, 2026, just one day after Plaintiff allegedly made a DNC request to the independent "Alexander Holmes Farmers agency." Compl. ¶¶ 35, 41, 43. Furthermore, Plaintiff alleges that "Farmers internal DNC policies and practices do not require that Farmers agents notify the companies from whom they purchase leads (such as EverQuote) of a Do Not Call request." *Id*. at ¶ 42.

In order to have a claim under 47 C.F.R. § 64.1200(d)(3), Plaintiff must plausibly allege that EverQuote lacks proper safeguards and procedures mandated by the provision. An isolated follow-up text—especially one sent merely a day after a DNC request was made to a third party that had no policy requiring it to notify EverQuote, which falls well within the permissible 10-day window provided by the regulation—does not suggest a systemic failure or a disregard of these safeguards. *Simmons*, 222 F. Supp. 3d at 139; *Nece*, 2018 WL 1326885 at *8; *Buja*, 2017 WL 10398957 at *4.

Plaintiff has failed to allege facts demonstrating a pattern or practice of noncompliance by EverQuote. Instead, Plaintiff's claim rests solely on the receipt of one text message within 24 hours of making a DNC request to an independent entity. This simply does not meet the threshold for stating a plausible claim under section 64.1200(d). Consequently, the allegations are implausible and Count II should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

**C.    Count III Must Be Dismissed Because Merely Selling A Lead Does Not Constitute "Initiating" A Prerecorded Call Under The TCPA.**

Under the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), it is unlawful to "initiate any telephone call" to any cellular telephone service using an artificial or prerecorded voice without prior express

consent. To survive a motion to dismiss, a plaintiff must plead facts establishing that a defendant is either directly or vicariously liable for the communication. *Lundstedt v. Deutsche Bank Nat'l Tr. Co.*, No. 3:13-CV-001423 (JAM), 2016 WL 3101999, at \*5 (D. Conn. June 2, 2016)" (dismissing plaintiff's claims because the plaintiff conceded that the defendants did not actually make the calls and there were no fact to suggest the calls were made "at their direction"). Here, Plaintiff has adequately alleged neither.

First, Plaintiff fails to state a claim for direct liability. The Federal Communications Commission clarified that "a person or entity 'initiates' a telephone call when it takes the steps necessary to physically place a telephone call." *In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6583 (2013). A seller or lead generator generally does not physically initiate calls placed by third-party telemarketers. *Id*. at 6583. Therefore, to survive a motion to dismiss on a direct liability theory, a plaintiff must allege a plausible factual basis demonstrating that the defendant actually, physically initiated the telephone call at issue, rather than relying on unadorned, boilerplate conclusions. *Aaronson v. CHW Grp., Inc.*, No. 1:18-CV-1533, 2019 WL 8953349, at \*2 (E.D. Va. Apr. 15, 2019) (finding that the Plaintiff failed to plausibly allege a theory of direct liability where there were no plausible allegations that the defendant physically initiated the alleged calls).

In Count III, Plaintiff attempts to hold EverQuote liable for a prerecorded message call allegedly received on March 9, 2026. Compl. ¶ 46. However, Plaintiff does not allege that EverQuote actually dialed the number, physically placed the call, or operated the equipment that delivered the prerecorded voice. To the contrary, Plaintiff alleges that EverQuote's liability is based on the attenuated theory that EverQuote was the "proximate cause" of the call simply because it "sold the marketing lead" or was "reselling the lead" to an independent third party. *Id*. ¶¶ 47, 51, 53. Under the TCPA, simply selling or transmitting a consumer lead does not establish

10

that the lead generator "initiated" the subsequent call. *See Baltimore-Washington Tel. Co. v. Hot Leads Co., LLC*, 584 F.Supp.2d 736, 746 (D. Md. 2008) (granting defendant's motion to dismiss because the court "[would] not imply expanded liability under the TCPA for aiding and abetting"); *Bank v. Vivint Solar, Inc.*, No. 18-CV-2555 MKB RLM, 2019 WL 1306064, at n.4 (E.D.N.Y. Mar. 22, 2019) (noting that "no court has found that the TCPA provides for aiding and abetting liability").

Second, Plaintiff fails to adequately plead vicarious liability. When direct liability fails, a plaintiff must show that "under federal common-law principles of agency, there is vicarious liability for TCPA violations." *Doane v. Python Leads, LLC*, No. 1:24-CV-12947-JEK, 2025 WL 3485569, at *9 (D. Mass. Dec. 4, 2025). These principles include "not only formal agency, but also principles of apparent authority and ratification." *In re DISH Network*, 28 FCC Rcd. at 6584. Under the common law, a principal can be held liable for her agent's conduct when it "is actually authorized, whether the agent's authority be express or implied." *Doane*, 2025 WL 3485569 at *9 (quoting *In re Atl. Fin. Mgmt., Inc.*, 784 F.2d 29, 31 (1st Cir. 1986)). To adequately plead express authority, a plaintiff must allege facts showing that the telemarketer acted "on the principal's behalf and subject to the principal's control." *Warciak v. Subway Restaurants, Inc.*, 949 F.3d 354, 357 (7th Cir. 2020); *see also Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 449 (9th Cir. 2018).

Plaintiff's Complaint contains no factual allegations demonstrating that EverQuote exercised *any* control over the downstream third-party's automated dialing equipment. Plaintiff simply alleges that EverQuote sold a lead. Compl. ¶ 47. Simply selling or transmitting a consumer lead does not demonstrate that the seller maintained the requisite common-law control over the independent actions of downstream buyers. *See Doane,* 2023 WL 2465628 at *9 (D. Mass. Mar. 10, 2023) (dismissing vicarious TCPA claims because the plaintiff did "not allege facts to plausibly

suggest that defendant exercised control over any of the callers").

Without a plausible factual allegation establishing direct physical initiation or vicarious liability through common-law agency, Count III fails as a matter of law and must be dismissed.

**D.**  **Count IV Must Be Dismissed Because Text Messages Do Not Qualify As An Automatic Dialing Announcing Device Under The Texas Telephone Solicitation Act.**

In Count IV, Plaintiff alleges that EverQuote violated the Texas Telephone Solicitation Act, Tex. Bus. & Com. Code § 305.001 *et seq.*, which prohibits making a telephone solicitation using an ADAD without prior express consent. Tex. Bus. & Com. Code § 305.053.

However, the statute provides a highly specific, conjunctive definition of what constitutes an ADAD. Under Texas law, an ADAD is defined as "automated equipment used for telephone solicitation or collection that can: (A) store telephone numbers to be called or produce numbers to be called through use of a random or sequential number generator; *and* (B) convey, alone or in conjunction with other equipment, *a prerecorded or synthesized voice message* to the number called without the use of a live operator." Tex. Bus. & Com. Code § 305.001(1) (emphasis added).

Plaintiff bases Count IV entirely on the allegation that EverQuote sent him "telemarketing text messages" Compl. ¶ 76. and attempts to conclusively plead that these "text messages were sent using an automatic dialing system or similar automated technology that qualifies as an automatic dialing announcing device." Compl. ¶¶ 76-77.

This legal conclusion contradicts the plain text of the statute. *See Campbell,* 219 F.3d at 6. Text messages are written, digital communications that inherently lack a "prerecorded or synthesized voice message." In fact, recently, although in a TCPA opinion, the Ninth Circuit found exactly this—holding that the statutory term "voice" strictly requires an "audible component." *See Howard v. Republican Nat'l Comm.*, 164 F.4th 1119, 1124-25 (9th Cir. 2026). Because the ordinary meaning of "voice" refers only to audible sounds, the Ninth Circuit concluded that text

12

messages do not constitute the use of a prerecorded voice. *Id.* The analysis is no different here. Because the statute requires the conveyance of a recorded voice, text messages simply do not meet the statutory definition of an ADAD under Texas law. *See* Tex. Bus. & Com. Code § 305.001(1)(B).

Plaintiff cannot rewrite Texas state law to encompass text messages where the statute's clearly only applies when a voice is played. Because Count IV is premised entirely on the receipt of text messages, Plaintiff has failed to plausibly allege the use of an ADAD.  Compl. ¶¶ 75-77. Consequently, Count IV fails to state a plausible claim for relief and must be dismissed.

**E.      Count V Must Be Dismissed Because Plaintiff Has An Adequate Remedy At Law And Fails To Plead A Benefit Conferred.**

In Count V, Plaintiff advances an equitable claim titled "Massachusetts Common Law Restitution and Disgorgement," asserting that EverQuote was unjustly enriched by monetizing his personal information to generate insurance leads. This count must be dismissed for three reasons.

First, Count V is procedurally barred by the "adequate remedy at law" doctrine. Under Massachusetts law, equitable claims such as unjust enrichment are remedies of last resort and cannot be maintained when a plaintiff possesses an adequate remedy at law. The First Circuit enforces this bar, holding that "a party with an adequate remedy at law cannot claim unjust enrichment" even if the legal claim is ultimately unsuccessful on the merits. *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1 (1st Cir. 2017); *Reed v. Zipcar, Inc.*, 883 F.Supp.2d 329, 334 (D. Mass. 2012), *aff'd*, 527 Fed.Appx. 20 (1st Cir. 2013) (noting that the viability of the remedy at law "is beside the point" and the "mere availability" of a remedy at law bars a claim " for unjust enrichment and money had and received"). The "mere availability" of a legal remedy serves as an absolute bar preventing plaintiffs from utilizing unjust enrichment as a "catchall which could apply to otherwise failed claims." *Patenaude v. Orgain, LLC,* 594 F. Supp. 3d 108, 116 (D. Mass. 2022) ("[T]he fact

that the [p]laintiff failed to plead the elements necessary for another contractual or statutory claim does not allow him to assert a claim on a theory of unjust enrichment."). Here, Congress enacted the TCPA to provide a comprehensive, strictly defined legal remedy—including statutory damages of potentially up to $1,500 per violation—for the exact conduct alleged by Plaintiff. Because the TCPA and the Texas Telephone Solicitation Act (Counts I-IV) provide legal remedies for the facts underlying Count V, Plaintiff has an adequate remedy at law, and the equitable claim must be dismissed.

Second, Count V is defective because Plaintiff fails to plead the necessary elements of unjust enrichment. Massachusetts law requires proof of a measurable benefit conferred upon the defendant directly by the plaintiff, accompanied by an "unjust enrichment of one party and unjust detriment to the other party." *Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 57 (1st Cir. 2009) (citation omitted). Plaintiff did not pay EverQuote any money, nor did he suffer an economic detriment that corresponds to EverQuote's alleged financial gain.

Third, a plaintiff cannot claim unjust enrichment for the taking of data for which they never reasonably expected or intended to be compensated. *See Karp v. Gap, Inc.*, 2014 WL 4924229 (D. Mass. Sept. 29, 2014) ("[W]hile it is arguable that The Gap could potentially have benefitted from combining her zip code with other personal identification information to send marketing materials to the plaintiff and other customers…a reasonable person would not expect compensation for providing her zip code in a routine credit card transaction."); *Tyler v. Michaels Stores, Inc.*, 840 F. Supp. 2d 438 (D. Mass. 2012) (same).

As such, this Court should dismiss Count V.

## V.    **CONCLUSION**

For the foregoing reasons, EverQuote respectfully requests that the Court grant its Motion

to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: May 15, 2026                                  Respectfully submitted,

                                                     */s/ Christopher B. Parkerson*
                                                     Christopher B. Parkerson, (BBO#662952)
                                                     Campbell Conroy & O'Neil, P.C.
                                                     20 City Square, Suite 300
                                                     Boston, MA 02129
                                                     Telephone: (617) 241-3075
                                                     cparkerson@campbell-trial-lawyers.com

                                                     AND

                                                     Eric J. Troutman (*pro hac vice forthcoming)*
                                                     Tori L. Guidry (*pro hac vice forthcoming*)
                                                     Blake H. Landis (*pro hac vice forthcoming*)
                                                     Troutman Amin, LLP
                                                     400 Spectrum Center Drive
                                                     Suite 1450
                                                     Irvine, CA 92618
                                                     Telephone: (949) 350-3663
                                                     Facsimile:(949)203-8689
                                                     tori@troutmanamin.com

                                                     *Counsel for Defendant EverQuote, Inc.*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 15, 2026, a copy of the foregoing was filed electronically and served by other electronic means on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by e-mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

                                                     */s/ Christopher B. Parkerson*
                                                     Christopher B. Parkerson