IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT HOSSFELD, individually and on behalf of others similarly situated,<br>          *Plaintiff,*<br><br>*v.*<br><br>EVERQUOTE, INC., and FARMERS GROUP, INC.<br>          *Defendants.* | Case No. 1:26-cv-11440-JCB |

**DEFENDANT EVERQUOTE, INC.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO STRIKE CLASS ALLEGATIONS**

**I.      INTRODUCTION**

It is evident from the face of Plaintiff's Complaint that this action cannot possibly proceed on a classwide basis, warranting an order striking the class allegations under Federal Rule of Civil Procedure 12(f). Because the proposed classes are facially uncertifiable in ways that no amount of discovery can cure, this Court should exercise its authority to strike the class definitions here and now.

First, the proposed DNC Registry Class and Internal DNC Class are impermissibly defined based upon the merits instead of objective criteria because they explicitly predicate membership on individuals who received "telemarketing" communications. Second, these classes are overly broad and lack commonality because they indiscriminately include individuals who received calls regardless of whether those calls were made to individuals with an established business relationship ("EBR"). Finally, the proposed Robocall Class is vague, overly broad, and fails to tie the alleged conduct to the named Defendants' actual legal liability. The Robocall Class sweeps in any prerecorded call simply "arising from a lead that EverQuote sold," regardless of whether

1

EverQuote or Farmers Group, Inc. ("FGI") actually initiated the call or controlled the dialing equipment.

Because these fatal flaws make certification impossible as a matter of law, the class allegations should be stricken in their entirety here and now.

II.    **FACTUAL ALLEGATIONS**

Plaintiff alleges that EverQuote and the Alexander Holmes Farmers® insurance agency made telemarketing calls and text messages to his residential telephone number, (254) 743-8888, which he claims has been listed on the National DNC Registry since 2015 and is also on Farmers' internal DNC list. *See* Complaint ("Compl.") at ¶¶ 4, 24, 30, 34, 43, 46, 48, 49. Plaintiff further alleges that he did not consent to receiving these calls or text messages from or on behalf of either EverQuote or FGI. *Id. at ¶ 10.* Plaintiff merely alleges in the passive voice that his residential telephone number has been on the Do Not Call Registry, but he does not allege that he personally registered the telephone number on the National DNC Registry himself.

Plaintiff alleges that the first call came in at 11:14 AM on March 4, 2026, where the caller stated Plaintiff had requested an auto insurance quote. Plaintiff alleges he told the caller he had not requested a quote, and the caller then terminated the call. *Id. at ¶¶* 24-29. Shortly after the first call dropped, EverQuote allegedly sent a text message stating it had recalculated his requested auto coverage and provided a link to a Progressive insurance advertisement. *Id. at ¶¶* 30-32.

Plaintiff alleges he received a call at 1:00 PM on March 4, 2026, from a caller identifying himself as "JD with Farmers Insurance". During the call, Plaintiff explicitly informed JD that he never agreed to be contacted and demanded the calls stop before JD ended the call. Plaintiff alleges he also received a text message from the Holmes agency. *Id.* at ¶¶ 34-41.

On March 5, 2026, Plaintiff alleges he received a fifth communication in the form of a follow-up text message. *Id.* at ¶¶ 43-45.

Plaintiff alleges the sixth call was received on March 9, 2026, as a prerecorded message advertising auto insurance. Plaintiff attempts to attribute this call to EverQuote reselling his lead as "opt-in" even after he demanded the calls stop. *Id.* at ¶¶ 46-47. Plaintiff claims he received a seventh live telemarketing call on March 10, 2026. *Id.* at ¶¶ 48. Finally, Plaintiff alleges he received an eighth call on March 11, 2026, from a caller who became angry when questioned, prompting Plaintiff to request not to receive any more calls and demand to be placed on the internal DNC list. *Id.* at ¶¶ 49-50.

Based on those allegations, Plaintiff seeks to represent the following three classes:

**DNC Registry Class**: All persons in the United States who received two or more telemarketing calls and/or text messages on their non-business number while such number was on the National Do Not Call Registry, within a 12-month period, where a purpose of such calls included trying to develop business for Farmers, where Farmers did not first obtain a signed, written agreement between the call recipient and Farmers, where the lead was obtained from EverQuote and Farmers did not first obtain a signed written agreement with the recipient authorizing telemarketing calls to that telephone number.

**Internal DNC Class**: All persons in the United States who received two or more telemarketing calls and/or text messages within a 12-month period, where a purpose of such calls included trying to develop business for Farmers, and where the recipient's non-business telephone number was on Farmers' or any of its agents or their vendors' internal Do Not Call List, and the lead called was obtained from EverQuote.

**Robocall Class**: All persons in the United States who received prerecorded or artificial voice calls on their cellular telephone, arising from a lead that EverQuote sold, where such call happened after EverQuote or any entity that purchased such lead received a Do Not Call request or was notified that the recipient did not opt in.

*Id.* at ¶ 46.

## III.    <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 12(f) provides that a "court may strike from a pleading...any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

3

District courts have "considerable discretion to strike material under Rule 12(f)..." *Rovinelli v. Trans World Ent. Corp.*, No. CV 19-11304-DPW, 2021 WL 752822, at \*6 (D. Mass. Feb. 2, 2021) (citing *Alvarado-Morales v. Dig. Equip. Corp.*, 843 F.2d 613, 618 (1st Cir. 1988)) (quotation marks omitted).

When class allegations are challenged at the pleadings stage, the "dispositive question ... is whether the complaint pleads the existence of a group of putative class members whose claims are susceptible of resolution on a classwide basis." *Rovinelli*, 2021 WL 752822 at \*6 (quoting *Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013)). "If it is obvious from the pleadings that [a] proceeding cannot possibly move forward on a classwide basis, district courts use their authority under Federal Rule of Civil Procedure 12(f) to delete the complaint's class allegations." *Downing v. Keurig Green Mountain, Inc.*, No. 1:20-CV-11673-IT, 2021 WL 2403811, at \*7 (D. Mass. June 11, 2021) (striking a nationwide class because it included members without a claim under the relevant statute) (quoting *Manning*, 725 F.3d at 59) (alterations in original). Indeed, "[j]udges in this District have demonstrated a willingness to grant motions to strike class allegations." *Rovinelli*, 2021 WL 752822 at \*6 (collecting cases).

## IV.   ARGUMENT—PLAINTIFF'S PROPOSED CLASS DEFINITIONS MUST BE STRICKEN BECAUSE THEY ARE FACIALLY UNCERTIFIABLE AS A MATTER OF LAW.

### A.   The Proposed Classes Are Overly Broad As Defined.

A class is overbroad and uncertifiable where it contains a large number of potential members who have "no grievance" with the defendant. *Kohen v. Pac. Inv. Mgmt. Co. LLC & PIMCO Funds*, 571 F.3d 672, 678 (7th Cir. 2009) ("[A] class should not be certified if it contains a great many of persons who have suffered no injury."); *Walewski v. Zenimax Media, Inc.*, 502 F. App'x 857, 861 (11th Cir. 2012) (affirming denial of class certification where proposed class

definition "impermissibly include[d] members who have no cause of action"); *Lackawanna Chiropractic P.C. v. Tivity Health Support, LLC*, No. 18-CV-00649-LJV-JJM, 2019 WL 7195309, at *3 (W.D.N.Y. Aug. 29, 2019), *report and recommendation adopted*, No. 18-CV-649, 2019 WL 7194525 (W.D.N.Y. Dec. 26, 2019) (citing *Vigus v. Southern Illinois Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 235 (S.D. Ill. 2011) (holding that when a proposed class includes a substantial number of people who voluntarily gave their numbers and have no grievance, their inclusion renders it overbroad and unfit for certification)); *Rivera v. Harvest Bakery Inc.*, 312 F.R.D. 254, 268 (E.D.N.Y. 2016) (holding that the proposed class definition was overbroad).

This is true because some class members do not "share a viable claim." *A Custom Heating & Air Conditioning, Inc. v. Kabbage, Inc.*, No. 16 C 2513, 2018 WL 488257, at *4 (N.D. Ill. Jan. 18, 2018); see *Spine & Sports Chiropractic, Inc. v. ZirMed, Inc.*, No. 3:13-CV-00489-TBR, 2014 WL 2946421, at *10 (W.D. Ky. June 30, 2014) (holding the class definition is overbroad in that it includes persons who have no claim under the TCPA.); *McElhaney v. Eli Lilly & Co.*, 93 F.R.D. 875, 878 (D.S.D. 1982) ("The definition of a class cannot be so broad as to include individuals who are without standing to maintain the action on their own behalf."). And where overbreadth is apparent at the pleadings stage, a class is properly stricken. *PFT of Am., Inc. v. Tradewell, Inc.*, No. 98 Civ. 6413, 1999 WL 179358, at *1 (S.D.N.Y. Mar. 31, 1999) (striking class claims where the class was not sufficiently defined).

Allowing an overbroad class to proceed past the pleadings stage creates an inherent unfairness to the defendant in view of the "in terrorem character of a class action." *Kohen*, 571 F.3d at 678; see also *Barnes v. Coca-Cola Co.*, No. 1:22-CV-01511-KJM-EPG, 2025 WL 1027431, at *5 (E.D. Cal. Apr. 7, 2025) ("Coca-Cola—like all defendants facing suit—is 'entitled to know the class definition being alleged against them.'") (citation omitted). This is particularly true in

5

TCPA class actions where the statute provides for a minimum of $500 in statutory damages per violation. 47 U.S.C. § 227(c)(5); see also *Kohen*, 571 F.3d at 677-78 ("When the potential liability created by a lawsuit is very great, even though the probability that the plaintiff will succeed in establishing liability is slight, the defendant will be under pressure to settle rather than to bet the company...").

Here, Plaintiff's proposed DNC Registry Class, Internal DNC Class, and Robocall Class are overly broad because they indiscriminately encompass individuals who lack any valid legal claim against EverQuote or FGI. First, the DNC class definitions fail to exclude the significant number of individuals who provided consent or had an established business relationship ("EBR") with the caller. Second, the Robocall Class improperly sweeps in individuals who received prerecorded calls merely because EverQuote "sold" a lead, ignoring whether Defendants actually initiated the calls. Because these distinct failures guarantee the inclusion of uninjured, standing-less class members, striking the class definitions at this early stage is fully warranted.

*1.    The DNC Classes Are Overly Broad Because They Include Individuals Who Had An Established Business Relationship With Defendants.*

Courts routinely reject class definitions that include members for whom issues of individualized defenses arise. *See Leon v. Loandepot.com, LLC*, No. 2:25-CV-01787-JLS-AGR, 2025 WL 2632396, at *3 (C.D. Cal. Aug. 22, 2025) (striking class as overly broad because it included individuals who consented and had an EBR); see also *Ung v. Universal Acceptance Corp.*, 319 F.R.D. 537, 540 (D. Minn. 2017) (noting individualized proof prevents the class from being cohesive); *Brown v. Nano Hearing Tech Opco, LLC*, No. 3:24-CV-00221-BTM-JLB, 2024 WL 3367536, at *8-9 (S.D. Cal. July 9, 2024) (finding that the plaintiff's class was flawed because it included individuals who lacked standing under the TCPA); see also *Martinez v. TD Bank USA, N.A.*, No. CV 15-7712(JBS/AMD), 2017 WL 2829601, at *12 (D.N.J. June 30, 2017); *Warnick v.*

*Dish Network LLC*, 301 F.R.D. 551, 559 (D. Colo. 2014) (denying class certification and finding that the class was overbroad); *Jamison v. First Credit Servs.*, 2013 WL 3872171, at *8 (N.D. Ill. July 29, 2013) (explaining that the proposed class potentially included thousands of individuals who had no grievance under the TCPA, making the class overly broad).

Under the TCPA's implementing regulations, the term "telephone solicitation" is defined to expressly exclude calls made to individuals who have an EBR with the caller. *See* 47 C.F.R. § 64.1200(f)(15). Consequently, individuals who had an EBR with EverQuote or Farmers Insurance Exchange suffered no legal injury and lacked Article III standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("Every class member must have Article III standing in order to recover individual damages. 'Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not.'"). "[A] proposed class m[a]y be deemed overly broad if it 'would include members who have not suffered harm at the hands of the [d]efendant and are not at risk to suffer such harm.'" *Brashear v. Perry Cnty., Ky.*, No. CIV.A. 6:06-143 DCR, 2007 WL 1434876, at *2 (E.D. Ky. May 14, 2007).

Here, Plaintiff's proposed DNC Registry Class and Internal DNC Class broadly capture anyone who received telemarketing calls or text messages, without carving out those who had an EBR. Because the definitions indiscriminately sweep in uninjured individuals, they are fatally overbroad. *See Barnes*, 2025 WL 1027431, at *5; *Brown*, 2024 WL 3367536, at *8. Because the proposed classes do not exclude such individuals, a potentially large portion of its members possess no viable claim, making it incurably overbroad.

**2.    *The Robocall Class Is Overly Broad Because It Fails To Tie The Alleged Conduct To Defendants' Actual Legal Liability.***

The Robocall Class is also inherently overbroad because it fails to tie the alleged conduct to the named Defendants' actual legal liability. The class definition broadly sweeps in any

prerecorded call simply "arising from a lead that EverQuote sold," regardless of whether EverQuote or FGI actually initiated the call or controlled the dialing equipment.

Under the TCPA, simply selling or transmitting a lead does not establish that the lead generator "initiated" the call or exercised any control over the downstream third-party's automated dialing equipment. *See League of Women Voters of New Hampshire v. Kramer*, No. 24-cv-73-SM-TSM, 2025 WL 919897, at \*11 (D.N.H. Mar. 26, 2025) (citation omitted) (noting the FCC has interpreted the term "initiate" to mean that "a person or entity 'initiates' a telephone call when it takes the steps necessary to physically place a telephone call, and generally does not include persons or entities, such as third party retailers that might merely have some role, however minor, in the causal chain that results in the making of a telephone call"); *see also In re Dish Network, LLC*, 28 FCC Rcd. 6574, 6583-84 ¶ 27 (2013) (Declaratory Ruling) (noting a seller may be deemed to have initiated a call only where it is "so involved in the placing of a specific telephone call as to be directly liable for initiating it — by giving the third party specific and comprehensive instructions as to timing and the manner of the call, for example"). By defining the class solely on the basis of the sale of a lead, the proposed Robocall Class guarantees the inclusion of members who have no valid legal claim against EverQuote, because EverQuote is not strictly or vicariously liable for the dialing methods of independent third parties. Because this defect ensures that the class includes individuals who lack a viable claim against EverQuote, the Robocall Class is overly broad and must be stricken.

## B.    The Proposed Class Members Lack Commonality.

"The commonality requirement [of Federal Rule of Civil Procedure 23] demands only that there be 'questions of law or fact common to the class.'" *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009) (citation omitted). A class that lacks commonality is also not

certifiable. *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 477-78 (8th Cir. 2016) ("Under Rule 23(a), a district court may certify a class only if it 'is satisfied, after a rigorous analysis,' that the four threshold requirements are met" which includes "commonality of legal or factual questions.") (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). "If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question*." Messner v. Northshore Univ. Health Sys*., 699 F.3d 802, 815 (7th Cir. 2012) (quoting *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir.2005)). In other words, there must be at least one "common contention" that "is central to the validity" of the claims and that can be resolved "in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Here, the same defects that render the proposed classes overly broad inherently destroy the requisite Rule 23 commonality. Because the DNC Registry Class and Internal DNC Class definitions indiscriminately include individuals regardless of whether those calls were made to persons with an EBR, determining class membership and liability cannot be resolved "in one stroke." Instead, assessing whether each class member had an EBR with Defendants is a classic individualized inquiry. It requires a member-by-member factual analysis of specific past interactions, transactions, or inquiries between that individual and EverQuote or Farmers Insurance Exchange, instantly splintering any potential common questions.

Similarly, the Robocall Class lacks commonality because it vaguely sweeps in any prerecorded call simply "arising from a lead that EverQuote sold," regardless of whether EverQuote or FGI actually initiated the call or controlled the dialing equipment. To establish liability, the Court would be forced to determine on a member-by-member basis who actually

initiated the call or exercised control over the downstream third-party's automated dialing equipment. This simply cannot be answered with common, class-wide proof.

Because the claims of the proposed classes will inevitably depend on evidence that varies from member to member, commonality is absent on the face of the pleadings. No amount of discovery can cure this deficiency, and the class allegations must therefore be stricken.

**C.    The Proposed Classes Are Uncertifiable Because They Are Not Defined On Objective Criteria And Instead Depend On Resolution Of Merits Inquiries.**

A class must be defined using administratively feasible, objective-based criteria. *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 996 (8th Cir. 2016) (citing *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 525 (6th Cir. 2015) (For "a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria."); *Byrd v. Aaron's Inc.*, 784 F.3d 154 (3d Cir. 2015), as amended (Apr. 28, 2015) (explaining that a class must be defined with reference to objective criteria in order to be ascertainable); see also *de Lacour v. Colgate-Palmolive Co.*, 338 F.R.D. 324, 339 (S.D.N.Y. 2021), *lv. to app. den.*, No. 21-1234, 2021 WL 5443265 (2d Cir. Sept. 16, 2021) ("[A] class must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member, and must be defined by objective criteria that are administratively feasible, such that identifying its members would not require a mini-hearing on the merits of each case.") (internal quotation marks omitted) (citation omitted). A class defined based upon the merits of a claim is simply not certifiable. *St. Louis Heart Ctr., Inc. v. Vein Centers for Excellence, Inc.*, No. 4:12 CV 174 CDP, 2017 WL 2861878, at *5-6 (E.D. Mo. July 5, 2017) (decertifying class where class was based on objective criteria and therefore, not ascertainable).

This is so because merits determinations must not be made at the certification stage—yet a class defined based upon the merits of a claim assures that all members of a class have already won on a critical substantive issue. *MSP Recovery Claims v. Plymouth Rock Assur. Corp., Inc.*, 404 F. Supp. 3d 470, 485 (D. Mass. 2019); *see also Brown v. Electrolux Home Products, Inc.*, 817 F.3d 1225, 1234 (11th Cir. 2016) (explaining that a "district court can consider the merits 'only' to the extent 'they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.'") (citation omitted). A class must therefore be ascertainable without inquiring into the merits of the case. *St. Louis Heart Ctr., Inc.*, 2017 WL 2861878 at *5 ("There is no objective criterion available to accurately identify potential class members, making the class unascertainable."); *Saf-T-Gard Int'l, Inc. v. Wagener Equities, Inc.*, 251 F.R.D. 312, 314 (N.D. Ill. 2008) ("The court must assess the appropriateness of class certification without regard to the merits of the case.") (quoting *Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 474 (7th Cir.1997)); *Sowders v. Scratch Fin., Inc.*, No. 3:23-CV-56, 2023 WL 7525900, at *9-10 (S.D. Ohio Nov. 14, 2023) (granting the defendant's motion to strike the plaintiff's class allegations where the proposed class definition included those who received a fax "not including the opt-out notice required by 47 U.S.C. § 227(b)(2)(D)" because this definition improperly predicated class membership on the ultimate legal conclusion of the claim).

Here, Plaintiff's proposed DNC Registry Class and Internal DNC Class are impermissibly defined by ultimate merits determinations rather than objective, administratively feasible criteria. Specifically, class membership hinges entirely on whether an individual received a "telemarketing" call or text message. To simply identify who belongs in the classes, this Court would be forced to conduct a massive, individualized review of the specific content and context of every single communication to determine if it legally constitutes "telemarketing" under the TCPA.

11

These are plainly merit determinations. *Weister v. Vantage Point AI, LLC*, No. 8:21-CV-1250-SDM-AEP, 2022 WL 3139373, at *7-8 (M.D. Fla. Aug. 3, 2022), motion to certify appeal denied, No. 8:21-CV-1250-SDM-AEP, 2022 WL 7026495 (M.D. Fla. Oct. 12, 2022) (considering whether the at-issue calls are "telemarketing" a merits challenge); *Broking v. Green Brook Buick GMG Suzuki*, No. CV151847BRMLHG, 2017 WL 3610490, *5-6 (D.N.J. Aug. 22, 2017) (finding that the at-issue call from the defendant did not violate the TCPA because it did not constitute telemarketing); *Daniel v. Five Stars Loyalty, Inc.*, No. 15-CV-03546-WHO, 2015 WL 7454260, *6-7 (N.D. Cal. Nov. 24, 2015) (dismissing a complaint where the text sent by defendant did not violate the TCPA because it was not telemarketing).

The assumption that any merit has been met by allowing, rather than striking, these class definitions would be highly prejudicial to EverQuote. Because this defect is incurable and apparent on the face of the Complaint, this Court should strike the class allegations here and now.

**C.        The Proposed Class Definitions Are Unduly Vague.**

"Courts have also rejected class definitions that are overly broad, amorphous or vague." *In re Fosamax Prod. Liab. Litig.*, 248 F.R.D. 389 (S.D.N.Y. 2008) (citation omitted). "Vagueness is a problem because a court needs to be able to identify who will receive notice, who will share in any recovery, and who will be bound by a judgment." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 660 (7th Cir. 2015). Indeed, "[c]lass definitions have failed [the ascertainability] requirement when they were too vague or subjective" *Id.* at 657.

Before a court may certify a class, "the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *Young v. Nationwide Mut. Ins. Co*., 693 F.3d 532, 537-38 (6th Cir. 2012)

(citation omitted). A class definition that is "too vague to enable a proper determination of who is a class member" cannot stand. *Ligon v. City of New York*, 288 F.R.D. 72, 83 (S.D.N.Y. 2013).

Here, the proposed Robocall Class is impermissibly vague due to the use of the phrase "arising from a lead that EverQuote sold." Compl. at ¶ 46. The definition completely lacks requisite clarity for the Court to accurately determine who is a member of the proposed class because "arising from" is an amorphous concept that turns on subjective and undefined criteria. It is entirely unclear whether this phrase encompasses only the immediate purchaser of the lead, or if it extends to a downstream buyer of a buyer, or any independent third party further down the chain who happens to dial the number.

Without objective boundaries defining what it means for a call to "arise from" a sold lead, the Court would be forced to engage in an administratively unfeasible guessing game to determine which prerecorded calls have a sufficient causal nexus to EverQuote. Because the definition simply lacks the precision required to identify class members, who will share in recovery, or who will be bound by a judgment, the class is inherently flawed and must be stricken.

## V.     **CONCLUSION**

For the foregoing reasons, EverQuote respectfully requests that the Court strike Plaintiff's class allegations in their entirety.

Dated: May 15, 2026                          Respectfully submitted,

                                             */s/ Christopher B. Parkerson*
                                             Christopher B. Parkerson, (BBO#662952)
                                             Campbell Conroy & O'Neil, P.C.
                                             20 City Square, Suite 300
                                             Boston, MA 02129
                                             Telephone: (617) 241-3075
                                             cparkerson@campbell-trial-lawyers.com

                                             AND

13

Eric J. Troutman (*pro hac vice forthcoming)*
Tori L. Guidry (*pro hac vice forthcoming*)
Blake H. Landis (*pro hac vice forthcoming*)
Troutman Amin, LLP
400 Spectrum Center Drive
Suite 1450
Irvine, CA 92618
Telephone: (949) 350-3663
Facsimile:(949)203-8689
tori@troutmanamin.com

*Counsel for Defendant EverQuote, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 15, 2026, a copy of the foregoing was filed electronically and served by other electronic means on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by e-mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

*/s/ Christopher B. Parkerson*
Christopher B. Parkerson

14