**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| ROBERT HOSSFELD, individually and on behalf of others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:26-cv-114400-RGS |
| EVERQUOTE, INC. and FARMERS GROUP, INC., | ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANT FARMERS GROUP, INC.'S MEMORANDUM OF REASONS IN SUPPORT OF ITS MOTION TO DISMISS AMENDED COMPLAINT**

Defendant Farmers Group, Inc. ("FGI") submits the memorandum in support of its Motion to Dismiss Plaintiff's Amended Complaint.

**I.    INTRODUCTION**

In the original Complaint and the Amended Complaint, Plaintiff seeks to hold FGI vicariously liable for a telemarketing call initiated by EverQuote and a call and text message initiated by an independent contractor insurance agency owned by Alexander Homes ("Holmes Agency") promoting Farmers® branded automobile insurance allegedly made in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c) and the Texas Telephone Solicitation Act ("Texas Act"), Tex. Bus. & Com. Code § 305.001 *et seq*. *See* Am. Compl., Counts I, II, III. FGI filed a Motion to Dismiss the original Complaint on May 15, 2026. Dkt. 28.

Citing to admissions in the Complaint, the express terms of the Agent Appointment Agreement referenced and relied on in the Complaint, and publicly available information from the Texas Department of Insurance showing that FGI is not an insurance company and has not

appointed either EverQuote or the Holmes Agency to sell FGI's products or services, FGI argued that Plaintiff failed to state any cause of action against FGI.

In the original Complaint, Plaintiff admitted that FGI did not make any of the calls or send any text messages to Plaintiff. Therefore, FGI cannot be held directly liable for any alleged violations.

The Complaint failed to allege any facts that could support the inference that the two entities that contacted Plaintiff, EverQuote and the Holmes Agency, were acting as FGI's common law agents. Plaintiff admitted that FGI is not a party to the Agent Appointment Agreement between Farmers Insurance Exchange, Fire Insurance Exchange, Truck Insurance Exchange, Mid-Century Insurance Company, and Farmers New World Life Insurance Company ("FNWL", and collectively the "Insurance Companies") and the Holmes Agency. Because FGI is not a party to the Agent Appointment Agreement, it had no right to control the actions of either entity and neither entity had any ability to affect FGI's legal relations with third parties. *See Morales-Posada v. Cultural Care, Inc.*, 141 F.4th 301, 309 (1st Cir. 2025)

Rather than responding to the motion, Plaintiff filed an Amended Complaint on May 15, 2026. Dkt. 28. None of the new allegations cure the fatal deficiencies in the original Complaint. No amount of amending could. The admissions, contract terms, and Department of Insurance records demonstrate that FGI cannot be held directly or vicariously liable for any of the calls or text messages.

1) Plaintiff once again admits that FGI did not make any of the calls or send any of the text messages to Plaintiff. The calls and texts messages came from EverQuote and the Holmes Agency. Because direct liability under the TCPA and Texas Act only applies to the entity that makes the call or sends the text message, FGI cannot be held directly liable for any alleged violations.

*Lundstedt v. Deutsche Bank Nat'l Tr. Co.*, No. 3:13-CV-001423 (JAM), 2016 WL 3101999, at \*5 (D. Conn. June 2, 2016)" (dismissing plaintiff's claims because the plaintiff conceded that the defendants did not actually make the calls and there were no fact to suggest the calls were made "at their direction").

2) FGI cannot be held vicariously liable for calls or texts made by EverQuote or the Holmes Agency. Neither entity was calling on behalf of FGI as its common law agent. The calls and text message were about auto insurance. Under Texas law, an insurance agent cannot quote or offer to sell insurance for an insurance company unless that insurer has appointed the insurance agent with the Texas Department of Insurance. Tex. Ins. Code Ann. § 4001.201 (Vernon). FGI is not an insurance company. FGI does not sell insurance. *See* Ex. 1, Declaration of Brian I. Hays, ¶¶ 3, Ex. A. Because it is not an insurance company offering insurance, FGI has not appointed either EverQuote or Alexander Holmes with the Texas Department of Insurance. *Id.*, Exs. C, D. Any calls or text messages Plaintiff received were not promoting FGI's products or services.

3) Plaintiff admits that FGI is not a party to the Agent Appointment Agreements signed by Alexander Holmes and the Insurance Companies. Am. Compl., p. 19 ¶ 112[1] ("the exchanges are the nominal principal listed in the AAA"); *see also*, Ex. 2 (Agent Appointment Agreement). Because FGI is not a party to the Agent Appointment Agreement, Plaintiff cannot allege that the independent insurance agency was acting as FGI's common law agent.

4) The Amended Complaint again fails to allege any facts that would support the inference that EverQuote was acting as FGI's common law agent. Plaintiff admits that EverQuote contacts consumers as part of its business of generating and then selling leads to EverQuote's customers.

---

[1] FGI notes that the paragraph numbering in the Amended Complaint is inconsistent and out of order. Citations are made to the page and paragraph number to assist the Court.

Plaintiff admits that EverQuote sold his information as a lead to multiple customers, including Progressive – a competitor of the Holmes Agency and the Insurance Companies. Plaintiff further admits that the Holmes Agency purchased the lead directly from EverQuote. A commercial contract between a buyer and a seller does not create an agency relationship. *McDermet v. DirecTV, LLC*, No. 19-11322-FDS, 2021 WL 217336, at *4 (D. Mass. Jan. 21, 2021).

5) Finally, the allegation that FGI is the parent company of FNWL does not support holding FGI liable for the actions of its subsidiary. The Amended Complaint fails to allege any facts that would support piercing the corporate veil to hold FGI liable for any conduct by FNWL, much less telephone solicitations made by EverQuote or an independent contractor of FNWL.

The Amended Complaint's failings are material, dispositive, substantive deficiencies. The admissions fatally undermine Plaintiff's claims against FGI. Plaintiff failed to state any cause of action against FGI under the standards of Rule 8, *Iqbal*, and *Twombly*.

## II.    RELEVANT AMENDED COMPLAINT ALLEGATIONS AND BACKGROUND

FGI is not an insurance company and does not sell insurance. Ex. 1, Hays Decl., Ex. A.[2] Farmers Insurance Exchange has appointed FGI as its attorney-in-fact. Am. Compl., p. 5 ¶ 18. As reciprocal insurance exchanges, the Farmers Insurance Exchange, Fire Insurance Exchange and Truck Insurance Exchange are owned by the subscriber insureds who purchase insurance policies. *See* Cal. Ins. Code §§ 1300-1310. FGI has no ownership interest in any of the Exchanges or their subsidiary insurance companies. *Id*.

---

[2] The Court may take judicial notice of records from the Texas Department of Insurance. *See Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) (allowing courts to consider official public records on a motion to dismiss); *Friedman v. Torchmark Corp.*, No. 12-CV-2837, 2013 WL 4102201, at *2 (S.D. Cal. Aug. 13, 2013) (dismissing TCPA complaint and taking judicial notice of information obtained through the California Department of Insurance).

Farmers Insurance Exchange owns the service marks "Farmers," "Farmers Insurance," "Farmers Insurance Group," and "Farmers Insurance Group of Companies." Ex. 1, Hays Decl. Ex. B.[3]

The Exchanges and FNWL enter into Agent Appointment Agreements with independent contractor insurance agents, like Alexander Holmes ("Holmes Agency"). Am. Compl., p. 19 ¶ 110. A copy of Mr. Holmes' Agent Appointment Agreement is attached as Exhibit 2.[4] FGI is not a party to the Agent Appointment Agreements.

Under the terms of the Agent Appointment Agreement, insurance agents are independent contractors with "the sole right to control all Agency operations and determine the time, place, and manner in which Agent's duties and other objectives of the [Insurance Companies] are met." Ex. 2, ¶ N. The independent insurance agent has the "right to choose the persons to be solicited and the area wherein solicitation is conducted." *Id.*

FNWL is a Washington stock corporation. FGI is the parent company of FNWL. Am. Compl., p. 19 ¶ 110.

EverQuote is an online insurance lead generator and aggregator that finds consumers who are interested in purchasing insurance. EverQuote sells the leads to its customers – insurers, insurance agents, and telemarketers. Am. Compl., p. 3 ¶ 15. EverQuote sells some leads as "warm-transfers" where EverQuote will call the consumer and then transfer the consumer to one of EverQuote's customers. Am. Compl., p. 5 ¶ 16.

---

[3] The Court may take judicial notice of records from the United States Patent and Trademark Office. *Watterson*, 987 F.2d at 3 (allowing courts to consider official public records on a motion to dismiss).

[4] The Court may take judicial notice of the Agent Appointment Agreement because it is referenced in and integral to Plaintiff's Amended Complaint. *Watterson*, 987 F.2d at 3 (allowing courts to consider "documents central to plaintiffs' claim" and "documents sufficiently referred to in the complaint" on a motion to dismiss). Plaintiff seeks to hold FGI liable under the theory that the Holmes Agency was acting as FGI's common law agent under to the terms of the Agent Appointment Agreement. Am. Compl., pp. 7-8 ¶¶ 34-40.

On March 4, 2026, EverQuote sold Plaintiff's information as a lead to the Holmes Agency. Am. Compl., pp. 2, 6 ¶¶ 6, 24, 28. EverQuote called Plaintiff's phone using the caller ID "Farmers Agent." Am. Compl., p. 6 ¶ 25. Plaintiff does not allege that EverQuote quoted him an insurance policy offered by the Exchanges or FNWL. EverQuote is not appointed with the Texas Department of Insurance to sell Farmers® branded insurance. Ex. 1, Hays Decl., Ex. C. Plaintiff does not allege that EverQuote referenced FGI during the call. Rather, EverQuote told Plaintiff the call would be transferred to the Holmes Agency. Am. Compl., p. 6 ¶ 27. Plaintiff does not allege that he asked EverQuote to stop calling or put him on its internal DNC list.

Approximately 45 minutes later, an employee of the Holmes Agency called Plaintiff. Am. Compl., pp 7-8 ¶¶ 34-38. Plaintiff spoke with the Holmes Agency's employee who stated he was "with Farmers Insurance." Am. Compl., p. 8 ¶ 38. Plaintiff does not allege that the Holmes Agency made any reference to FGI during the call or in the text message. While Holmes has been appointed to sell insurance for the Insurance Companies, he has not been appointed to sell insurance for FGI, because FGI is not an insurance company. Ex. 1, Hays Decl., Ex. D. The Amended Complaint does not allege that the Holmes Agency offered to sell FGI's products or services to Plaintiff.

EverQuote also sold the Plaintiff as a lead to other EverQuote customers. EverQuote texted Plaintiff with a link to Progressive's website on March 4, 2026. Am. Compl., p. 7 ¶ 30. EverQuote sent a second text on March 5, 2026. EverQuote did not reference any of its customers in this text message. Am. Compl., ¶¶ 43-44. Plaintiff received three more calls on March 9, 10 and 11, 2026, that Plaintiff attributes to other customers of EverQuote who purchased Plaintiff's information. None of these calls referred to any specific insurance company. Am. Compl., pp 9-10 ¶¶ 46-53.

## III.    LEGAL STANDARD

Under Rule 12(b)(6), a complaint must be dismissed unless it "contain[s] sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although the Court accepts well-pleaded factual allegations as true, this tenet is "inapplicable to legal conclusions." *Id.*; *see also Verlus v. Experian Info. Sols., Inc.*, No. 23-CV-11426-DJC, 2025 WL 836588, at *1 (D. Mass. Mar. 17, 2025) ("Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit.") (quotations omitted). A complaint that rests on "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" will not survive a motion to dismiss. *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996).

In ruling on a motion to dismiss, the Court may consider material falling under the limited exception of: "documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for document sufficiently referred to in the complaint." *Watterson*, 987 F.2d at 3.

After stripping away the "conclusory statement[s]" in a complaint, the remaining factual allegations must do more than "create[] a suspicion of a legally cognizable right of action"; they must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 561 (citation and quotations omitted).

## IV.   ARGUMENT

Counts I, II, and III[5] Should Be Dismissed Because Plaintiff Failed to Allege Facts to Support Any Theory of Direct or Vicarious Liability Against FGI.

### A.   Plaintiff Has Not Alleged Facts Demonstrating that FGI Is Directly Liable for Making Any of the Alleged Calls or Sending Any Text Messages.

Direct liability under the TCPA can only exist against the actual "maker" of the call(s) at

---

[5] Count III under the Texas Act is derivative of Plaintiff's TCPA counts. Am. Compl. p. 32 ¶ 73. *See also* Tex. Bus. & Com. Code § 305.053(a) (a person who "receives a communication that violates 47 U.S.C. § 227" or "a regulation adopted under that provision, … may bring an action in this state" against the caller). The Texas Act "proscribes

7

issue, *i.e.*, the party that physically placed the calls. *Doane v. Benefytt Tech., Inc.*, No. 22-10510-FDS, 2023 WL 2465628 at *8 (D. Mass. Mar. 10, 2023) (dismissing complaint where plaintiff failed to allege that defendant made the calls). Plaintiff argues that FGI "created and facilitates" the system where calls are made, had policies "contrary to the TCPA," and the TCPA allows such liability. While there might be some instances of indirect liability (there is not here), the law is clear that direct liability requires the party to have physically placed the call. Am. Compl. p. 31 ¶ 131. *See Karon v. CNU Online Holdings, LLC*, No. 18 C 7360, 2019 WL 3202822, at *2 (N.D. Ill. July 16, 2019) (noting that only parties that personally physically place the offending call are "directly liable" for violating the TCPA).

In this case, Plaintiff admits that FGI did not make any of the alleged calls or send any text messages to Plaintiff. Plaintiff admits he received calls and text messages from EverQuote and a call and text message from the Holmes Agency. Am. Compl. pp. 6-8 ¶¶ 27, 34-35, 40. Because Plaintiff admits that FGI did not place any of the marketing calls or texts, FGI cannot be directly liable under the TCPA or the Texas Act.

### B. Plaintiff Fails to Allege Facts that Could Support Holding FGI Vicariously Liable for Any of the Solicitations.

Because FGI did not place any of the calls, Plaintiff's only potential avenue for stating a cause of action under the TCPA and Texas Act against FGI would be to allege facts sufficient to support a theory of vicarious liability. *See Smith v. Liberty Mut. Ins. Co.*, No. 1:20-CV-11583-ADB, 2021 WL 1581017, at *4 (D. Mass. Apr. 22, 2021). The Amended Complaint fails in this respect as well.

Three theories of agency could support vicarious liability: (1) actual authority; (2) apparent

---

only conduct which is also prohibited by the TCPA. If no violation of the TCPA exists, there is no violation" of Section 305.053(a). *Hunsinger v. Dynata LLC*, No. 3:22-CV-00136-G-BT, 2023 WL 2377481, at *7–8 (N.D. Tex. Feb. 7, 2023).

authority; and (3) ratification. *Rowan v. Pierce*, No. CV 20-1648 (RAM), 2023 WL 5672575, at *9 (D.P.R. Sept. 1, 2023) (citing *In re DISH Network, LLC*, 28 F.C.C.R. 6574, 6590 n.124 (2013)). To plead the existence of an agency relationship under any theory, a plaintiff must allege a factual predicate to create the inference of agency. *See Smith v. Liberty*, 2021 WL 1581017, at *4 ("The plaintiff must plausibly allege only that a third party was acting as an agent of defendant, i.e. that defendant exercised control over, ratified or openly authorized the third party's actions.") (cleaned up).

Where a plaintiff attempts to rely on conclusory statements to establish an agency relationship, the complaint should be dismissed. *Id.* (dismissing TCPA complaint where plaintiff failed to allege "facts connecting defendant and/or its third party 'aggregators' with the conduct of the callers that contacted Plaintiff.");  *Daneshrad v. Trean Grp., LLC*, No. 20 C 3887, 2020 WL 11422811, at *5 (N.D. Ill. Dec. 21, 2020) (dismissing case, in part, due to "merely speculative" and "conclusory" allegations of an agency relationship); *see also Warciak v. Subway Rests., Inc.*, 949 F.3d 354, 357 (7th Cir. 2020) (affirming dismissal of TCPA claim where "complaint failed to include enough facts to state a plausible claim for relief under the legal theory of vicarious liability.").

### 1. Plaintiff Alleges No Facts to Support His Argument that the Holmes Agency Was FGI's Agent.

An agency relationship is a fiduciary relationship that only arises when the alleged agent "act[s] on the principal's behalf and subject to the principal's control." *Fine v. Sovereign Bank*, 634 F. Supp. 2d 126, 137 (D. Mass. 2008) (quoting Rest. (3d) of Agency § 1.01). "'An essential element of agency is the principal's right to control the agent's action. The power to give interim instructions distinguishes principals in agency relationships from those who contract to receive services provided by persons who are not agents.'" Restatement (Third) of Agency § 1.01 cmt.

9

f(1)); *see also McDermet v. DirecTV, LLC*, No. 19-11322-FDS, 2021 WL 217336, at *9 (D. Mass. Jan. 21, 2021) (evidence in the record showing that plaintiff believed caller was from defendant was not "traceable to any manifestations made by…the alleged principals" and did not establish agency). For the Holmes Agency to be considered FGI's agent, FGI must have the right to exert "substantial control" over the purported agent's operations and business.

Plaintiff's agency theories fail because the Amended Complaint does not allege any well-pleaded facts about FGI's relationship with the Holmes Agency. The only factual allegations concern the Holmes Agency's Agent Appointment Agreement with the Exchanges and FNWL and the Agency Growth Store. Am. Compl., pp. 11, 18-19 ¶¶ 61-63, 105-113.  But FGI is not a party to the Agent Appointment Agreement. Ex. 1, Hays Decl., Ex. 2. A review of the contract shows that the Holmes Agency had no power to affect FGI's legal relations with anyone. Because FGI is not an insurance company and does not offer products or services to consumers, Plaintiff cannot allege that the Holmes Agency was trying to sell FGI's products or services to Plaintiff. Nor did Plaintiff allege that the Holmes Agency made any reference to FGI during the call. The only allegation is that the Holmes Agency used the service mark "Farmers Insurance," which is owned by Farmers Insurance Exchange. Am. Compl., p. 8 ¶ 38; Hays Decl., Ex. B.

Plaintiff points to the operation of the Agency Growth Store as an indication of FGI's alleged agency relationship with independent contractors. Yet, the Agency Growth Store is just that—a store. Operating a marketplace that allows vendors (EverQuote) to sell their products to buyers (independent agents) does not create an agency relationship. *See McDermet v. DirecTV, LLC*, No. CV 19-11322-FDS, 2021 WL 217336, at *9 (D. Mass. Jan. 21, 2021) ("However, the fact that defendants contracted with the retailers for various services does not, without more, establish such [vicarious] liability…"). If anything, the existence of the Agency Growth Store

10

being a resource that independent contractor agents, such as the Holmes Agency, can utilize at their own discretion is the opposite of the "day-to-day" control of FGI over the Holmes Agency. *See* Ex. 2, § N ("The Parties agree that Agent is free to decline to participate in or take advantage of any voluntary resource or program offered by the [Insurance] Companies.").

Plaintiff adds an allegation that "Farmers" controls "its agents" and EverQuote by requiring that EverQuote "and any third-party making or participating in the telemarketing calls on its behalf, state that the call is being made on behalf of Farmers." Am. Compl., ¶ 113(b). Plaintiff also relies on various provisions of the Agent Appointment Agreement that defines the relationship between the independent insurance agents and the Exchanges and FNWL. Am. Compl., ¶ 113(d), (e), (f), (h), (i), (l). Plaintiff makes conclusory allegations regarding FGI's authority over the time, means or manner of the Holmes Agency's marketing activities. Am. Compl., ¶¶ 19, 113. Plaintiff's attempt to ignore the plain text of the Agent Appointment Agreement cannot override the plain text of the contract which clearly shows that FGI is not a party to the contract or Plaintiff's admission that FGI is not a party to the Agent Appointment Agreement. Ex. 2; Am Comp., p. 19 ¶ 112. As a non-party to the contract, FGI had no right to enforce the Agent Appointment Agreement against the Holmes Agency. *See Morales-Posada*, 141 F.4th at 309.[6]

Plaintiff fails to allege—beyond conclusory statements—that FGI had the ability to issue preliminary, much less ultimate, instructions, on these subjects. *See Jackson v. Caribbean Cruise Line, Inc.*, 88 F. Supp. 3d 129, 139 (E.D.N.Y. 2015) (dismissing TCPA complaint because it failed to contain "any allegations that [defendant] had the power to give 'interim instructions' to [the third party], or any non-conclusory suggestion of 'direction' or 'control' by [defendant] of [that

---

[6] Under the plain language of the Agent Appointment Agreements, FNWL has no right to control or give instructions to the independent contractor insurance agents either. *See* Ex. 2, ¶ N ("Agent shall, as an independent contractor, exercise the sole right to control all Agency operations and determine the time, place, and manner in which Agent's duties and other objectives of the Companies are met, ….").

third party]").

Plaintiff's admission that FGI is not a party to the Agent Appointment Agreements renders the remaining allegations against FGI as nothing more than legal conclusions that are contrary to the plain terms of the Holmes Agency's Agent Appointment Agreement. When the terms of the contract contradict the allegations in the Amended Complaint, the contract controls. *Yacubian v. United States*, 750 F.3d 100, 108 (1st Cir. 2014) ("It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations.") (citation and quotation omitted).

### 2. Plaintiff Alleges No Facts to Support His Argument that EverQuote Was FGI's Agent or Subagent.

As Plaintiff admits, EverQuote is a lead generator allegedly making calls to identify potential leads that it then attempts to sell to its customers. *See* Am. Compl. pp. 3-4 ¶¶ 15-16. As a lead generator, EverQuote contacts a large number of consumers. It sells leads who demonstrate some interest in doing business with EverQuote's customers. Am. Compl. p. 3 ¶ 15. Plaintiff alleges that EverQuote sold his information as a lead to the Holmes Agency and to other insurance agents or telemarketers.  Am. Compl. pp. 2, 8, 9 ¶¶ 9, 47, 50. Plaintiff admits that the same day EverQuote called him to try to sell his information to the Holmes Agency, EverQuote texted him trying to sell him as a lead to Progressive. Am. Compl., p. 7 ¶ 32. EverQuote was selling its products – leads – in a traditional buy-sell commercial transaction. Courts have long recognized that "parties to a contract are not each other's fiduciaries," and therefore a commercial contract does not create an agency relationship. *McDermet*, 2021 WL 217336, at *4 (finding that defendant's contracting with retailers for various services does not by itself establish agency); *see also Original Great Am. Chocolate Chip Cookie Co. v. River Valley Cookies, Ltd.*, 970 F.2d 273, 280 (7th Cir. 1992) (same).

Just as Plaintiff's allegations related to the Agency Growth Store did not adequately plead agency, those same allegations fail to plead apparent authority over EverQuote. FGI's relationship negotiating discounted prices with a vendor (Am. Comp., p.11 ¶ 61), without allegations of control over operations, is not a legal foundation to create an agency relationship. As with the Holmes Agency, bargained for business terms, regardless of how unilateral they may appear, are commercial measures that do not rise to the type of control over EverQuote's operations.

The allegations in the Amended Compliant confirm that EverQuote was working for its own benefit (Am. Compl. ¶ 91), to create its own product "leads", to sell to insurance agents and insurance companies, all of whom were in competition with one another. *See, e.g.*, *Mizuho Corp. Bank (USA) v. Cory & Assocs., Inc.*, 341 F.3d 644, 654 (7th Cir. 2003) (it would be "absurd" to find that insurer controlled broker who was free to recommend competing insurers to customers; such a relationship could not establish agency); *Chemtool, Inc. v. Lubrication Tech., Inc.*, 148 F.3d 742, 746 (7th Cir. 1998)(no agency relationship where alleged agent provided services to other companies).

3.   **Plaintiff Has Not Alleged Any Statements or Conduct Originating from FGI to Support Apparent Authority for Either the Holmes Agency or EverQuote.**

"Apparent authority is the power held by an agent ... to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." *Doane*, 2023 WL 2465628 at *10 (quoting Restatement (Third) Of Agency § 2.03). "Apparent authority can 'be created only by the *principal*'s manifestations to a third party,' and is not established by only the purported 'agent's representations of authority to a third person.'" *McDermet v. DirecTV, LLC*, No. CV 19-11322-FDS, 2021 WL 217336, at *8 (D. Mass. Jan. 21, 2021) (quoting *Moreau v.*

13

*James River-Otis, Inc.*, 767 F.2d 6, 10 (1st Cir. 1985). Plaintiff's apparent authority theory fails for two separate and independent reasons.

First, Plaintiff has not alleged that he ever communicated with FGI, much less that FGI suggested to him that EverQuote or the Holmes Agency were authorized agents of FGI. Plaintiff's apparent authority argument fails absolutely on this ground alone. *See Moreau v. Local Union No. 247, Int'l Broth. of Firemen & Oilers, AFL-CIO*, 851 F.2d 516, 518 (1st Cir. 1988); *Smith*, 2021 WL 1581017, at *4; Rest. (3d) Agency § 2.03.

Second, the Amended Complaint alleges no facts that FGI (the purported principal) said or did anything that could have led Plaintiff to believe that the callers were calling on FGI's behalf. Likewise, the Amended Complaint alleges no facts that Plaintiff relied on anything that FGI did or said. Plaintiff's failure to allege that he relied on statements or conduct by FGI is fatal to any theory of apparent authority. At most, Plaintiff alleges EverQuote and the Holmes Agency used Farmers Insurance Exchange's trade names "Farmers" and "Farmers Insurance." However, the use of Farmers Insurance Exchange's trade names does not indicate that FGI authorized any marketing calls by EverQuote or the Holmes Agency on FGI's behalf. *Doane*, 2023 WL 2465628 at *10; *Bartolotta v. Dunkin' Brands Grp., Inc.*, No. 16 CV 4137, 2016 WL 7104290, at *2 (N.D. Ill. Dec. 6, 2016) (noting that the "mere licensing of a trade name does not create an agency relationship, either ostensible or actual"); *Muniz v. Walgreen Co.*, 46 F. Supp. 3d 117, 124 (D.P.R. 2014) ("a closing branding relationship," without more, would not give rise to parent liability).[7]

---

[7] FGI expressly rejects Plaintiff's argument that a "principal-agent relationship between [FGI] and its agents also means that its agents' knowledge of their and their subagents' telemarketing activities and compliance failures is imputed to [FGI]." Plaintiff cannot provide a legal foundation for this argument. In fact, it was already rejected by the Northern District of Illinois. *Pending appeal.*

14

### 4.    Plaintiff Failed to Allege Facts Supporting Ratification.

Plaintiff similarly cannot state a cause of action under a ratification theory. As explained above, Plaintiff's allegations do not show that either caller was acting as FGI's agent. A principal cannot "ratify" an alleged agent's conduct if there was no actual or implied agency relationship in the first place. *See, e.g.*, *Canney v. City of Chelsea*, 925 F. Supp. 58 n.8 (D. Mass. 1996) (finding ratification theory without merit since court found there was no principal-agent relationship to begin with and a purported principal "cannot ratify an act which the principal could not have authorized in the first place"); *Kaye v. Grossman*, No. 97 Civ. 8679(JSR), 1999 WL 33465, at *2 n.1 (S.D.N.Y. Jan. 27, 1999) (ratification "presupposes an agency relationship; it does not create one where none otherwise existed"); Rest. (3d) of Agency § 4.03 cmt. b ("When an actor is not an agent and does not purport to be one, the agency-law doctrine of ratification is not a basis [for liability].") Accordingly, Plaintiff cannot trace TCPA liability to FGI by virtue of ratification.

Plaintiff's ratification theory also fails because Plaintiff cannot allege that FGI retained any benefit from the calls. A defendant can only be liable on a ratification theory if it "retain[ed] a benefit" and "ha[d] knowledge of material facts." Restatement (Third) of Agency § 4.01 cmt. g. Plaintiff failed to allege that FGI received any benefit from any call to Plaintiff's phones. *See Smith*, 2013 WL 5346430, at *6. Plaintiff has not and cannot allege that he purchased insurance from FGI because FGI is not an insurance company or an insurance agent. Plaintiff alleges the Holmes Agency purchased a lead from EverQuote and offered to sell Plaintiff an auto insurance policy from the Insurance Companies or their subsidiaries.

Furthermore, a ratification theory of agency requires that the defendant have "full knowledge of the facts." *See Smith v. Liberty Mut. Ins. Co.*, 2021 WL 1581017, at *6; *McDermet*, 2021 WL 217336, at *29 (no ratification where defendant unaware of telemarketing). *See also,*

15

*Booker v. United American Ins. Co.*, 700 So.2d 1333, 1337 (1997) (insurance company had not ratified the misconduct of soliciting agent's unauthorized subagent by issuing an insurance policy based on fraudulently procured application; the company was "incapable of knowingly ratifying [the subagent's conduct], of which it was unaware"); Restatement (Third) of Agency § 4.06 cmt. a (ratification must be based on "knowledge of material facts about the act of the agent or other actor" (emphasis added)). A plaintiff must "put forth some specific facts pointing to [] Defendants' knowledge . . . in order to nudge his claim 'across the line from conceivable to plausible.'" *Winchester v. Marketti*, No. 11 CV 9224, 2012 WL 2076375, at *6 (N.D. Ill. Jun. 8, 2012) (quoting *Twombly*, 550 U.S. at 547). Plaintiff alleges that FGI was aware of complaints that some insurance agents and some vendors had violated the TCPA. Am. Compl, p. 24 ¶ 124. However, there is no allegation that FGI was aware of Plaintiff's communications with EverQuote or the Holmes Agency or that EverQuote or the Holmes Agency had a history of violating the TCPA. Absent allegations that FGI had full knowledge that EverQuote's or the Holmes Agency's telemarketing practices violated the TCPA, Plaintiff's ratification theory fails to state a claim. *Doane*, 2023 WL 2465628 at *11.

### 5. Plaintiff Failed to Allege Facts to Support Holding FGI Liable for the Acts of Its Subsidiary FNWL.

Simply alleging that FGI is the parent company of FNWL cannot create a cause of action against FGI for the alleged acts of FNWL. As the Supreme Court has explained, a general principle of corporate law deeply ingrained in our economic and legal systems is that a parent corporation is not liable for the acts of its subsidiaries. *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation … is not liable for the acts of its subsidiaries.")(citations omitted). Conclusory assertions that a parent directed or controlled the subsidiary are insufficient to plead the existence

16

of an agency relationship to support a TCPA or any other claim. *Shcherb v. Angi Homeservices Inc.*, No. 1:19-cv-367-MKV, 2020 WL 2571041, at \*2 (S.D.N.Y. May 21, 2020); *Shostack v. Diller*, No. 15-CV-2255 (GBD) (JLC), 2015 WL 5535808, at \*6 (S.D.N.Y. Sept. 16, 2015).

Nor does the Amended Complaint allege any facts that would support ignoring FGI's corporate separateness. The Amended Complaint does not contain any allegation, much less any well-pleaded facts, suggesting that FNWL was undercapitalized, failed to maintain corporate formalities, or that some substantial injustice would occur from the Court respecting the corporate forms. Since the Amended Complaint makes no allegations that would support ignoring the separate corporate identities of FGI and FNWL, Plaintiffs cannot state a claim against FGI. *See Giuliano v. Nations Title, Inc.*, 938 F. Supp. 78, 81-82 (D. Mass. 1996); *Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F.Supp.3d 610, 619 (E.D. Pa. 2015) (dismissing parent company).

## V.   CONCLUSION

For the reasons explained above, Plaintiff's Amended Complaint should be dismissed as to Farmers Group, Inc., with prejudice.

Respectfully submitted,

FARMERS GROUP, INC.

By its attorneys,

Dated:  June 18, 2026

/s/ *Maxwell Gessman*
Maxwell Gessman (BBO #715177)
TROUTMAN PEPPER LOCKE LLP
111 Huntington Avenue, 9th Floor
Boston, MA 02199-7613
Tel: (617) 239-0100
Maxwell.gessman@troutman.com

Brian Hays (*Admitted Pro Hac Vice*)
Randall Hack
TROUTMAN PEPPER LOCKE LLP
111 South Wacker Drive
Chicago, IL 60606
T: 312-443-0700
Brian.hays@troutman.com
Randall.hack@troutman.com

**Local Rule 7.1 Certification**

I certify that on June 11, 2026, counsel for the parties conferred in good faith in an effort to resolve or narrow the issue presented by this motion. Plaintiff opposes the requested relief.

/s/ *Maxwell Gessman*
Maxwell Gessman

**Certificate of Service**

I hereby certify that on June 18, 2026, a true and correct copy of the foregoing motion was filed through the Court's Electronic Case Filing (ECF) system and thereby served on all parties registered to receive electronic notifications through ECF.

/s/ *Maxwell Gessman*
Maxwell Gessman