**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

ROBERT HOSSFELD, individually and on behalf of others similarly situated,
        *Plaintiff,*

*v.*

EVERQUOTE, INC., and FARMERS GROUP, INC.
        *Defendants.*

Case No. 1:26-cv-11440-RGS

**DEFENDANT EVERQUOTE, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT
PURSUANT TO RULE 12(b)(6)**

## I.    INTRODUCTION

Following the filing of the original Complaint, EverQuote moved to dismiss all five counts. On May 28, 2026, Plaintiff filed the FAC, which dropped two of the original counts and restructured others. This Court found EverQuote's original motions moot in light of the FAC and permitted Defendants to file any motions with respect to the FAC. [Dkt. 34]. The Court subsequently granted Defendants until June 18, 2026, to respond. [Dkt. 36]. EverQuote now moves to dismiss Counts II and IV, to dismiss Count III to the extent it is derivative of Plaintiff's deficient TCPA theories, as well as to dismiss Plaintiff's TCPA claims to the extent they are predicated on Calls 6–8.

First, regarding Count II, Plaintiff does not plausibly allege he made a DNC request to EverQuote, and the allegations demonstrate that EverQuote contacted Plaintiff within the reasonable timeframe afforded by law to process such requests. Under 47 C.F.R. § 64.1200(d)(3), a company has a "reasonable" time—up to 10 business days—to honor a do-not-call request. The single challenged text message sent by EverQuote was sent just one day after the alleged oral opt-

1

out request was made to an independent third party. Moreover, the FAC alleges that EverQuote and Farmers share DNC data in "nearly instantaneous" fashion (FAC ¶ 58), but this one-day turnaround remains well within the permissible compliance window.

Second, regarding Count III (Texas Telephone Solicitation Act), the FAC abandons Plaintiff's original theory that EverQuote's text messages constituted use of an Automatic Dialing Announcing Device. Instead, Plaintiff now alleges that "a violation of the TCPA constitutes a violation of the Texas Act" under Tex. Bus. & Com. Code § 305.053(a). FAC ¶ 73. Because § 305.053(a) "proscribes only conduct which is also prohibited by the TCPA," the Texas claim fails to the same extent as the corresponding TCPA claims fail.

Third, regarding Count IV, Plaintiff's equitable claim for Massachusetts Common Law Restitution and Disgorgement is barred because Plaintiff has an adequate remedy at law, and it is also defective because Plaintiff fails to plead a measurable economic benefit directly conferred upon EverQuote. The FAC attempts to reframe this claim as targeting the "sale of personal information" rather than calls (FAC ¶¶ 96–97), but this relabeling does not change the fundamental legal deficiency.

Lastly, to the extent Plaintiff's TCPA claims are predicated on Calls 6–8, those claims fail because the FAC does not plausibly allege that EverQuote directly initiated those calls or that any unidentified downstream caller acted as EverQuote's agent. Plaintiff alleges only that EverQuote supposedly sold or resold a lead. That is not enough to plead direct or vicarious liability under the TCPA.

Consequently, Counts II and IV, Count III to the extent it is derivative of Plaintiff's deficient TCPA theories, and Plaintiff's TCPA claims to the extent predicated on Calls 6–8, must be dismissed.

## II.    PLAINTIFF'S ALLEGATIONS

The FAC alleges EverQuote and Farmers Group, Inc. ("FGI") violated the TCPA and state laws through a series of telemarketing calls and text messages. The FAC alleges that Plaintiff's residential telephone number "has been on the Do Not Call Registry since 2015," FAC ¶ 4, and that "Plaintiff placed 254-xxx-8888 onto the DNC Registry." FAC ¶ 13.

Plaintiff alleges he "demanded that the telemarketing calls stop" on March 4, 2026, during a telephone conversation with a caller from the independent "Alexander Holmes Farmers agency." *Id.* at ¶¶ 35, 41. Plaintiff alleges that "Farmers internal DNC policies do not require that Farmers agents notify the companies from whom they purchase leads (such as EverQuote) of a Do Not Call request." *Id.* at ¶ 42. Despite this, Plaintiff seeks to hold EverQuote liable for a single follow-up text message sent the very next day, on March 5, 2026. *Id.* at ¶ 43. The FAC also asserts, in conclusory fashion, that Plaintiff previously requested not to receive Farmers-related telemarketing calls and that Farmers and EverQuote had actual knowledge that Plaintiff's number was on Farmers' internal DNC list. FAC at 4, ¶¶ 14–15; *see also* FAC ¶¶ 26, 58–59. But the FAC does not plead supporting facts showing when any pre-March 5 request was made, to whom it was made, or how EverQuote supposedly received that request before the March 5 text message. The only specifically pleaded DNC request before the challenged March 5 text occurred during Plaintiff's March 4, 2026, call with the Holmes Farmers agency, not with EverQuote. FAC ¶¶ 35, 41–43.

The FAC further alleges that EverQuote and FGI have a "nearly instantaneous Do Not Call information sharing system." *Id.* ¶ 58. It also alleges that "both Farmers and EverQuote have policies and procedures in place that permit telemarketing calls to telephone numbers that are on Farmers and/or EverQuote's DNC list, if Farmers or EverQuote believes there has been an opt-in

to receive calls." *Id.* ¶ 60.

Lastly, regarding the Texas claim, the FAC alleges that "The Texas Business & Commerce Code § 305.053(a), provides that a violation of the TCPA constitutes a violation of the Texas Act." *Id.* ¶ 73. Concerning the restitution claim, the FAC seeks "restitution and disgorgement arising from EverQuote's sale of Plaintiff and class members' personal information" and disclaims that Count IV "seek[s] relief arising from telemarketing calls." *Id.* ¶¶ 96–97.

## III.    LEGAL STANDARD

"To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the complaint must state a claim that is plausible on its face." *Doane v. Benefytt Techs., Inc.*, No. CV 22-10510-FDS, 2023 WL 2465628, at *3 (D. Mass. Mar. 10, 2023) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For a claim to be facially plausible, it must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Plausibility does not require probability but 'it asks for more than a sheer possibility the defendant has acted unlawfully.'" *Gibbs v. SolarCity Corp.*, 239 F. Supp. 3d 391, 396 (D. Mass. 2017) (quoting *Iqbal*, 556 U.S. at 678). "While a complaint 'does not need detailed factual allegations,' it 'requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Twombly*, 550 U.S. at 556). The complaint must include factual allegations "respecting each material element necessary to sustain recovery under some actionable legal theory." *Katz v. Liberty Power Corp., LLC*, No. 18-CV-10506-ADB, 2019 WL 4645524, at *5 (D. Mass. Sept. 24, 2019) (quoting *Centro Médico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)); *See also Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008).

IV.     **ARGUMENT—THE COURT SHOULD DISMISS THE CHALLENGED CLAIMS AND THEORIES BECAUSE THEY FAIL TO STATE PLAUSIBLE CLAIMS.**

A.     **Count II Must Be Dismissed Because Plaintiff Does Not Plausibly Allege He Made A DNC Request To EverQuote, And The Alleged Request Was Honored Within A Reasonable Timeframe.**

Section 64.1200(d)(3) provides that "[p]ersons or entities making [telemarketing calls]…must honor a residential subscriber's do-not-call request within a *reasonable time* from the date such request is made. This period may not exceed *10 business days* from the date of such request." 47 C.F.R. § 64.1200(d)(3) (emphasis added). In other words, a defendant is accorded a "reasonable time," capped at ten business days, to comply with a residential subscriber's DNC request.

The previous version of this provision, which allowed for up to thirty days to comply, has been interpreted by courts to mean what it says—that a defendant has thirty days to comply with a consumer's DNC request. *See Orsatti v. Quicken Loans, Inc.*, No. 2:15-CV-09380 (SVW) (AGR), 2016 WL 7650574, at *7 (C.D. Cal. Sept. 12, 2016) (granting the defendant's motion to dismiss where the plaintiff failed to allege any calls more than 30 days after the plaintiff requested not to be contacted); *Wagner v. CLC Resorts & Devs., Inc.*, 32 F. Supp. 3d 1193, 1198 (M.D. Fla. 2014) (characterizing the provision as a "30–day grace period"); *Ott v. Mortg. Invs. Corp. of Ohio*, 65 F. Supp. 3d 1046, 1065 (D. Or. 2014) (same). Given this interpretation, a communication made within the now-applicable ten-day window period does not plausibly violate Section 64.1200(d)(3), absent factual allegations showing that a shorter timeframe was required under the circumstances.

While EverQuote recognizes that some courts have found a "reasonable time" to mean less than the provided time period, it is Plaintiff's burden to demonstrate a plausible claim, and ten

5

days ought to form the presumptive limit at the pleadings stage absent factual allegations that less time is warranted.

Here, Plaintiff contends that an oral DNC request was made to one of EverQuote's customers, the Holmes insurance agency, on March 4, 2026, and subsequently, he received a single follow-up text message from EverQuote on March 5, 2026. FAC ¶¶ 41, 43. This one-day turnaround clearly falls within the ten-day period permitted for compliance under both the regulation and relevant case law.

Plaintiff's generalized allegations of prior DNC requests do not cure this defect. The FAC does not plead when any prior request was made, whether it was made to EverQuote, or what non-conclusory facts show that EverQuote received or had actual knowledge of such a request before the March 5 text message. *See* FAC at 4, ¶¶ 14–15; FAC ¶¶ 26, 58–59. The only specifically pleaded DNC request before the challenged March 5 text message occurred during Plaintiff's March 4, 2026, call with the Holmes insurance agency, not with EverQuote. FAC ¶¶ 35, 41. And the FAC separately alleges that Farmers' internal DNC policies do not require insurance agents to notify lead vendors, such as EverQuote, of DNC requests. FAC ¶ 42. Despite that, Plaintiff seeks to hold EverQuote liable for a single follow-up text message sent the next day, on March 5, 2026. FAC ¶ 43.

Moreover, Section 64.1200(d)(3) "requires the institution of certain procedures prior to the initiation of telemarketing calls." *Simmons v. Charter Commc'ns, Inc.*, 222 F. Supp. 3d 121, 131 (D. Conn. 2016) (citation omitted), *aff'd*, 686 F. App'x 48 (2d Cir. 2017). To plausibly allege a violation of Section 64.1200(d)(3), the plaintiff must furnish sufficient factual allegations that plausibly suggest the defendant lacks the requisite safeguards mandated by the regulation. *Id.* at 139-40. ("[I]n order to prove a subsection (d)(3) violation, a plaintiff cannot rely solely on the fact

that a provider failed to record or honor an individual's request to be placed on a DNC list. Rather, the plaintiff must establish that the calls he or she received were initiated prior to the implementation of proper procedures."); *Nece v. Quicken Loans, Inc.*, No. 8:16-CV-2605-T-23CPT, 2018 WL 1326885, at *8 (M.D. Fla. Mar. 15, 2018) ("An isolated failure to timely record a do-not-call request establishes no genuine dispute whether Quicken called Nece before instituting a sufficient do-not-call policy."); *Buja v. Novation Capital, LLC*, No. 15-81002-CIV, 2017 WL 10398957, at *4 (S.D. Fla. Mar. 31, 2017).

Here, the only specifically pleaded event Plaintiff identifies to support his claim that EverQuote failed to honor a DNC request is that EverQuote sent a single follow-up text message on March 5, 2026, just one day after Plaintiff allegedly made a DNC request to the independent "Alexander Holmes Farmers agency." FAC ¶¶ 35, 41, 43. Furthermore, Plaintiff alleges that FGI's internal DNC policies and practices "do not require that Farmers agents notify the companies from whom they purchase leads (such as EverQuote) of a Do Not Call request." *Id*. at ¶ 42.

The FAC's new allegations do not cure these deficiencies. Plaintiff now alleges that EverQuote and FGI have a "nearly instantaneous Do Not Call information sharing system." *Id*. ¶ 58. But this allegation, if anything, supports the inference that EverQuote maintains robust DNC safeguards—not that it lacks them. Plaintiff also alleges that FGI and EverQuote have "policies and procedures in place" governing when telemarketing calls may be placed to numbers on a DNC list. *Id*. ¶ 60. But this allegation, too, demonstrates that EverQuote maintains the type of written DNC procedures required by Section 64.1200(d)—not that it lacks them. The existence of a policy governing when calls may and may not be placed is itself evidence of a procedure, not evidence of a lack thereof.

To state a claim under 47 C.F.R. § 64.1200(d)(3), Plaintiff must plausibly allege that EverQuote lacks proper safeguards and procedures mandated by the provision. An isolated follow-up text—especially one sent merely a day after a DNC request was made to a third party that had no policy requiring it to notify EverQuote, which falls well within the permissible 10-day window provided by the regulation—does not suggest a systemic failure or a disregard of these safeguards. *Simmons*, 222 F. Supp. 3d at 139; *Nece*, 2018 WL 1326885 at *8; *Buja*, 2017 WL 10398957 at *4.

Indeed, Plaintiff has failed to allege facts demonstrating a pattern or practice of noncompliance by EverQuote. The FAC's more systemic policy allegations are directed at FGI's policies, not EverQuote's own internal DNC procedures. *See* FAC ¶¶ 118–120. To the extent the FAC refers generally to EverQuote's policies, those allegations plead the existence of policies, not the absence of procedures required by Section 64.1200(d). Instead, Plaintiff's claim rests solely on the receipt of one text message within 24 hours of making a DNC request to an independent entity. This simply does not meet the threshold for stating a plausible claim under Section 64.1200(d). Consequently, the allegations are implausible, and Count II should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

**B.    Count III Must Be Dismissed To The Extent Plaintiff's Texas § 305.053(a) Claim Is Derivative Of Federal TCPA Claims That Fail.**

The FAC abandons Plaintiff's original claim that EverQuote's text messages constituted use of an Automatic Dialing Announcing Device ("ADAD") under Texas law. In its place, the FAC asserts a new theory under Tex. Bus. & Com. Code § 305.053(a), alleging that "a violation of the TCPA constitutes a violation of the Texas Act." FAC ¶ 73.

Under Texas' version of the TCPA, Tex. Bus. & Com. Code § 305.053(a) (2009), a person who "receives a communication that violates 47 U.S.C. § 227" or "a regulation adopted under that provision, … may bring an action in this state" against the caller for an injunction, damages, or

both. This statute "proscribes only conduct which is also prohibited by the TCPA. If no violation of the TCPA exists, there is no violation" of Section 305.053(a). *Hunsinger v. Dynata LLC*, No. 3:22-CV-00136-G-BT, 2023 WL 2377481, at *7–8 (N.D. Tex. Feb. 7, 2023) (dismissing plaintiff's claims under Section 305.053). *See also Cunningham v. Politi*, No. 418CV00362ALMCAN, 2019 WL 2519702, at *3 (E.D. Tex. Apr. 26, 2019) ("Because Plaintiff's underlying (federal) TCPA claims fail, Plaintiff's state TCPA claim under § 305.053 also fails."); *Cherkaoui v. Santander Consumer USA, Inc.*, 32 F. Supp. 3d 811, 815 (S.D. Tex. 2014) ("If no violation of the TCPA exists, there is no violation of the Texas TCPA."); *Shields v. Dick*, No. 3:20-CV-00018, 2020 WL 5522991, at *3 (S.D. Tex. July 9, 2020) (same).

Because Plaintiff's Texas claim is entirely derivative of his federal TCPA claims, it necessarily rises and falls with those claims. To the extent this Court dismisses any of the underlying TCPA claims against EverQuote, the corresponding § 305.053(a) claim must be dismissed as well. A plaintiff cannot use a derivative state statute to salvage federal claims that fail on their own terms.

Moreover, to the extent Count III survives as a derivative of Plaintiff's remaining TCPA claims, Plaintiff may not recover duplicative statutory damages under both the federal TCPA and § 305.053(a) for the same violations. Texas's "one-satisfaction rule" prohibits stacking statutory damages from both statutes. *See Thomas v. Elite Legal Practice PC*, No. CV 25-10854-MWF (MAAx), 2026 WL 1048217, at *5 (C.D. Cal. Mar. 23, 2026) (dismissing demand for duplicative statutory damages under § 305.053 because of Texas law's "one-satisfaction rule"); *Busbee v. ServiceToday!*, No. 4:24-CV-00364-P, 2024 WL 4428989, at *4 (N.D. Tex. Oct. 4, 2024) ("[B]ecause [plaintiff] can recover damages under the TCPA, the one-satisfaction rule prohibits him from recovering under Section 305.053 for the same violations.").

Accordingly, Count III should be dismissed to the extent it is derivative of Count II or Plaintiff's deficient theory that EverQuote is liable for Calls 6–8, and any surviving § 305.053(a) claim cannot yield duplicative statutory damages.

**C.      Count IV Must Be Dismissed Because Plaintiff Has An Adequate Remedy At Law And Fails To Plead A Benefit Conferred.**

In Count IV, Plaintiff advances an equitable claim titled "Massachusetts Common Law Restitution and Disgorgement," asserting that EverQuote was unjustly enriched by monetizing his personal information to generate insurance leads. This count must be dismissed for three reasons.

As a threshold matter, the FAC attempts to distinguish this claim from the TCPA claims by disclaiming that Count IV "seek[s] relief arising from telemarketing calls" and instead asserting it seeks "restitution and disgorgement arising from EverQuote's sale of Plaintiff and class members' personal information." FAC ¶¶ 96–97. This reframing does not cure the claim's fundamental deficiencies.

First, Count IV is procedurally barred by the "adequate remedy at law" doctrine. Under Massachusetts law, equitable claims such as unjust enrichment are remedies of last resort and cannot be maintained when a plaintiff possesses an adequate remedy at law. The First Circuit enforces this bar, holding that "a party with an adequate remedy at law cannot claim unjust enrichment" even if the legal claim is ultimately unsuccessful on the merits. *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1 (1st Cir. 2017); *Reed v. Zipcar, Inc.*, 883 F.Supp.2d 329, 334 (D. Mass. 2012), *aff'd*, 527 Fed.Appx. 20 (1st Cir. 2013) (noting that the viability of the remedy at law "is beside the point" and the "mere availability" of a remedy at law bars a claim " for unjust enrichment and money had and received"). The "mere availability" of a legal remedy serves as an absolute bar preventing plaintiffs from utilizing unjust enrichment as a "catchall which could apply to otherwise failed claims." *Patenaude v. Orgain, LLC,* 594 F. Supp. 3d 108, 116 (D. Mass. 2022) ("[T]he fact

that the [p]laintiff failed to plead the elements necessary for another contractual or statutory claim does not allow him to assert a claim on a theory of unjust enrichment."). Here, Congress enacted the TCPA to provide a comprehensive, strictly defined legal remedy—including statutory damages of potentially up to $1,500 per violation—for the exact conduct alleged by Plaintiff. Because the TCPA and the Texas Telephone Solicitation Act (Counts I-III) provide legal remedies for the facts underlying Count IV, Plaintiff has an adequate remedy at law, and the equitable claim must be dismissed.

The FAC's attempt to recharacterize this claim as targeting "the sale of personal information" rather than "telemarketing calls" does not change the analysis. The allegedly wrongful sale of personal information is the same conduct underlying the TCPA claims—the alleged mechanism by which the telemarketing calls and text messages occurred. Plaintiff cannot avoid the adequate-remedy-at-law bar by relabeling the same alleged course of telemarketing conduct as a data-sale restitution claim.

Second, Count IV is defective because Plaintiff fails to plead the necessary elements of unjust enrichment. Massachusetts law requires proof of a measurable benefit conferred upon the defendant directly by the plaintiff, accompanied by an "unjust enrichment of one party and unjust detriment to the other party." *Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 57 (1st Cir. 2009) (citation omitted). Plaintiff did not pay EverQuote any money, nor did he suffer an economic detriment that corresponds to EverQuote's alleged financial gain.

Third, a plaintiff cannot claim unjust enrichment for the taking of data for which they never reasonably expected or intended to be compensated. *See Karp v. Gap, Inc.*, 2014 WL 4924229 (D. Mass. Sept. 29, 2014) ("[W]hile it is arguable that The Gap could potentially have benefitted from combining her zip code with other personal identification information to send marketing materials

to the plaintiff and other customers…a reasonable person would not expect compensation for providing her zip code in a routine credit card transaction."); *Tyler v. Michaels Stores, Inc.*, 840 F. Supp. 2d 438 (D. Mass. 2012) (same). Here, the FAC alleges that a third party submitted Plaintiff's information on EverQuote's website without Plaintiff's knowledge. *See* FAC ¶¶ 74, 81, 89, 96–99. If Plaintiff never voluntarily provided his personal information to EverQuote, and the FAC does not plead any reasonable expectation that Plaintiff would be compensated for the use of that information, Plaintiff has not plausibly alleged a benefit conferred under circumstances requiring restitution.

As such, this Court should dismiss Count IV.

**D.     To The Extent The FAC's Claims Against EverQuote Are Predicated On Calls 6–8, Those Claims Should Be Dismissed Because Merely Selling A Lead Does Not Establish Liability Under The TCPA.**

The FAC attempts to hold EverQuote liable for telephone solicitations allegedly received by Plaintiff on March 9, 10, and 11, 2026 (Calls 6–8), on the theory that EverQuote was the "proximate cause" of these calls because it "sold the marketing lead" or was "reselling the lead" to independent third parties. FAC ¶¶ 47, 50, 54–56. However, Plaintiff has not adequately alleged either direct or vicarious liability as to these calls. Accordingly, Plaintiff's TCPA claims should be dismissed to the extent they are predicated on Calls 6–8.

First, Plaintiff fails to state a claim for direct liability as to Calls 6–8. The Federal Communications Commission clarified that "a person or entity 'initiates' a telephone call when it takes the steps necessary to physically place a telephone call." *In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6583 (2013). A seller or lead generator generally does not physically initiate calls placed by third-party telemarketers. *Id.* at 6583. Therefore, to survive a motion to dismiss on a direct liability theory, a plaintiff must allege a plausible factual basis demonstrating that the

defendant actually, physically initiated the telephone call at issue, rather than relying on unadorned, boilerplate conclusions. *Aaronson v. CHW Grp., Inc.*, No. 1:18-CV-1533, 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019) (finding that the Plaintiff failed to plausibly allege a theory of direct liability where there were no plausible allegations that the defendant physically initiated the alleged calls).

Here, Plaintiff does not allege that EverQuote actually dialed the number, physically placed the call, or operated the equipment that delivered Calls 6–8. To the contrary, Plaintiff alleges that EverQuote's liability is based on the attenuated theory that EverQuote was the "proximate cause" of these calls simply because it "sold the marketing lead" or was "reselling the lead" to an independent third party. FAC ¶¶ 47, 50, 54–56. Under the TCPA, simply selling or transmitting a consumer lead does not establish that the lead generator "initiated" the subsequent call. *See Baltimore-Washington Tel. Co. v. Hot Leads Co., LLC*, 584 F. Supp. 2d 736, 746 (D. Md. 2008) (the court "[would] not imply expanded liability under the TCPA for aiding and abetting"); *Bank v. Vivint Solar, Inc.*, No. 18-CV-2555 MKB RLM, 2019 WL 1306064, at n.4 (E.D.N.Y. Mar. 22, 2019) (noting that "no court has found that the TCPA provides for aiding and abetting liability").

Second, Plaintiff fails to adequately plead vicarious liability as to Calls 6–8. When direct liability fails, a plaintiff must show that "under federal common-law principles of agency, there is vicarious liability for TCPA violations." *Doane v. Python Leads, LLC*, No. 1:24-CV-12947-JEK, 2025 WL 3485569, at *9 (D. Mass. Dec. 4, 2025). These principles include "not only formal agency, but also principles of apparent authority and ratification." *In re DISH Network*, 28 FCC Rcd. at 6584. Under the common law, a principal can be held liable for her agent's conduct when it "is actually authorized, whether the agent's authority be express or implied." *Doane*, 2025 WL 3485569 at *9 (quoting *In re Atl. Fin. Mgmt., Inc.*, 784 F.2d 29, 31 (1st Cir. 1986)). To adequately

plead express authority, a plaintiff must allege facts showing that the telemarketer acted "on the principal's behalf and subject to the principal's control." *Warciak v. Subway Restaurants, Inc.*, 949 F.3d 354, 357 (7th Cir. 2020); *see also Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 449 (9th Cir. 2018).

The FAC contains no factual allegations demonstrating that EverQuote exercised *any* control over the downstream third parties' telemarketing operations or the placement of Calls 6–8. Plaintiff simply alleges that EverQuote sold or resold a lead. FAC ¶¶ 47, 50, 54-56. Simply selling or transmitting a consumer lead does not demonstrate that the seller maintained the requisite common-law control over downstream buyers' independent actions. *See Doane v. Benefytt Techs., Inc.*, No. CV 22-10510-FDS, 2023 WL 2465628, at *9 (D. Mass. Mar. 10, 2023) (dismissing vicarious TCPA claims because the plaintiff did "not allege facts to plausibly suggest that defendant exercised control over any of the callers").

Without a plausible factual allegation establishing direct physical initiation or vicarious liability through common-law agency, Plaintiff's TCPA claims fail to the extent they are predicated on Calls 6–8 and should be dismissed.

## V.   **CONCLUSION**

For the foregoing reasons, EverQuote respectfully requests that the Court grant its Motion to Dismiss Counts II and IV, dismiss Count III to the extent it is derivative of Plaintiff's deficient TCPA theories, and dismiss Plaintiff's TCPA claims to the extent they are predicated on Calls 6–8, pursuant to Federal Rule of Civil Procedure 12(b)(6).

14

Dated: June 18, 2026

Respectfully submitted,

*/s/ Christopher B. Parkerson*
Christopher B. Parkerson, (BBO#662952)
Campbell Conroy & O'Neil, P.C.
20 City Square, Suite 300
Boston, MA 02129
Telephone: (617) 241-3075
cparkerson@campbell-trial-lawyers.com

-and-

Eric J. Troutman (*pro hac vice forthcoming)*
Tori L. Guidry (*pro hac vice forthcoming*)
Blake H. Landis (*pro hac vice forthcoming*)
Troutman Amin, LLP
400 Spectrum Center Drive, Suite 1450
Irvine, CA 92618
Telephone: (949) 350-3663
tori@troutmanamin.com

*Counsel for Defendant EverQuote, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 18, 2026, a copy of the foregoing was filed electronically and served by other electronic means on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by e-mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

*/s/ Christopher B. Parkerson*
Christopher B. Parkerson

15