IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ROBERT HOSSFELD, individually and on behalf of others similarly situated,
     *Plaintiff,*

v.

EVERQUOTE, INC., and FARMERS GROUP, INC.
     *Defendants.*

Case No. 1:26-cv-11440-RGS

**DEFENDANT EVERQUOTE, INC.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO STRIKE CLASS ALLEGATIONS**

## I.  <u>INTRODUCTION</u>

It is evident from the face of Plaintiff's FAC that this action cannot possibly proceed on a classwide basis, warranting an order striking the class allegations under Federal Rule of Civil Procedure 12(f). Because the proposed classes are facially uncertifiable in ways that no amount of discovery can cure, this Court should exercise its authority to strike the class definitions here and now.

First, the proposed DNC Registry Class and Internal DNC Class are impermissibly defined based upon the merits instead of objective criteria because they explicitly predicate membership on individuals who received "telemarketing" communications. Second, these classes are overly broad and lack commonality because they indiscriminately include individuals who received calls regardless of whether those calls were made to individuals with an established business relationship ("EBR"). Although the FAC added a partial EBR exclusion to the DNC Registry Class (FAC ¶ 46), that exclusion addresses only "Farmers" EBRs—not EverQuote EBRs. And the Internal DNC Class contains no EBR exclusion whatsoever. Third, the Internal DNC Class is

1

independently overbroad and vague because it sweeps in persons whose numbers appeared on "Farmers'" or any agent's or vendor's internal DNC list, without identifying whose list matters, whether the request was made to EverQuote, whether the relevant list was maintained at the relevant time, which entity maintained it, or whether the challenged communication was made by or on behalf of the entity to whom the request was directed.

Because these fatal flaws make certification impossible as a matter of law, the class allegations should be stricken in their entirety here and now.

## II.    FACTUAL ALLEGATIONS

Plaintiff alleges that EverQuote and FGI made multiple telemarketing calls to his residential telephone number, (254) 743-8888, which he claims has been listed on the National DNC Registry since 2015 and is also on "Farmers'" internal DNC list. *See* FAC at ¶¶ 4, 24, 30, 34, 43, 46, 49, 52. Plaintiff further alleges that he did not consent to receiving these calls or text messages from or on behalf of either EverQuote or FGI. *Id.* at ¶ 10. The FAC alleges that "Plaintiff placed 254-xxx-8888 onto the DNC Registry." FAC at ¶ 13.

Plaintiff alleges that the first call came in at 11:14 AM on March 4, 2026, where the caller stated Plaintiff had requested an auto insurance quote. Plaintiff alleges he told the caller he had not requested a quote, and the caller then terminated the call. *Id.* at ¶¶ 24-29. Shortly after the first call dropped, EverQuote allegedly sent a text message stating it had recalculated his requested auto coverage and provided a link to a Progressive insurance advertisement. *Id.* at ¶¶ 30-32.

Plaintiff alleges he received a third and fourth call at 1:00 PM on March 4, 2026, from a caller identifying himself as "JD with Farmers Insurance". During the call, Plaintiff explicitly informed JD that he never agreed to be contacted and demanded the calls stop before JD ended the

call. *Id.* at ¶¶ 34-41. On March 5, 2026, Plaintiff alleges he received a fifth communication in the form of a follow-up text message. *Id.* at ¶¶ 43-44.

Plaintiff alleges the sixth call was received on March 9, 2026, as a prerecorded message advertising auto insurance. Plaintiff attempts to attribute this call to EverQuote reselling his lead as "opt-in" even after he demanded the calls stop. *Id.* at ¶¶ 46-47. Plaintiff claims he received a seventh live telemarketing call on March 10, 2026. *Id.* at ¶ 49. Finally, Plaintiff alleges he received an eighth call on March 11, 2026, from a caller who became angry when questioned, prompting Plaintiff to request not to receive any more calls and demand to be placed on the internal DNC list. *Id.* at ¶¶ 52-53.

Based on those allegations, Plaintiff seeks to represent the following two classes:

**DNC Registry Class**: All persons in the United States who, within any 12-month period, received two or more telemarketing calls or text messages to a non-business telephone number registered on the National Do Not Call Registry, where a purpose of the calls or text messages was to encourage the purchase of Farmers goods or services, and where the lead associated with the called number was obtained from EverQuote.
Excluded from the DNC Registry Class are persons for whom Farmers' records show that, before each challenged call or text message necessary to establish membership in the class, the telephone number called or texted was associated with either: (a) a purchase, policy, renewal, or other transaction involving Farmers insurance products within the preceding 18 months; or (b) an inquiry or application directed to Farmers, a Farmers agent, or a Farmers-branded webpage concerning Farmers insurance products within the preceding 3 months. This exclusion does not apply to any call or text message made after the person requested not to receive further telemarketing calls or text messages made by or on behalf of Farmers.

**Internal DNC Class**: All persons in the United States who received two or more telemarketing calls and/or text messages within a 12 month period, where a purpose of such calls included trying to develop business for Farmers, and where the recipient's non business telephone number was on Farmers' or any of its agents or their vendors' internal Do Not Call List, and the lead called was obtained from EverQuote.

FAC at ¶ 46.

The FAC further alleges that "a visit to, inquiry through, application submitted to, transaction with, or relationship involving EverQuote or another lead generator does not, by itself, remove a person from the DNC Registry Class unless the records show that the person specifically inquired about, applied for, purchased, renewed, or transacted for Farmers insurance products within the applicable time period and had not thereafter requested that Farmers-related telemarketing stop." FAC at ¶ 47.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(f) provides that a "court may strike from a pleading...any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). District courts have "considerable discretion to strike material under Rule 12(f)..." *Rovinelli v. Trans World Ent. Corp.*, No. CV 19-11304-DPW, 2021 WL 752822, at *6 (D. Mass. Feb. 2, 2021) (citing *Alvarado-Morales v. Dig. Equip. Corp.*, 843 F.2d 613, 618 (1st Cir. 1988)) (quotation marks omitted).

When class allegations are challenged at the pleadings stage, the "dispositive question ... is whether the complaint pleads the existence of a group of putative class members whose claims are susceptible of resolution on a classwide basis." *Rovinelli*, 2021 WL 752822 at *6 (quoting *Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013)). "If it is obvious from the pleadings that [a] proceeding cannot possibly move forward on a classwide basis, district courts use their authority under Federal Rule of Civil Procedure 12(f) to delete the complaint's class allegations." *Downing v. Keurig Green Mountain, Inc.*, No. 1:20-CV-11673-IT, 2021 WL 2403811, at *7 (D. Mass. June 11, 2021) (striking a nationwide class because it included members without a claim under the relevant statute) (quoting *Manning*, 725 F.3d at 59) (alterations in original).

4

Indeed, "[j]udges in this District have demonstrated a willingness to grant motions to strike class allegations." *Rovinelli*, 2021 WL 752822 at *6 (collecting cases).

**IV.    ARGUMENT—PLAINTIFF'S PROPOSED CLASS DEFINITIONS MUST BE STRICKEN BECAUSE THEY ARE FACIALLY UNCERTIFIABLE AS A MATTER OF LAW.**

**A.    The Proposed Classes Are Overly Broad As Defined.**

A class is overbroad and uncertifiable where it contains a large number of potential members who have "no grievance" with the defendant. *Kohen v. Pac. Inv. Mgmt. Co. LLC & PIMCO Funds*, 571 F.3d 672, 678 (7th Cir. 2009) ("[A] class should not be certified if it contains a great many of persons who have suffered no injury."); *Walewski v. Zenimax Media, Inc.*, 502 F. App'x 857, 861 (11th Cir. 2012) (affirming denial of class certification where proposed class definition "impermissibly include[d] members who have no cause of action"); *Lackawanna Chiropractic P.C. v. Tivity Health Support, LLC*, No. 18-CV-00649-LJV-JJM, 2019 WL 7195309, at *3 (W.D.N.Y. Aug. 29, 2019), *report and recommendation adopted*, No. 18-CV-649, 2019 WL 7194525 (W.D.N.Y. Dec. 26, 2019) (citing *Vigus v. Southern Illinois Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 235 (S.D. Ill. 2011) (holding that when a proposed class includes a substantial number of people who voluntarily gave their numbers and have no grievance, their inclusion renders it overbroad and unfit for certification)); *Rivera v. Harvest Bakery Inc.*, 312 F.R.D. 254, 268 (E.D.N.Y. 2016) (holding that the proposed class definition was overbroad).

This is true because some class members do not "share a viable claim." *A Custom Heating & Air Conditioning, Inc. v. Kabbage, Inc.*, No. 16 C 2513, 2018 WL 488257, at *4 (N.D. Ill. Jan. 18, 2018); see *Spine & Sports Chiropractic, Inc. v. ZirMed, Inc.*, No. 3:13-CV-00489-TBR, 2014 WL 2946421, at *10 (W.D. Ky. June 30, 2014) (holding the class definition is overbroad in that it includes persons who have no claim under the TCPA.); *McElhaney v. Eli Lilly & Co.*, 93 F.R.D.

875, 878 (D.S.D. 1982) ("The definition of a class cannot be so broad as to include individuals who are without standing to maintain the action on their own behalf."). And where overbreadth is apparent at the pleadings stage, a class is properly stricken. *PFT of Am., Inc. v. Tradewell, Inc.*, No. 98 Civ. 6413, 1999 WL 179358, at *1 (S.D.N.Y. Mar. 31, 1999) (striking class claims where the class was not sufficiently defined).

Allowing an overbroad class to proceed past the pleadings stage creates an inherent unfairness to the defendant in view of the "in terrorem character of a class action." *Kohen*, 571 F.3d at 678; *see also Barnes v. Coca-Cola Co.*, No. 1:22-CV-01511-KJM-EPG, 2025 WL 1027431, at *5 (E.D. Cal. Apr. 7, 2025) ("Coca-Cola—like all defendants facing suit—is 'entitled to know the class definition being alleged against them.'") (citation omitted). This is particularly true in TCPA class actions where the statute provides for a minimum of $500 in statutory damages per violation. 47 U.S.C. § 227(c)(5); *see also Kohen*, 571 F.3d at 677-78 ("When the potential liability created by a lawsuit is very great, even though the probability that the plaintiff will succeed in establishing liability is slight, the defendant will be under pressure to settle rather than to bet the company...").

Here, Plaintiff's proposed DNC Registry Class and Internal DNC Class are overly broad because they indiscriminately encompass individuals who lack any valid legal claim against EverQuote or FGI. The DNC class definitions fail to adequately exclude the significant number of individuals who provided consent or had an established business relationship ("EBR") with the caller. Although the FAC added a partial EBR exclusion to the DNC Registry Class, that exclusion is insufficient for the reasons set forth below. The Internal DNC Class is separately overbroad because it includes persons whose numbers appeared on FGI's, any agent's, or any vendor's internal DNC list, regardless of whether EverQuote received the request, maintained or controlled

the list, had access to the list, or placed any communication covered by that request.

Because these distinct failures guarantee the inclusion of uninjured, standing-less class members, striking the class definitions at this early stage is fully warranted.

***1.     The DNC Classes Remain Overly Broad Despite The FAC's Partial EBR Exclusion.***

Courts routinely reject class definitions that include members for whom issues of individualized defenses arise. *See Leon v. Loandepot.com, LLC*, No. 2:25-CV-01787-JLS-AGR, 2025 WL 2632396, at *3 (C.D. Cal. Aug. 22, 2025) (striking class as overly broad because it included individuals who consented and had an EBR); *see also Ung v. Universal Acceptance Corp.*, 319 F.R.D. 537, 540 (D. Minn. 2017) (noting individualized proof prevents the class from being cohesive); *Brown v. Nano Hearing Tech Opco, LLC*, No. 3:24-CV-00221-BTM-JLB, 2024 WL 3367536, at *8-9 (S.D. Cal. July 9, 2024) (finding that the plaintiff's class was flawed because it included individuals who lacked standing under the TCPA); *see also Martinez v. TD Bank USA, N.A.*, No. CV 15-7712(JBS/AMD), 2017 WL 2829601, at *12 (D.N.J. June 30, 2017); *Warnick v. Dish Network LLC*, 301 F.R.D. 551, 559 (D. Colo. 2014) (denying class certification and finding that the class was overbroad); *Jamison v. First Credit Servs.*, 2013 WL 3872171, at *8 (N.D. Ill. July 29, 2013) (explaining that the proposed class potentially included thousands of individuals who had no grievance under the TCPA, making the class overly broad).

Under the TCPA's implementing regulations, the term "telephone solicitation" is defined to expressly exclude calls made to individuals who have an EBR with the caller. *See* 47 C.F.R. § 64.1200(f)(15). Consequently, individuals who had an EBR with EverQuote or Farmers Insurance Exchange suffered no legal injury and lacked Article III standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("Every class member must have Article III standing in order to recover individual damages. 'Article III does not give federal courts the power to order relief to any

uninjured plaintiff, class action or not.'"). "[A] proposed class m[a]y be deemed overly broad if it 'would include members who have not suffered harm at the hands of the [d]efendant and are not at risk to suffer such harm.'" *Brashear v. Perry Cnty., Ky.*, No. CIV.A. 6:06-143 DCR, 2007 WL 1434876, at *2 (E.D. Ky. May 14, 2007).

The FAC's new EBR exclusion for the DNC Registry Class attempts to address this deficiency by excluding persons with recent "Farmers" transactions or inquiries. *See* FAC ¶ 46. But this exclusion is incomplete in at least two critical respects.

First, the exclusion addresses only EBRs with "Farmers"—not EBRs with EverQuote. The FAC expressly provides that "a visit to, inquiry through, application submitted to, transaction with, or relationship involving EverQuote or another lead generator does not, by itself, remove a person from the DNC Registry Class." FAC ¶ 47. But an individual who had an EBR with EverQuote would have no TCPA claim against EverQuote, because EverQuote's calls to that individual would not constitute "telephone solicitations" under § 64.1200(f)(15). By expressly including such individuals, the class definition sweeps in persons who have no viable claim against EverQuote.

Second, the Internal DNC Class contains no EBR exclusion whatsoever. FAC ¶ 46. The Internal DNC Class broadly captures anyone who received two or more "telemarketing calls and/or text messages" while on "Farmers'" or any vendor's internal DNC list, without carving out those who had an EBR with the caller. Because this class indiscriminately sweeps in individuals whose claims would require individualized inquiries into EBR, consent, internal DNC request, knowledge, and access, it is fatally overbroad. *See Barnes*, 2025 WL 1027431, at *5; *Brown*, 2024 WL 3367536, at *8.

The Internal DNC Class is also overbroad for an independent reason: it includes persons whose numbers appeared on "Farmers' or any of its agents or their vendors' internal Do Not Call

List," so long as the lead was obtained from EverQuote. FAC ¶ 46. That definition is not limited to persons who made a do-not-call request to EverQuote. Nor is it limited to lists EverQuote maintained, controlled, accessed, or knew about. Instead, the class purports to include persons appearing on any internal DNC list maintained by FGI, any agent, or any vendor. A person's presence on a third party's internal DNC list does not, by itself, establish that EverQuote received a do-not-call request, had access to the relevant list, controlled the list, knew the number was on the list, or made a communication covered by that request.

At bottom, because the proposed classes do not adequately exclude such individuals, a potentially large portion of their members possess no viable claim, making them incurably overbroad.

## B.    The Proposed Class Members Lack Commonality.

"The commonality requirement [of Federal Rule of Civil Procedure 23] demands only that there be 'questions of law or fact common to the class.'" *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009) (citation omitted). A class that lacks commonality is also not certifiable. *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 477-78 (8th Cir. 2016) ("Under Rule 23(a), a district court may certify a class only if it 'is satisfied, after a rigorous analysis,' that the four threshold requirements are met" which includes "commonality of legal or factual questions.") (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). "If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question*." Messner v. Northshore Univ. Health Sys.*, 699 F.3d 802, 815 (7th Cir. 2012) (quoting *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir.2005)). In other words, there must be at least one "common contention"

9

that "is central to the validity" of the claims and that can be resolved "in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Here, the same defects that render the proposed classes overly broad inherently destroy the requisite Rule 23 commonality. Because the DNC Registry Class and Internal DNC Class definitions indiscriminately include individuals regardless of whether those calls were made to persons with an EBR, determining class membership and liability cannot be resolved "in one stroke." Instead, assessing whether each class member had an EBR with Defendants is a classic individualized inquiry. It requires a member-by-member factual analysis of specific past interactions, transactions, or inquiries between that individual and EverQuote or FGI, instantly splintering any potential common questions. As noted above, the FAC's partial exclusion for the DNC Registry Class addresses only "Farmers" EBRs, not EverQuote EBRs—and the Internal DNC Class contains no EBR exclusion at all. This guarantees that EBR determinations will require member-by-member analysis.

The Internal DNC Class creates still more individualized inquiries because membership turns on whether a number appeared on FGI's, an agent's, or a vendor's internal DNC list. FAC ¶ 46. That inquiry cannot be answered by one common record. It would require individualized proof regarding whose list applied, when the request was made, whether the request covered the challenged communication, whether EverQuote knew of or had access to the list, and whether the call or text was made by or on behalf of the entity to whom the request was directed.

Because the claims of the proposed classes will inevitably depend on evidence that varies from member to member, commonality is absent on the face of the pleadings. No amount of discovery can cure this deficiency, and the class allegations must therefore be stricken.

**C.     The Proposed Classes Are Uncertifiable Because They Are Not Defined On Objective Criteria And Instead Depend On Resolution Of Merits Inquiries.**

A class must be defined using administratively feasible, objective-based criteria. *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 996 (8th Cir. 2016) (citing *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 525 (6th Cir. 2015) (For "a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria."); *Byrd v. Aaron's Inc.*, 784 F.3d 154 (3d Cir. 2015), as amended (Apr. 28, 2015) (explaining that a class must be defined with reference to objective criteria in order to be ascertainable); *see also de Lacour v. Colgate-Palmolive Co.*, 338 F.R.D. 324, 339 (S.D.N.Y. 2021), *lv. to app. den.*, No. 21-1234, 2021 WL 5443265 (2d Cir. Sept. 16, 2021) ("[A] class must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member, and must be defined by objective criteria that are administratively feasible, such that identifying its members would not require a mini-hearing on the merits of each case.") (internal quotation marks omitted) (citation omitted). A class defined based upon the merits of a claim is simply not certifiable. *St. Louis Heart Ctr., Inc. v. Vein Centers for Excellence, Inc.*, No. 4:12 CV 174 CDP, 2017 WL 2861878, at *5-6 (E.D. Mo. July 5, 2017) (decertifying class where class was based on objective criteria and therefore, not ascertainable).

This is so because merits determinations must not be made at the certification stage—yet a class defined based upon the merits of a claim assures that all members of a class have already won on a critical substantive issue. *MSP Recovery Claims v. Plymouth Rock Assur. Corp., Inc.*, 404 F. Supp. 3d 470, 485 (D. Mass. 2019); *see also Brown v. Electrolux Home Products, Inc.*, 817 F.3d 1225, 1234 (11th Cir. 2016) (explaining that a "district court can consider the merits 'only' to the extent 'they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.'") (citation omitted). A class must therefore be ascertainable without inquiring into

the merits of the case. *St. Louis Heart Ctr., Inc.*, 2017 WL 2861878 at *5 ("There is no objective criterion available to accurately identify potential class members, making the class unascertainable."); *Saf-T-Gard Int'l, Inc. v. Wagener Equities, Inc.*, 251 F.R.D. 312, 314 (N.D. Ill. 2008) ("The court must assess the appropriateness of class certification without regard to the merits of the case.") (quoting *Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 474 (7th Cir.1997)); *Sowders v. Scratch Fin., Inc.*, No. 3:23-CV-56, 2023 WL 7525900, at *9-10 (S.D. Ohio Nov. 14, 2023) (granting the defendant's motion to strike the plaintiff's class allegations where the proposed class definition included those who received a fax "not including the opt-out notice required by 47 U.S.C. § 227(b)(2)(D)" because this definition improperly predicated class membership on the ultimate legal conclusion of the claim).

Here, Plaintiff's proposed DNC Registry Class and Internal DNC Class in the FAC suffer from the same merits-based defect identified in EverQuote's original Motion to Strike Class Allegations. Both classes continue to predicate membership on whether an individual received "telemarketing" calls or text messages. FAC ¶ 46. To simply identify who belongs in the classes, this Court would be forced to conduct a massive, individualized review of the specific content and context of every single communication to determine if it legally constitutes "telemarketing" under the TCPA. These are plainly merit determinations. *Weister v. Vantage Point AI, LLC*, No. 8:21-CV-1250-SDM-AEP, 2022 WL 3139373, at *7-8 (M.D. Fla. Aug. 3, 2022), motion to certify appeal denied, No. 8:21-CV-1250-SDM-AEP, 2022 WL 7026495 (M.D. Fla. Oct. 12, 2022) (considering whether the at-issue calls are "telemarketing" a merits challenge); *Broking v. Green Brook Buick GMG Suzuki*, No. CV151847BRMLHG, 2017 WL 3610490, *5-6 (D.N.J. Aug. 22, 2017) (finding that the at-issue call from the defendant did not violate the TCPA because it did not constitute telemarketing); *Daniel v. Five Stars Loyalty, Inc.*, No. 15-CV-03546-WHO, 2015 WL 7454260,

*6-7 (N.D. Cal. Nov. 24, 2015) (dismissing a complaint where the text sent by defendant did not violate the TCPA because it was not telemarketing).

The assumption that any merit has been met by allowing, rather than striking, these class definitions would be highly prejudicial to EverQuote. Because this defect is incurable and apparent on the face of the FAC, this Court should strike the class allegations here and now.

**D.      The Proposed Class Definitions Are Unduly Vague.**

"Courts have also rejected class definitions that are overly broad, amorphous or vague." *In re Fosamax Prod. Liab. Litig.*, 248 F.R.D. 389 (S.D.N.Y. 2008) (citation omitted). "Vagueness is a problem because a court needs to be able to identify who will receive notice, who will share in any recovery, and who will be bound by a judgment." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 660 (7th Cir. 2015). Indeed, "[c]lass definitions have failed [the ascertainability] requirement when they were too vague or subjective" *Id.* at 657.

Before a court may certify a class, "the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537-38 (6th Cir. 2012) (citation omitted). A class definition that is "too vague to enable a proper determination of who is a class member" cannot stand. *Ligon v. City of New York*, 288 F.R.D. 72, 83 (S.D.N.Y. 2013).

Here, both the DNC Registry Class and the Internal DNC Class are impermissibly vague because they hinge class membership on whether "the lead associated with the called number was obtained from EverQuote" or "the lead called was obtained from EverQuote." FAC ¶ 46. The phrase "obtained from EverQuote" lacks the requisite clarity for the Court to accurately determine who is a member of the proposed classes. It is entirely unclear whether this phrase encompasses

13

only leads purchased directly from EverQuote by the caller, or whether it also includes leads that pass through one or more intermediaries before reaching the caller.

Without objective boundaries defining what it means for a lead to have been "obtained from" EverQuote, the Court would be forced to conduct an individualized inquiry for each putative class member to determine whether their lead has a sufficient connection to EverQuote. Because the definitions simply lack the precision required to identify class members who will share in recovery or be bound by a judgment, the classes are inherently flawed and must be stricken.

The Internal DNC Class is also impermissibly vague because it depends on undefined internal DNC lists maintained by multiple third parties. The class includes persons whose numbers were on "Farmers' or any of its agents or their vendors' internal Do Not Call List." FAC ¶ 46. That phrase does not identify a single list, a single entity, or any objective source of class membership. Instead, it potentially incorporates separate lists maintained by FGI, individual agents, vendors, sub vendors, or other third parties.

Indeed, the Court cannot determine who receives notice, who is bound by judgment, or who may recover without first deciding whose list controls, whether the relevant list was maintained at the relevant time, which entity maintained it, and whether the challenged communication was covered by the specific do-not-call request that placed the person on that list. Those inquiries are individualized and cannot be resolved by reference to a common, objective record.

Because the Internal DNC Class depends on undefined and potentially numerous third-party internal DNC lists, it is not ascertainable, administratively feasible, or capable of classwide adjudication.

14

## V.      CONCLUSION

For the foregoing reasons, EverQuote respectfully requests that the Court strike Plaintiff's class allegations in their entirety.

Dated: June 18, 2026                              Respectfully submitted,

/s/ Christopher B. Parkerson
Christopher B. Parkerson, (BBO#662952)
Campbell Conroy & O'Neil, P.C.
20 City Square, Suite 300
Boston, MA 02129
Telephone: (617) 241-3075
cparkerson@campbell-trial-lawyers.com

-and-

Eric J. Troutman (*pro hac vice forthcoming)*
Tori L. Guidry (*pro hac vice forthcoming*)
Blake H. Landis (*pro hac vice forthcoming*)
Troutman Amin, LLP
400 Spectrum Center Drive, Suite 1450
Irvine, CA 92618
Telephone: (949) 350-3663
Facsimile:(949)203-8689
tori@troutmanamin.com

*Counsel for Defendant EverQuote, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 18, 2026, a copy of the foregoing was filed electronically and served by other electronic means on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by e-mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

/s/ Christopher B. Parkerson
Christopher B. Parkerson

15