**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| ROBERT HOSSFELD, individually and on behalf of others similarly situated,<br>　　　　　　*Plaintiff,*<br><br>v.<br><br>EVERQUOTE, INC., and FARMERS GROUP, INC.<br>　　　　　　*Defendants.* | Case No. 1:26-cv-11440-RGS<br><br>Leave to File Granted on July 7, 2026 (ECF No. 60) |

**DEFENDANT EVERQUOTE, INC.'S REPLY IN SUPPORT OF ITS
<u>MOTION TO STRIKE CLASS ALLEGATIONS</u>**

## I.　　<u>INTRODUCTION</u>

Plaintiff Robert Hossfeld's ("Plaintiff") Opposition does not adequately rebut EverQuote's arguments that his proposed DNC Registry Class and Internal DNC Class must be stricken at the outset. *See* ECF No. 54. EverQuote's Motion to Strike Class Allegations (the "Motion") demonstrated that the class definitions are facially uncertifiable for four independent reasons: (1) both classes are overbroad because the DNC Registry Class's established business relationship ("EBR") exclusion reaches only "Farmers" EBRs while expressly retaining persons with EverQuote relationships, and the Internal DNC Class contains no EBR exclusion whatsoever; (2) those same defects, along with the Internal DNC Class's dependence on unidentified third-party do-not-call ("DNC") lists, destroy commonality; (3) both classes predicate membership on receipt of "telemarketing" communications, an impermissibly merits-based criterion; and (4) both classes are unduly vague, hinging membership on the undefined phrase "obtained from EverQuote" and, for the Internal DNC Class, on internal do-not-call lists maintained by Farmers Group, Inc. ("FGI"), "any" agent, or "any" vendor. *See* ECF No. 48 at pp. 5-14.

The Opposition primarily argues that striking at this stage of the litigation is "premature" and that consent and EBR are affirmative defenses better addressed at class certification. ECF No. 54 at pp. 2, 4-6, 8-13. What the Opposition does not do is explain how the class definitions, as actually pled, could ever be certified. Indeed, on the central overbreadth point, Plaintiff concedes the defect: he acknowledges that the DNC Registry Class deliberately retains persons with EverQuote EBRs, describing that inclusion as "not an oversight" but rather "the deliberate structure of the class." *Id.* at p. 12. A class deliberately constructed to include persons with no viable claim against EverQuote is not cured by that concession. It is condemned by it. The remainder of the Opposition argues that the TCPA does not require personal registration and that text messages are "calls" under § 227(c)(5). *Id.* at pp. 6-8, 13-21. Neither issue is raised in this Motion, which challenges the class definitions as pled, and neither bears on whether those definitions are facially certifiable. Accordingly, this Reply addresses only the arguments the Opposition directs at the Motion itself, each of which fails.

## II.     ARGUMENT—PLAINTIFF'S OPPOSITION CONFIRMS THAT THE PROPOSED CLASS DEFINITIONS ARE FACIALLY UNCERTIFIABLE AS A MATTER OF LAW.

### A.     Striking At The Pleadings Stage Is Appropriate Because The Defects Are Apparent From The Face Of The FAC And Incurable.

Plaintiff asserts that Rule 12(f) motions are "disfavored" and that class certification questions should await a developed record. ECF No. 54 at pp. 2, 4-5. But as EverQuote's Motion explained, where it is "obvious from the pleadings" that a proceeding "cannot possibly move forward on a classwide basis," district courts use their authority under Rule 12(f) to strike class allegations, and "[j]udges in this District have demonstrated a willingness" to do so. *Downing v. Keurig Green Mountain, Inc.*, No. 1:20-CV-11673-IT, 2021 WL 2403811, at \*7 (D. Mass. June 11, 2021) (quoting *Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013)); *Rovinelli v.*

*Trans World Ent. Corp.*, No. CV 19-11304-DPW, 2021 WL 752822, at *6 (D. Mass. Feb. 2, 2021) (collecting cases); *see* ECF No. 48 at pp. 4-5 (collecting cases granting motions to strike class allegations).

Plaintiff's own authority states the governing standard: class allegations are properly stricken where the court is "convinced that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim[s]" succeed in class action form. *Fishon v. Mars Petcare US, Inc.*, 501 F. Supp. 3d 555, 575 (M.D. Tenn. 2020) (citation omitted); *see* ECF No. 54 at pp. 4-5. That standard is met here. EverQuote's Motion does not ask the Court to weigh evidence, resolve factual disputes, or anticipate what discovery may show. It asks the Court to read the class definitions. The defects appear on the face of the First Amended Complaint ("FAC") and are questions of law: a merits-based "telemarketing" predicate, an EBR exclusion that by its terms omits EverQuote EBRs entirely, the absence of any EBR exclusion from the Internal DNC Class, and undefined membership criteria. *See* ECF No. 28. No discovery can amend a class definition.

*Rosenberg v. LoanDepot.com LLC*, 435 F. Supp. 3d 308 (D. Mass. 2020), on which Plaintiff principally relies, does not help him here. ECF No. 54 at p. 6. There, the court declined to strike class allegations where the defendant's "citation of consent as a potential affirmative defense" was "insufficient to warrant striking the putative class solely on the pleadings." *Rosenberg*, 435 F. Supp. 3d at 318. EverQuote's Motion does not rest on speculation that discovery might reveal a defense as to some class members. It rests on what the definitions themselves say: the DNC Registry Class expressly retains persons with EverQuote relationships, and the Internal DNC Class excludes no one. ECF No. 28 at ¶¶ 46-47. Those are structural defects apparent from the four corners of the FAC, not predictions about a future evidentiary record.

Plaintiff's remaining authorities are also of no assistance to his position. *Mantha v.*

3

*QuoteWizard.com, LLC*, 347 F.R.D. 376 (D. Mass. 2024), certified a class on a full evidentiary record. *Mantha* says nothing about whether facially defective class definitions should be stricken at the pleadings stage. The generalized observations in *Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013), and *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 656 (4th Cir. 2019), that TCPA claims are often conducive to classwide disposition, do not address class definitions that predicate membership on the merits, deliberately retain uninjured members, and turn on unidentified third-party lists. The question before the Court is not whether TCPA classes can ever be certified. It is whether *these* definitions are facially viable. They are not.

**B.      Plaintiff Concedes, But Does Not Cure, The Overbreadth EverQuote Identified.**

EverQuote's Motion identified two distinct overbreadth defects, and the Opposition answers neither. *See* ECF No. 48 at pp. 5-9 (collecting cases striking or refusing to certify classes that include uninjured members).

First, as to the DNC Registry Class, the FAC's EBR exclusion is limited by its terms to "persons for whom Farmers' records show" a recent transaction involving, or a recent inquiry or application directed to, Farmers. ECF No. 28 at ¶ 46. And the FAC provides, "[f]or avoidance of doubt," that "a visit to, inquiry through, application submitted to, transaction with, or relationship involving EverQuote or another lead generator does not, by itself, remove a person from the DNC Registry Class" unless "the records show that the person specifically inquired about, applied for, purchased, renewed, or transacted for Farmers insurance products within the applicable time period." *Id*. at ¶ 47. Plaintiff does not dispute this reading. To the contrary, he embraces it: "This is not an oversight — it reflects the deliberate structure of the class, which is premised on EverQuote's role as lead generator for Farmers and the calls made for the purpose of developing Farmers business." ECF No. 54 at p. 12. But under the TCPA's implementing regulations, a call

made to a person with whom the caller has an EBR is not a "telephone solicitation" at all. 47 C.F.R. § 64.1200(f)(15). An individual with an EverQuote EBR therefore has no § 227(c)(5) claim against EverQuote arising from EverQuote's calls, and no Article III injury. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("Every class member must have Article III standing in order to recover individual damages."); *Kohen v. Pac. Inv. Mgmt. Co. LLC & PIMCO Funds*, 571 F.3d 672, 678 (7th Cir. 2009) (a class should not be certified if it contains a great many persons who have suffered no injury); *Leon v. Loandepot.com, LLC*, No. 2:25-CV-01787-JLS-AGR, 2025 WL 2632396, at *3 (C.D. Cal. Aug. 22, 2025) (striking class that included individuals who consented and had an EBR). A class that is "deliberate[ly]" structured to include such persons is not thereby saved. Deliberateness confirms that the overbreadth is incurable as pled, because Plaintiff has disclaimed any intent to define those persons out of the class.

Second, as to the Internal DNC Class, the Opposition identifies no EBR exclusion for the simple reason that none exists. ECF No. 28 at ¶ 46. Plaintiff instead responds that the Internal DNC Class is "well-grounded" because the FAC alleges that EverQuote proximately caused the challenged calls by reselling leads as "opt-in" despite known DNC status. ECF No. 54 at p. 12. But that is a theory of *liability* on Plaintiff's own claim. It does nothing to remove from the class *definition* the persons who had an EBR with the caller and therefore received no actionable "telephone solicitation" in the first place. However uniform EverQuote's alleged resale practices may be, the class as defined still sweeps in members with no viable claim, and their inclusion renders it overbroad. ECF No. 48 at pp. 7-9 (detailing the Internal DNC Class's additional overbreadth defects). Nor does that theory answer the Motion's independent point that a person's presence on a third party's internal DNC list does not, by itself, establish that EverQuote received a do-not-call request, had access to or controlled the relevant list, or made a communication

covered by that request. ECF No. 48 at pp. 8-9.

Plaintiff's effort to reframe these defects as premature "affirmative defense" arguments misses the point. ECF No. 54 at pp. 8-13. He invokes *Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119 (6th Cir. 2016), *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923 (9th Cir. 2018), *Braver v. Northstar Alarm Servs., LLC*, 329 F.R.D. 320 (W.D. Okla. 2018), and *Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964 (N.D. Cal. 2019). But those authorities addressed whether asserted consent defenses defeated predominance at the class-certification stage. They did not address whether a class definition that on its face retains uninjured members should be stricken at the pleadings stage. Likewise, *Ott v. Mortg. Inv'rs Corp. of Ohio, Inc.*, 65 F. Supp. 3d 1046, 1067 (D. Or. 2014), declined to strike where the defect was "not a matter that can be resolved from the face of the Second Amended Complaint." Here, no speculation is required and nothing outside the pleadings is needed. The face of the FAC establishes that the DNC Registry Class retains individuals who have an EBR with EverQuote and that the Internal DNC Class excludes no one. For the same reason, the First Circuit's advice against "mere speculation that individual issues may arise," *Bais Yaakov of Spring Valley v. ACT, Inc.*, 12 F.4th 81, 89 (1st Cir. 2021), does not apply here because EverQuote's argument rests on the text of the definitions, not on conjecture about what discovery may reveal. ECF No. 54 at p. 9.

**C.      The Opposition Confirms That Commonality Is Absent.**

Plaintiff contends that class membership turns on a short list of "objective, factual questions." ECF No. 54 at pp. 5-6. His own list proves EverQuote's point. The first question he poses, whether Defendants "place[d] or cause[d] telemarketing calls or text messages to be placed," presupposes a communication-by-communication determination of whether each call or text was "telemarketing," which is a merits inquiry into content and context. His second question,

6

whether "those persons [were] on Farmers' or its agents' or vendors' internal Do Not Call list," embeds precisely the individualized inquiries the Motion identified: whose list applied, when the request was made, whether the relevant list was maintained at the relevant time, and whether the challenged communication was covered by the request. ECF No. 48 at pp. 10-11, 14 (detailing the member-by-member inquiries the definitions require).

Because the members of the proposed classes "will need to present evidence that varies from member to member" to answer those questions, the questions are individual, not common. *Messner v. Northshore Univ. Health Sys.*, 699 F.3d 802, 815 (7th Cir. 2012). Neither membership nor liability can be resolved "in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Plaintiff answers that EverQuote's alleged uniform resale policy presents "a common legal question applicable to all class members." ECF No. 54 at p. 13. That answer again conflates a common liability theory with the member-by-member inquiries his definitions require to determine who is in the classes at all. A common question about EverQuote's conduct does not answer the individualized questions of each member's EBR status, each communication's telemarketing character, or the origin, ownership, and scope of each third-party internal do-not-call list. The defect is apparent on the face of the pleadings, and no discovery can cure it.

**D.    Plaintiff's Own Framing Confirms That The "Telemarketing" Predicate Is Merits-Based.**

EverQuote's Motion demonstrated that both classes impermissibly predicate membership on whether an individual received "telemarketing" communications, a determination that requires resolving the merits as to every communication. ECF No. 48 at pp. 10-13 (citing *Weister v. Vantage Point AI, LLC*, No. 8:21-CV-1250-SDM-AEP, 2022 WL 3139373, at *7-8 (M.D. Fla. Aug. 3, 2022) (whether at-issue calls are "telemarketing" is a merits question); *Sowders v. Scratch Fin., Inc.*, No. 3:23-CV-56, 2023 WL 7525900, at *9-10 (S.D. Ohio Nov. 14, 2023) (striking class

whose definition "improperly predicated class membership on the ultimate legal conclusion of the claim"); *Broking v. Green Brook Buick GMG Suzuki*, No. CV151847BRMLHG, 2017 WL 3610490, at *5-6 (D.N.J. Aug. 22, 2017) (finding the at-issue call did not violate the TCPA because it did not constitute telemarketing); *Daniel v. Five Stars Loyalty, Inc.*, No. 15-CV-03546-WHO, 2015 WL 7454260, at *6-7 (N.D. Cal. Nov. 24, 2015) (dismissing complaint where the text sent by defendant did not violate the TCPA because it was not telemarketing)).

The Opposition's response concedes the problem. Plaintiff acknowledges that "telemarketing" is "not a rigid or singular concept," that it "may encompass a range of communications depending on their purpose, content, and context," and that "the term may require interpretation or application to a set of facts." ECF No. 54 at p. 11. That is exactly the defect. To determine who is in either class, the Court would have to interpret and apply the statutory concept of telemarketing to the purpose, content, and context of every communication received by every putative member. That is a merits adjudication built into the class definitions themselves. A class must be ascertainable "by reference to objective criteria" without "a mini-hearing on the merits of each case." *de Lacour v. Colgate-Palmolive Co.*, 338 F.R.D. 324, 339 (S.D.N.Y. 2021); *see* ECF No. 48 at p. 11 (collecting cases requiring objective, administratively feasible class criteria).

Plaintiff's reliance on *Panacci v. A1 Solar Power, Inc.*, No. 15-cv-00532-JCS, 2015 WL 3750112, at *8 (N.D. Cal. June 15, 2015), and his related discussion of "fail-safe" classes respond to an argument EverQuote did not make. ECF No. 54 at pp. 5-6. *Panacci* held that a proposed class was not fail-safe because membership could be determined "without reaching any legal conclusions." EverQuote's Motion does not contend that the classes are fail-safe. It contends that membership here *cannot* be determined without reaching legal conclusions, because the "telemarketing" predicate requires the very merits determination *Panacci* found absent. Plaintiff's

admitted "conscious decision" to omit a consent element from the definitions does not remove the telemarketing element from them. ECF No. 54 at p. 9. Removing one merits element does not make the remaining merits element objective.

**E.     Discovery Cannot Supply The Definitional Boundaries The Classes Lack.**

EverQuote's Motion demonstrated that both classes are unduly vague because membership hinges on whether a lead was "obtained from EverQuote," a phrase that does not disclose whether it reaches only leads purchased directly from EverQuote or also leads that passed through one or more intermediaries, and because the Internal DNC Class depends on undefined internal DNC lists maintained by multiple third parties. ECF No. 48 at pp. 13-14 (detailing the undefined terms on which membership in each class depends).

Plaintiff responds that the meaning of "obtained from EverQuote" is "a factual question resolvable through discovery of EverQuote's lead-routing records, warm-transfer data, and sales systems." ECF No. 54 at pp. 12-13 (citing FAC ¶¶ 67a-96a). The paragraphs he cites do not bear on the question. They allege that EverQuote's Google Tag Manager, Google Analytics, server-side tagging, and Anura traffic-quality systems generated records concerning "the alleged March 4, 2026 visit and form submission that EverQuote attributes to Plaintiff," and that those records "contain indicia that the alleged lead was not submitted by Plaintiff." ECF No. 28 at ¶¶ 72a, 74a[1]; *see also id.* at ¶¶ 80a-81a, 87a-89a, 94a-96a. Those allegations concern whether Plaintiff's own lead was genuine, and where it came from. They say nothing about what it means, for any absent class member, for a lead to have been "obtained from EverQuote." That defect is not evidentiary. It is definitional. And the FAC's own allegations place the chain-of-transmission question at the

---

[1] The FAC's paragraph numbering restarts in its Class Allegations section, so some paragraph numbers appear twice. Citations to ECF No. 28 at ¶¶ 46-47 are to the class-definition paragraphs at pages 25-26 of the FAC. Citations with an "a" suffix (e.g., ECF No. 28 at ¶ 72a) follow the convention used in Plaintiff's Opposition and refer to the FAC's first set of numbered paragraphs.

center of the case: Plaintiff alleges that EverQuote "resold or transmitted" his lead, resulting in further calls by downstream purchasers. ECF No. 28 at ¶ 9; *see* ECF No. 54 at p. 13 (citing FAC ¶¶ 9, 47a, 54a-56a). Records showing which leads passed through EverQuote's systems cannot draw a boundary the definition itself omits. Until the definition supplies that boundary, the Court cannot determine "who will receive notice, who will share in any recovery, and who will be bound by a judgment." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 660 (7th Cir. 2015); *see Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537-38 (6th Cir. 2012) (class definition must be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class").

The Internal DNC Class's dependence on "Farmers' or any of its agents or their vendors' internal Do Not Call List," ECF No. 28 at ¶ 46, fails as well. Plaintiff's only answer is his proximate-cause resale theory. ECF No. 54 at p. 13. But whether EverQuote may be held liable for downstream calls says nothing about which of the potentially numerous lists maintained by FGI, individual agents, vendors, or sub-vendors controls membership, whether the relevant list was maintained at the relevant time, which entity maintained it, or whether the challenged communication was covered by the specific do-not-call request that placed the person on that list. ECF No. 48 at p. 14. Those definitional gaps persist regardless of Plaintiff's liability theory, and they render the class unascertainable by any "common, objective record." *Id.* Discovery can populate a defined class; it cannot define one.

## III.   CONCLUSION

For the foregoing reasons, EverQuote respectfully requests that the Court strike Plaintiff's class allegations in their entirety.

///

10

Dated: July 16, 2026

Respectfully submitted,

*/s/ Christopher B. Parkerson*
Christopher B. Parkerson (BBO#662952)
Campbell Conroy & O'Neil, P.C.
20 City Square, Suite 300
Boston, MA 02129
Telephone: (617) 241-3075
cparkerson@campbell-trial-lawyers.com

-and-

Eric J. Troutman (*pro hac vice)*
Tori L. Guidry (*pro hac vice*)
Blake H. Landis (*pro hac vice*)
Troutman Amin, LLP
400 Spectrum Center Drive
Suite 1450
Irvine, CA 92618
Telephone: (949) 350-3663
Facsimile: (949) 203-8689
tori@troutmanamin.com

*Counsel for Defendant EverQuote, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 16, 2026, a copy of the foregoing was filed electronically and served by other electronic means on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by e-mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

*/s/ Christopher B. Parkerson*
Christopher B. Parkerson

11