**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| ROBERT HOSSFELD, individually and on behalf of others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:26-cv-11440-RGS |
| EVERQUOTE, INC., *et al.* | ) ) | |
| Defendants. | ) | |

**DEFENDANT FARMERS GROUP, INC.'S**
**REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

To state a claim under the Telephone Consumer Protection Act,[1] Plaintiff must allege that Defendant Farmers Group, Inc. ("FGI") made one of the calls (direct liability) or allege facts to support holding FGI vicariously liable for calls made by EverQuote or insurance agent Alexander Holmes ("Holmes Agency") under some theory of common law agency ("on behalf of" liability). FGI cannot be held directly liable because FGI did not transmit the calls or text messages to Plaintiff. FAC pp. 6-8 ¶¶ 27, 34-35, 40. The allegations, Agency Appointment Agreement ("AAA"), and public records further demonstrate that neither EverQuote nor the Holmes Agency acted as FGI's common law agent under any theory.

Plaintiff's Amended Complaint ("FAC") does not allege that FGI had any contractual relationship with the Holmes Agency to support actual authority. The AAA is between the Holmes Agency and the Insurance Companies.[2] FAC, p. 19 ¶ 112. FGI is not an insurance company and is not licensed to sell insurance in Texas. Ex. 1, Hays Decl. Ex. A. Therefore, Plaintiff cannot allege that FGI was a "seller" or that EverQuote or the Holmes Agency were acting as telemarketers

---

[1] Count III under the Texas Act is derivative of Plaintiff's TCPA counts. FAC p. 32 ¶ 73. *See also* Tex. Bus. & Com. Code § 305.053(a).

[2] References to defined terms and Exhibits are from FGI's memorandum (ECF 42).

trying to sell FGI's insurance policies. The FAC also fails to allege any facts supporting apparent authority or ratification.

Plaintiff's Opposition does not address these admissions or the contract terms and government records that doom any claim against FGI. Instead, Plaintiff asks this Court to ignore his allegations, the plain terms of the AAA, and the government records, and to disregard the corporate forms of FGI and the Insurance Companies by deceptively using the term "Farmers" without making any factual allegations that would support piercing FGI's corporate veil. FGI is not asking the Court to accept FGI's version of the corporate structure or to draw inferences in FGI's favor. Opp. at 2. FGI is asking the Court to accept Plaintiff's own allegations and the express terms of the AAA showing that FGI is not a party to the contract, is the attorney-in-fact for Farmers Insurance Exchange (the "Exchange"), and is the parent company of FNWL. It is well-settled that the Court is not required to accept as true allegations in a complaint that contradict matters properly subject to judicial notice or that are contradicted by the contract on which a complaint relies. *Yacubian v. United States*, 750 F.3d 100, 108 (1st Cir. 2014) ("It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations.").[3]

## I. FGI CANNOT BE HELD DIRECTLY LIABLE FOR CALLS IT DID NOT MAKE

Courts and the FCC have consistently held that only the party that makes the calls can be held directly liable for violations of the TCPA. *See e.g. Doane v. Benefytt Tech., Inc.*, No. 22-10510-FDS, 2023 WL 2465628, at *8 (D. Mass. Mar. 10, 2023) (dismissing complaint where plaintiff failed to allege that defendant made the calls). The TCPA's implementing regulations

---

[3] Plaintiff incorrectly cites to *Feeman v. Town of Hudson*, 714 F.3d 29, 36 (1st Cir. 2013) and *Ocasio-Hernandez v. Fortuño-Burset*, 640 F.3d 1, 17 (1st Cir. 2011) for the proposition that a court may not resolve disputes between the allegations in a complaint and exhibits. Opp. at 8. Neither decision addressed that question.

impose direct liability only on the "person or entity" that "initiate[s]" the call. *See* 47 C.F.R. § 64.1200(c), (d). The FCC has explained that "a person or entity initiates a telephone call when it takes the steps necessary to physically place a telephone call" and that "direct TCPA liability in this context generally does not extend to sellers who do not personally make the phone calls at issue, but only includes the telemarketers acting on behalf of those sellers." *In re Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6583 (2013)). Plaintiff admits that EverQuote and the Holmes Agency made the calls, not FGI. FAC pp. 6-8 ¶¶ 27, 34-35, 40. Because Plaintiff admits that FGI did not place any of the marketing calls or texts, FGI cannot be directly liable.

Plaintiff attempts to circumvent this settled law by invoking 47 U.S.C. § 227(c)(5)'s reference to calls made "by or on behalf of" the same entity, and by citing the regulatory definitions of "seller" under 47 C.F.R. § 64.1200(f)(11). Opp. at 11-12. But even under this framework, the calls at issue were not made "on behalf of" FGI. They were made on behalf of EverQuote to sell leads or the Holmes Agency to offer their services as insurance agents offering insurance from the Insurance Companies, not FGI. FGI is not an insurance company, does not sell insurance, and has no products or services that were being marketed to Plaintiff. Ex. 1, Hays Decl. Ex. A. The caller ID displayed "Farmers Agent"—a reference to FIE's service marks, not FGI. FAC, p. 6 ¶ 25; Ex. 1, Hays Decl. Ex. B. The Holmes Agency was appointed to sell insurance for the Insurance Companies, not FGI. Ex. 1, Hays Decl. Ex. D. Because FGI has no products, no insurance license, and no appointment of either EverQuote or the Holmes Agency, FGI cannot be the "seller" on whose behalf the calls were made.

Plaintiff's reliance on *Wood v. Farmers Grp., Inc.*, No. 2:21-cv-08960, 2023 WL 2628086 (C.D. Cal. Feb. 7, 2023), is misplaced. The plaintiff in *Wood* named the Insurance Companies as defendants along with FGI. The court lumped all of the defendants together without analyzing the

distinctions among the entities. Because Plaintiff has only named FGI, the question of whether Plaintiff has adequately alleged a factual basis for holding FGI directly or vicariously liable is before the Court.

Plaintiff also invokes Restatement (Third) of Agency §§ 7.03-7.05 for the proposition that a principal can be "directly liable" when an agent commits a tort pursuant to the principal's instructions. Opp. at 10-11. But this theory presupposes the existence of an agency relationship between FGI and EverQuote or the Holmes Agency—the very relationship Plaintiff has failed to establish. *See Smith v. Liberty Mut. Ins. Co.*, 2021 WL 1581017, at *4 (D. Mass. Apr. 22, 2021). Moreover, the "telemarketing policies" Plaintiff attributes to "Farmers" are policies promulgated under the AAA between the Insurance Companies and their independent contractor agents—not policies issued by FGI. FAC, p. 19 ¶¶ 110-112.

## II.    PLAINTIFF HAS NOT AND CANNOT ALLEGE FACTS SUPPORTING VICARIOUS LIABILITY

Because FGI did not place any of the calls, Plaintiff's only potential avenue for stating a cause of action under the TCPA and Texas Bus. & Com. Code against FGI would be to allege facts sufficient to support a theory of vicarious liability. *See Smith v. Liberty Mut. Ins. Co.*, No. 1:20-CV-11583-ADB, 2021 WL 1581017, at *4 (D. Mass. Apr. 22, 2021). The Amended Complaint fails in this respect as well.

### A.    The FAC Failed to Allege Any Facts Supporting an Inference that FGI, as a Principal, Manifested Its Consent to the Holmes Agency or EverQuote

"Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf." *Hossfeld v. Allstate Ins. Co.*, 179 F.4th 1046, 1052 (7th Cir. 2026) (quoting Rest. (3d) of Agency § 1.01 (2006)). Plaintiff has not alleged any facts suggesting any manifestation of assent by FGI that the Holmes Agency or EverQuote were authorized to act on FGI's behalf as its common law agents.

4

Plaintiff's Opposition attempts to sidestep this requirement by asserting that FGI "created, operated, approved, controlled, and benefited from the telemarketing pipeline." Opp. at 1. But the Court should not accept these "conclusory statements" and "bald assertions" as true. *Iqbal*, 556 U.S. at 678; *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996). The FAC's "operational control" allegations may be reduce to two categories: (1) provisions in the AAA between the Insurance Companies and the Holmes Agency (a contract to which FGI is not a party) (FAC, p. 19 ¶ 112); and (2) descriptions of the Agency Growth Store (a commercial marketplace where insurance agents purchase leads from vendors). FAC, pp. 5-6 ¶¶ 20-22, 61-62. Neither category establishes that FGI manifested assent for EverQuote or the Holmes Agency to act on FGI's behalf.

The FAC admits that FGI is the attorney-in-fact of the Exchange and that FGI is not a party to the AAA. FAC, p. 5 ¶ 18; p. 19 ¶ 112; Ex. 2.  It is well-settled law that when an agent makes a contract on behalf of a disclosed principal, (1) the principal and the third party are parties to the contract, and (2) the agent is not a party to the contract unless the agent and the third party agree otherwise. Rest. (3d) of Agency § 6.01.

The FAC admits that the Holmes Agency purchased leads directly from EverQuote. FAC, pp. 2, 8 ¶¶ 9, 37. FGI's role in creating the Agency Growth Store marketplace where EverQuote could offer to sell leads at discounted rates to independent insurance does not support an inference that FGI agreed that EverQuote was selling leads on FGI's behalf or that the Holmes Agency was buying leads on FGI's behalf.  Opp. at 14-15. Operating a marketplace that allows vendors to sell their products to buyers does not create an agency relationship. *See McDermet v. DirecTV, LLC*, No. CV 19-11322-FDS, 2021 WL 217336, at *9 (D. Mass. Jan. 21, 2021) ("However, the fact that defendants contracted with the retailers for various services does not, without more, establish such

5

[vicarious] liability"). An arm's-length commercial transaction between a buyer and a seller—even one facilitated by a third party—does not give rise to an inference of agency.

The only alleged "manifestation" in the FAC is that the Exchange authorized the Holmes Agency and EverQuote to use the Farmers Insurance® and Farmers® service marks owned. *See* Opp. 17-18. However, use of the Exchange's service marks does not support holding the Exchange vicariously liable, much less FGI. *See Theos & Sons, Inc. v. Mack Trucks, Inc.*, 729 N.E.2d 1113, 1121 (Mass. 2000); *Gonzalez v. Walgreens Co.*, 878 F.2d 560, 562 (1st Cir.1989) (franchisee's use of franchisor's logo, by itself, does not create genuine issue of material fact with respect to apparent authority); *Negrón-Torres v. Verizon Commc'm, Inc.*, 478 F.3d 19, 26 (1st Cir. 2007) (use of "Verizon" trademark not sufficient to demonstrate agency between entities). The Court should rely on the terms of the AAA, which define the rights and responsibilities of the Holmes Agency and the Insurance Companies, over the vague allegations lumping FGI and the Insurance Companies together.

Plaintiff's use of the generic term "Farmers" throughout the FAC and the Opposition is a calculated effort to obscure the corporate distinctions that are fatal to Plaintiff's claims. The FAC's key "control" allegations (FAC, pp. 20-22 ¶ 113(a)-(m)) are all rooted in the AAA and associated policies governing the relationship between the Insurance Companies and their independent contractor agents. Plaintiff's own FAC concedes that "the exchanges are the nominal principal listed in the AAA." FAC, p. 19 ¶ 112. That concession is dispositive: if the Insurance Companies are the principals under the AAA, then FGI—a non-party—cannot be the principal. *See Morales-Posada v. Cultural Care, Inc.*, 141 F.4th 301, 309 (1st Cir. 2025) (non-party to a contract cannot enforce its terms or exercise control rights thereunder).

**B. FAC Fails to Allege EverQuote Was Calling on FGI's Behalf**

Without citation to any authority, Plaintiff argues that an entity who creates an online store where buyers and sellers can exchange goods or services becomes the principal for both the buyers and sellers who use the platform. Opp. at 7, 8. Plaintiff argues that FGI became EverQuote's principal by negotiating an arm's-length contract that provided for discounted rates for insurance agents who wished to purchase leads directly from EverQuote. *McDermet v. DirecTV, LLC*, No. 19-11322-FDS, 2021 WL 217336, at *4 (D. Mass. Jan. 21, 2021) (commercial transaction does not create agency relationship). Plaintiff does not allege that FGI purchased leads from EverQuote or sold EverQuote leads to the Holmes Agency. Plaintiff admits that insurance agents purchased leads directly from EverQuote in the Agency Growth Store. FAC, p. 5 ¶ 20; p. 11 ¶ 61. Plaintiff's theory that Farmers "orchestrated the entire system" (Opp. at 14) ignores the FAC's own admissions about how the platform functions: EverQuote generates leads independently, sells them to multiple competing customers (including Progressive), and agents buy directly from EverQuote.

The cases cited by Plaintiff do not support holding FGI vicariously liable. In each case, the plaintiff sued the company that contracted with the purported agent to sell that company's products. Opp. at 15 citing *Rosenberg v. LoanDepot.com LLC*, 435 F. Supp. 3d 308, 314 (D. Mass 2020) (LoanDepot contracted with telemarketer to advertise LoanDepot's services); *Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765 (N.D. Ill. 2014) (insurance company contracted with insurance agents who contracted with telemarketer); *United States v. DISH Network LLC*, 954 F.3d 970, 972 (7th Cir. 2020) (DISH Network contracted with retailers); *Krakauer v. DISH Network, LLC*, 925 F.3d 643, 660 (4th Cir. 2019) (same). FGI did not contract with either the Holmes Agency or EverQuote to sell FGI's products. The Holmes Agency contracted with the Insurance

Companies to sell their insurance policies. FAC, p. 19 ¶ 110; Ex. 2. FGI's contract with EverQuote set the price at which EverQuote would sell leads—it did not appoint EverQuote as FGI's agent.

Plaintiff cites to *Johansen v. HomeAdvisor, Inc.*, 218 F. Supp. 3d 577 (S.D. Ohio 2016) as holding that "allegations concerning authority, control, branding, and benefits sufficient to plead vicarious TCPA liability." Opp. at 15. *Johansen* says no such thing. The court granted the defendant's motion to dismiss finding the plaintiff failed to allege facts supporting any theory of common law agency. *Id.* at 585-86. Just as in *Johansen*, the FAC does not allege that EverQuote or the Holmes Agency made any reference to FGI during the calls or text message. In *Cunningham v. Kondaur Capital*, also cited by Plaintiff, the court granted the defendant's motion to dismiss because the plaintiff failed to allege facts to support common law agency. No. 3:14-1574, 2014 WL 8335868, at *6-8 (M.D. Tenn. Nov. 19, 2014). Just as in *Cunningham*, the FAC failed to allege that any call was transferred to FGI or that FGI returned any call. *Id.* at *7.

## C. The FAC Fails to Allege a Factual Basis for Apparent Authority

"Apparent authority can 'be created only by the principal's manifestations to a third party,' and is not established by only the purported 'agent's representations of authority to a third person.'" *McDermet*, 2021 WL 217336, at *8 (quoting *Moreau v. James River-Otis, Inc.*, 767 F.2d 6, 10 (1st Cir. 1985)). Plaintiff's apparent authority theory fails for multiple independent reasons. First, Plaintiff has not alleged that he ever communicated with FGI, much less that FGI made any statement to him suggesting that EverQuote or the Holmes Agency were authorized agents of FGI. Plaintiff's apparent authority argument fails on this ground alone. *See Moreau v. Local Union No. 247, Int'l Broth. of Firemen & Oilers, AFL-CIO*, 851 F.2d 516, 518 (1st Cir. 1988); *Smith*, 2021 WL 1581017, at *4.

Second, the FAC alleges no facts that FGI (the purported principal) said or did anything that could have led Plaintiff to believe that the callers were calling on FGI's behalf. At most,

8

Plaintiff alleges EverQuote and the Holmes Agency used the service marks "Farmers" and "Farmers Insurance" owned by the Exchange— not FGI. FAC, p. 6 ¶ 25; p. 8 ¶ 38; Ex. 1, Hays Decl. Ex. B. The use of another entity's service marks does not create apparent authority. *Doane*, 2023 WL 2465628 at *10; *Bartolotta v. Dunkin' Brands Grp., Inc.*, No. 16 CV 4137, 2016 WL 7104290, at *2 (N.D. Ill. Dec. 6, 2016) ("mere licensing of a trade name does not create an agency relationship, either ostensible or actual"); *Negrón-Torres*, 478 F.3d at 26; *Gonzalez*, 878 F.2d at 562 (use of franchisor's logo itself does not create apparent authority).

Next, Plaintiff argues that apparent authority may be created through "conduct" directed at "the public or a class of persons" rather than a specifically identified individual, and that a principal may manifest authority by placing an actor in a "position or system." Opp. at 18-19. Even accepting this broader formulation, the FAC fails because it does not allege that *FGI* placed anyone in such a position. The entire system Plaintiff describes—the AAA, the branding, telemarketing policies—operates under the Insurance Companies' names and authority. FGI's role as attorney-in-fact for the Exchange does not transform the Insurance Companies' marketing system into FGI's system for purposes of apparent authority. The AAA makes clear that the Insurance Companies—not FGI—grant insurance agents the right to use Farmers® branding and impose the associated marketing requirements. Ex. 2, ¶ B.9.

Finally, Plaintiff never alleges that he believed *FGI* authorized the calls. He alleges he believed the generic shorthand "Farmers" authorized the calls. FAC, pp. 23-24 ¶ 123. This conflation is the type of imprecise pleading the Court should disregard, particularly where the corporate forms of FGI and the Insurance Companies are admitted. *See Negrón-Torres*, 478 F.3d at 26 (plaintiff "play[ed] fast and loose with the trademark in an effort to blur the distinction between" distinct corporate entities).

### D.  The FAC Fails to Allege Facts Supporting Ratification

Because Plaintiff failed to allege the existence of an agency relationship between FGI and either EverQuote or the Holmes Agency, the ratification theory fails as a principal cannot "ratify" an alleged agent's conduct if there was agency relationship in the first place. *See Canney v. City of Chelsea*, 925 F. Supp. 58 n.8 (D. Mass. 1996).

Plaintiff's ratification theory also fails on the merits. Plaintiff alleges that FGI should be liable because FGI "retained the benefit" of Plaintiff's contact information. Opp. at 19. But the Seventh Circuit rejected this same theory in another case brought by this Plaintiff:

> Hossfeld admits he never obtained insurance or any other services from Allstate. And even if the act of sending a quote or email to a potential customer constituted a "benefit," it was Allstate's agents, not Allstate, who sent the quotes to Hossfeld. This is insufficient to support that Allstate knowingly accepted and retained any benefit stemming from the calls to Hossfeld.

*Hossfeld*, 179 F.4th at 1057. FGI is one step further removed from any "benefit" because Allstate was the insurer and had the direct contractual relationship with the insurance agents.

Plaintiff's ratification theory independently fails because ratification requires the retention of something the purported principal is not otherwise entitled to retain except through the purported agent's act. *See* Rest. Agency §§ 98, 99. EverQuote and the Holmes Agency had the right to retain Plaintiff's contact information independent of the telephone calls. The Holmes Agency could have solicited Plaintiff via direct mail or email without violating the TCPA. Any "benefit" FGI allegedly derived was from the existence of the Agency Growth Store marketplace—not from the specific calls—and FGI would have received that benefit regardless of whether the TCPA was violated. Because the Holmes Agency and the Insurance Companies would have been entitled to retain Plaintiff's information regardless of whether EverQuote or Holmes called Plaintiff, Plaintiff's ratification theory fails as a matter of law.

## III.    CONCLUSION

For the reasons explained above, Plaintiff's Amended Complaint should be dismissed with prejudice as to Farmers Group, Inc.

Respectfully submitted,

FARMERS GROUP, INC.

By its attorneys,

Dated:  July 31, 2026

_____
Maxwell Gessman (BBO #715177)
TROUTMAN PEPPER LOCKE LLP
111 Huntington Avenue, 9th Floor
Boston, MA 02199-7613
Tel: (617) 239-0100
Maxwell.gessman@troutman.com

Brian I. Hays (*Admitted Pro Hac Vice)*
TROUTMAN PEPPER LOCKE LLP
111 South Wacker Drive
Chicago, IL 60606
T: 312-443-0700
Brian.hays@troutman.com

### Local Rule 7.1 Certification

I certify that on July 31, 2026, counsel for the parties conferred in good faith in an effort to resolve or narrow the issue presented by this motion. Plaintiff's counsel does not take a position on the relief sought, indicating they would need to review the reply before doing so.

_____
Maxwell Gessman

11

**Certificate of Service**

I hereby certify that on July 31, 2026, a true and correct copy of the foregoing was filed through the Court's Electronic Case Filing (ECF) system and thereby served on all parties registered to receive electronic notifications through ECF.

                                                    _____

                                                    Maxwell Gessman