**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **ROBERT HOSSFELD,** individually and on behalf of all others similarly situated, | |
| *Plaintiff,* | Case No. 1:26-cv-11440-RGS |
| *v.* | Leave to File Granted on July 21, 2026 (ECF No. 66) |
| **EVERQUOTE, INC., and FARMERS GROUP, INC.** | Hon. Richard G. Stearns |
| *Defendants.* | |

**DEFENDANT EVERQUOTE, INC.'S
REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant EverQuote, Inc. ("EverQuote") respectfully submits this Reply in support of its

Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 28). *See* ECF Nos. 45, 46.

**I.    INTRODUCTION**

Plaintiff's Opposition defends a pleading that was never filed—one in which Plaintiff made

a do-not-call request to EverQuote, EverQuote controlled the March 9–11 callers, and Plaintiff

himself gave EverQuote the information he says was sold. The FAC pleads none of that. Four

defects remain. First, on Count II, Plaintiff identifies no do-not-call request made to EverQuote.

But 47 C.F.R. § 64.1200(d) imposes entity-specific obligations, and the FAC affirmatively pleads

that Farmers Group, Inc.'s ("FGI") policies do not require Farmers agents to relay such requests

to lead vendors like EverQuote. FAC ¶ 42.[1] The FAC pleads no facts showing any request was

relayed to EverQuote through that system.

Second, Plaintiff's "reasonableness" authorities do not reach these facts. Each of his cases

---

[1] The FAC repeats several paragraph numbers (e.g., two sets of ¶¶ 14–16; renumbered paragraphs within each count). Citations are to the factual-allegation paragraphs, ECF No. 28 at 1–25.

involved a request made directly to the defendant or through its own opt-out channel. Here, the FAC does not plausibly allege that EverQuote received the request at all.

Third, Count IV fails at unjust enrichment's first element—a measurable benefit conferred by the plaintiff. The FAC pleads that someone other than Plaintiff submitted his information, without his knowledge. FAC ¶¶ 74, 81, 89, 96–99. A plaintiff who supplied nothing conferred nothing. Fourth, on Calls 6–8, Plaintiff's "by or on behalf of" framing does not displace agency law. It invokes it. The FAC does not plead that EverQuote controlled anyone; it pleads knowledge and foreseeability. FAC ¶¶ 9, 55–56. Lastly, Plaintiff agrees that Count III is wholly derivative. ECF No. 61 at 10. It falls with the TCPA theories on which it rests.

## II.     ARGUMENT

### A.     Count II Fails Because the FAC Does Not Plead That EverQuote Received a Do-Not-Call Request, and Its Own Allegations Defeat That Inference.

Section 64.1200(d) is entity specific. A "person or entity" making telemarketing calls must maintain a list of persons who request not to receive calls "made by or on behalf of that person or entity," and honor requests made to it. 47 C.F.R. § 64.1200(d), (d)(3), (d)(6). The FAC does not allege that Plaintiff's number appeared on EverQuote's internal list. It alleges the number was on "Farmers' internal Do Not Call list." FAC ¶¶ 4, 15, 58; ECF No. 61 at 3. The only request pleaded with specificity before the March 5 text was made on March 4 to the independent Holmes Farmers agency. FAC ¶¶ 35–37, 41.

Plaintiff answers that EverQuote had "actual knowledge" of the Farmers listing through a "nearly instantaneous Do Not Call information sharing system." FAC ¶¶ 15, 58–59. The FAC defeats that inference. The same pleading alleges that FGI's policies "do not require that Farmers agents notify the companies from whom they purchase leads (such as EverQuote) of a Do Not Call request." FAC ¶ 42. Plaintiff embraces that allegation, calling it "the pleaded violation." ECF No.

61 at 6. He cannot have it both ways. If Farmers agents were not required to relay stop requests to EverQuote, nothing pleaded shows that the March 4 request ever entered the shared system, and no pleaded fact explains how EverQuote learned of any earlier one. Where a complaint's own allegations defeat the inference the plaintiff seeks, the claim is not plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The remaining prior-request allegations are conclusory—the FAC pleads neither when any earlier demand was made, nor to whom, nor how EverQuote learned of it. FAC ¶¶ 4, 14–15, 26. Plaintiff responds that this information is "peculiarly within the possession and control of the defendant[s]." ECF No. 61 at 5 (quoting *Guadian v. DebtBlue LLC*, No. EP-23-CV-329-KC, 2024 WL 5184488, at *3 (W.D. Tex. Apr. 16, 2024)). That principle is narrower here—the date, recipient, and content of Plaintiff's own prior requests are not facts peculiarly within EverQuote's possession. An allegation made on information and belief must be supported by a stated factual basis, and "'[i]nformation and belief' does not mean pure speculation." *Menard v. CSX Transp., Inc.*, 698 F.3d 40, 44 (1st Cir. 2012). The FAC supplies no such basis.

Plaintiff's reliance on *Robison v. 7PN, LLC*, 569 F. Supp. 3d 1175 (D. Utah 2021), is misplaced. ECF No. 61 at 4. *Robison* was a § 64.1200(d)(4) caller-identification case—the defendant's texts gave only its "d/b/a" rather than its legal name. *Robison*, 569 F. Supp. 3d at 1185–86. It held only that list membership is not required to sue under (d)(4), *id.* at 1184—the opposite of Plaintiff's reading. *Robison* did not hold that a lead vendor violates § 64.1200(d) by transmitting a number carried on another company's internal list.

Finally, the affiliated-entity language Plaintiff invokes cuts against him: a request reaches other entities only where "the consumer reasonably would expect them to be included given the identification of the caller and . . . the product being advertised." 47 C.F.R. § 64.1200(d)(5). That

language appears in (d)(5), not the (d)(3) provision Plaintiff cites. ECF No. 61 at 6. The FAC does not allege that EverQuote and the Holmes agency were affiliated, that the Holmes agency called on EverQuote's behalf, or that Plaintiff directed his request to EverQuote. Knowledge that EverQuote supplied the lead does not convert a request to a Farmers agency into a request to EverQuote. *See* FAC ¶¶ 36, 39, 41.

**B.    Each Decision Plaintiff Cites on "Reasonable Time" Involved a Request Made Directly to the Defendant.**

The regulation requires compliance "within a reasonable time," capped at ten business days. 47 C.F.R. § 64.1200(d)(3). EverQuote claims no ten-day safe harbor; its point is narrower. On these allegations—a request lodged with a non-party under a pleaded policy that does not relay it—a single text one day later is not an unreasonable delay as pleaded.

Plaintiff's cases confirm the distinction. In *Gill*, the consumer opted out by replying "STOP" to the defendant's own text, and the challenged call came within the hour. *Gill v. Align Technology, Inc.*, No. 21-CV-631-JPS, 2022 WL 1540016, at *1, *3–*4 (E.D. Wis. May 16, 2022). In *Lourie v. Papa John's International, Inc.*, No. 1:23-CV-4320-MHC, 2024 WL 5497082, at *1, *4 (N.D. Ga. June 25, 2024), the plaintiff sought to opt out by texting "STOP" within the defendant's own text-message program. *Hulett v. EyeBuyDirect, Inc.*, No. 1:24-CV-996 (AMN/MJK), 2025 WL 1677071, at *6 (N.D.N.Y. June 13, 2025), and *Menin v. Star Markets Co.*, No. 1:23-cv-11918-DJC, 2024 WL 4123522, at *3–*4 (D. Mass. Sept. 9, 2024), likewise involved requests directed to the defendant. In each, the defendant indisputably had the request. Here, the FAC never establishes that EverQuote had the request at all. The "nearly instantaneous" allegation cannot supply the missing inference. According to Plaintiff's own characterization, the system never received the March 4 request. FAC ¶ 42; ECF No. 61 at 6. An allegation the complaint elsewhere negates cannot carry a claim past Rule 12(b)(6).

**C.     The FAC Pleads That EverQuote's Procedures Exist, Not That They Are Absent.**

Plaintiff argues that EverQuote "inverts the pleading burden" by requiring him to plead the absence of procedures. ECF No. 61 at 8. The regulation itself imposes it—§ 64.1200(d) conditions telemarketing on instituting enumerated minimum procedures, and a (d)(3) violation consists of initiating calls before they are in place. *Simmons v. Charter Commc'ns, Inc.*, 222 F. Supp. 3d 121, 131, 139–40 (D. Conn. 2016), aff'd, 686 F. App'x 48 (2d Cir. 2017). Plaintiff answers that *Simmons*, *Nece v. Quicken Loans, Inc.*, No. 8:16-CV-2605-T-23CPT, 2018 WL 1326885 (M.D. Fla. Mar. 15, 2018), and *Buja v. Novation Capital, LLC*, No. 15-81002-CIV, 2017 WL 10398957 (S.D. Fla. Mar. 31, 2017), were decided on developed records. That distinction addresses proof, not elements, and the elements of a claim do not change with the posture in which it is tested.

Plaintiff's alternative—inferring the absence of procedures from the calls themselves—rests on one out-of-circuit decision. *Eagle v. GVG Cap., LLC*, No. 22-cv-00638-SRB, 2023 WL 1415615, at *4 (W.D. Mo. Jan. 31, 2023). The inference is unavailable here—the FAC affirmatively alleges that the procedures exist. It pleads a "nearly instantaneous Do Not Call information sharing system," FAC ¶ 58, and "policies and procedures in place" governing when calls may be placed to listed numbers, FAC ¶ 60. A plaintiff cannot claim an inference his own allegations contradict.

*Charvat v. NMP, LLC*, 656 F.3d 440, 449 (6th Cir. 2011), confirms only that § 64.1200(d) imposes enumerated "minimum procedures." *See* 47 C.F.R. § 64.1200(d)(1)–(6). The FAC pleads that EverQuote has policies and procedures in place and a shared information system, FAC ¶¶ 58, 60, and identifies no enumerated minimum that EverQuote lacks.

What Plaintiff actually alleges is that the defendants' policies "permit telemarketing calls to telephone numbers that are on Farmers and/or EverQuote's DNC list, if Farmers or EverQuote

5

believes there has been a[n] opt-in to receive calls." FAC ¶ 60. That is not a procedural deficiency. Calls placed with consent are permitted, and an internal do-not-call list does not override consent. A policy distinguishing consented from non-consented numbers describes an ordinary compliance program, not the absence of one. Plaintiff's real complaint is that the consent relied on for his number was invalid, which concerns a single transaction rather than EverQuote's procedures.

**D.      Count III Is Derivative, as Plaintiff Concedes.**

Plaintiff does not dispute that a claim under Tex. Bus. & Com. Code § 305.053(a) fails wherever the underlying TCPA claim fails. ECF No. 61 at 10; *see Hunsinger v. Dynata LLC*, No. 3:22-CV-00136-G-BT, 2023 WL 2377481, at *9 (N.D. Tex. Feb. 7, 2023), *report and recommendation adopted* (N.D. Tex. Mar. 4, 2023). The consequence is symmetrical. To the extent the Court dismisses Count II, or the TCPA theories predicated on Calls 6–8, the corresponding portions of Count III must be dismissed with them.

As to duplicative statutory damages, EverQuote asked only that Plaintiff not recover twice for the same calls. Plaintiff responds that the question is premature and that Tex. Bus. & Com. Code § 305.055 now forecloses it. Both responses miss. Whether Plaintiff may stack statutory awards under both the TCPA and § 305.053(a) for the same calls can await judgment, and EverQuote expressly preserves the point. Plaintiff's prematurity cases hold only that. Moreover, § 305.055 forecloses nothing. The provision Plaintiff quotes addresses a claimant who "has recovered under a private action arising from a violation of *this chapter* more than once"— successive recoveries under Chapter 305 itself. Tex. Bus. & Com. Code § 305.055 (emphasis added). It says nothing about adding federal TCPA statutory damages to a § 305.053 award for the same calls, so its temporal reach never comes into play.

**E.      Count IV Fails at the First Element Because the FAC Pleads That Someone Other Than Plaintiff Submitted His Information.**

Plaintiff adopts the Supreme Judicial Court's current formulation of unjust enrichment: the plaintiff must allege that "(1) [he] conferred a measurable benefit on the defendant, (2) [he] reasonably expected compensation from the defendant, and (3) the defendant accepted the benefit with knowledge of [his] reasonable expectation." *Columbia Plaza Assocs. v. Ne. Univ.*, 493 Mass. 570, 227 N.E.3d 999, 1018 (2024); ECF No. 61 at 14. EverQuote accepts that formulation because the FAC fails all three of its elements.

The first element requires that *the plaintiff* conferred the benefit. The FAC alleges that Plaintiff's information was submitted on EverQuote's website by someone other than Plaintiff, without his knowledge, and that Plaintiff never requested a quote. FAC ¶¶ 29, 74, 81, 89, 96–99. The second element fails for the same reason. A consumer cannot reasonably expect compensation from a company he alleges he had never dealt with and whose form he alleges he never completed. The third element fails with it—the FAC nowhere alleges that EverQuote accepted the information knowing Plaintiff expected to be paid for it.

*Lionetta v. InMarket Media, LLC*, 798 F. Supp. 3d 139 (D. Mass. 2025), does not supply what is missing. The passage Plaintiff quotes addresses whether a benefit must be "directly received," *id.* at 151–52, which concerns the path a benefit travels rather than its source. The *Lionetta* plaintiffs downloaded the applications that collected and transmitted their data, so the benefit originated with them. Here it reached EverQuote from someone else entirely. *Sacks v. Dissinger*, 488 Mass. 780, 790 (2021), is likewise inapposite. *Sacks* extended liability to recipients of assets diverted from the plaintiff by an underlying tort—an entitlement the plaintiff already held; it did not hold that a stranger's unauthorized submission of information the plaintiff alleges he never provided confers a "measurable benefit" from him.

Plaintiff's response to *Karp v. Gap, Inc.*, No. 1:13-cv-11600-GAO, 2014 WL 4924229 (D.

Mass. Sept. 29, 2014), is that *Karp* involved a voluntary disclosure. That distinction works against him. The consumer in *Karp* at least gave the retailer her zip code, and the court still found no reasonable expectation of compensation. *Id.* at *2. Plaintiff gave EverQuote nothing. The footnote Plaintiff draws from *Tyler v. Michaels Stores, Inc.*, 464 Mass. 492, 504 n.20 (2013), addressed the measure of Chapter 93A damages where a merchant sold information the consumer provided at the point of sale—not whether a stranger's submission supports restitution.

The adequate-remedy bar independently forecloses Count IV. Plaintiff argues that EverQuote cannot maintain that the TCPA remedies the conduct underlying Count IV while also maintaining that selling a lead is not itself a TCPA violation. ECF No. 61 at 13. The doctrine answers that objection. The bar turns on the *availability* of a legal remedy directed at the injury, not on whether a particular theory ultimately succeeds. *Reed v. Zipcar, Inc.*, 883 F. Supp. 2d 329, 334 (D. Mass. 2012) (the viability of the legal remedy "is beside the point"), aff'd, 527 F. App'x 20 (1st Cir. 2013); *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 16 (1st Cir. 2017); *accord Patenaude v. Orgain, LLC*, 594 F. Supp. 3d 108, 116 (D. Mass. 2022). Plaintiff's own pleading ties the two together. The FAC alleges that EverQuote's resale "resulted in those calls" and that TCPA violations were the "reasonably foreseeable" consequence of the sale. FAC ¶¶ 55–56. That is the same injury the TCPA counts address. *Schuster v. Wynn MA, LLC*, 118 F.4th 30, 38 (1st Cir. 2024). Rule 8(d) permits inconsistent claims, but it does not suspend a substantive limit on equitable relief. Nor can Plaintiff avoid the bar by measuring recovery as EverQuote's revenue rather than statutory damages; a different measure of recovery is not a different injury.

### F.    The FAC's Calls 6–8 Theory Pleads Knowledge and Foreseeability, Not Agency.

Plaintiff says EverQuote addresses the wrong statute because § 227(c)(5) reaches calls made "by or on behalf of the same entity." ECF No. 61 at 16. That language is not an independent

basis for liability. The Commission construed it, and the courts apply it, through federal common-law agency. *In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6584 (2013). Plaintiff's own authority does exactly that. *Doane v. Python Leads, LLC*, No. 1:24-cv-12947-JEK, 2025 WL 3485569, at *8–*9 (D. Mass. Dec. 4, 2025), analyzes seller liability under formal agency, apparent authority, and ratification. Plaintiff cannot invoke *Python Leads* for ratification while disclaiming the framework it applies. Notably, *Python Leads* involved claims against the entity that placed the calls and a cofounder who allegedly drafted the callers' scripts, trained them, and oversaw them daily—control the FAC nowhere alleges of EverQuote as to the March 9–11 callers.

*Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 659–61 (4th Cir. 2019), is not to the contrary—Dish contracted with and controlled the retailer that called. *Krakauer* did not hold that selling a lead makes the seller the caller. Even the transfer cases Plaintiff cites, which denied dismissal, involved a transfer into the defendant's own operation. In *Landy,* the "smooth transfer" ran from the initial caller "to 'Steve' and then to 'Evelyn' of" the defendant. *Landy v. Natural Power Sources, LLC*, No. 3:21-cv-00425-PGS-TJB, 2022 WL 797967, at *3 (D.N.J. Mar. 16, 2022); *accord Doyle v. GoHealth, LLC,* No. CV 22-04291, 2023 WL 11900257, at *3 (D.N.J. Dec. 7, 2023). Here the FAC alleges the reverse. EverQuote transferred Plaintiff's information *out*, to an independent agency, and later sold it to buyers the FAC never identifies. *Toney v. Quality Resources, Inc.*, 75 F. Supp. 3d 727, 746 (N.D. Ill. 2014), is not a seller-liability case. *Bird v. Pro Star Builders, Inc.*, No. 2:22-cv-03610-JLS-JEM, 2022 WL 18216007, at *3 (C.D. Cal. Nov. 28, 2022), drew the same inference—two calls from one number attributed to the identified caller. Neither holds a lead seller liable for its purchasers' calls.

What the FAC actually pleads is that EverQuote owned the lead, labeled it as consented, knew the label was false, and could foresee the result. FAC ¶¶ 9, 55–56. Those are allegations of

knowledge and foreseeability. They are not allegations of control, which is what express or implied authority requires. *Warciak v. Subway Restaurants, Inc.*, 949 F.3d 354, 357 (7th Cir. 2020); *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 449 (9th Cir. 2018). Ratification does not work here because ratification presupposes that the actor purported to act on the principal's behalf. *See Doane v. Benefytt Techs., Inc.*, No. 1:22-cv-10510-FDS, 2023 WL 2465628, at *11 (D. Mass. Mar. 10, 2023) (ratification "does not occur unless . . . the actor acted or purported to act as an agent on the person's behalf" (quoting Restatement (Third) of Agency §§ 4.01(3)(a), 4.03)). And knowledge plus foreseeability plus assistance is aiding and abetting, however labeled—a theory the TCPA does not supply. *Baltimore-Washington Tel. Co. v. Hot Leads Co., LLC*, 584 F. Supp. 2d 736, 746 (D. Md. 2008); *Bank v. Vivint Solar, Inc.*, No. 18-CV-2555 (MKB) (RLM), 2019 WL 1306064, at *5 n.4 (E.D.N.Y. Mar. 22, 2019). This District has dismissed the same theory. *Benefytt*, 2023 WL 2465628, at *9. Plaintiff distinguishes *Benefytt* by listing EverQuote's ownership of the lead, its labeling, its knowledge, its purpose, and the foreseeable result. ECF No. 61 at 18. None of those is control.

Plaintiff's discovery fallback misstates the standard. Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. Plaintiff has already amended once, yet the FAC still identifies no purchaser, no contract, no instruction, and no right of control. Discovery cannot supply the allegations Rule 8 requires first.

## III.   CONCLUSION

For the foregoing reasons, EverQuote respectfully requests that the Court grant its Motion to Dismiss Counts II and IV, dismiss Count III to the extent it is derivative of Plaintiff's deficient TCPA theories, and dismiss Plaintiff's TCPA claims to the extent they are predicated on Calls 6–8, pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: July 31, 2026

Respectfully submitted,

*/s/ Christopher B. Parkerson*
Christopher B. Parkerson, (BBO#662952)
Campbell Conroy & O'Neil, P.C.
20 City Square, Suite 300
Boston, MA 02129
Telephone: (617) 241-3075
cparkerson@campbell-trial-lawyers.com

-and-

Eric J. Troutman (*pro hac vice)*
Tori L. Guidry (*pro hac vice*)
Blake H. Landis (*pro hac vice*)
Troutman Amin, LLP
400 Spectrum Center Drive
Suite 1450
Irvine, CA 92618
Telephone: (949) 350-3663
Facsimile:(949)203-8689
tori@troutmanamin.com

*Counsel for Defendant EverQuote, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 31, 2026, a copy of the foregoing was filed electronically and served by other electronic means on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by e-mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

*/s/ Christopher B. Parkerson*
Christopher B. Parkerson

11