**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **ROBERT HOSSFELD,** individually and on behalf of all others similarly situated, <br><br> *Plaintiff,* <br><br> *v.* <br><br> **EVERQUOTE, INC., and FARMERS GROUP, INC.,** <br><br> *Defendants.* | Case No. 1:26-cv-11440-RGS <br><br> Leave to File Granted on July 21, 2026 (ECF No. 66) <br><br> Hon. Richard G. Stearns |

**DEFENDANT EVERQUOTE, INC.'S
REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION**

Defendant EverQuote, Inc. ("EverQuote") respectfully submits this Reply in further support of its Motion to Compel Arbitration (ECF Nos. 43, 44) and in reply to Plaintiff's Opposition (ECF No. 63).

## I.     INTRODUCTION

Plaintiff's Opposition rests almost entirely on two things: the order denying arbitration in *Weingrad v. EverQuote, Inc.*, No. 1:26-cv-10197-MJJ, 2026 WL 2056767 (D. Mass. June 26, 2026) (Levenson, M.J.) (ECF No. 63-2), and Plaintiff's own unfiled declaration. The Opposition ascribes *Weingrad* to "this Court" at least seven times, *e.g.*, ECF No. 63 at 2-3, 6-7, 10, 20, and likewise presents other judges' decisions as this Court's own: *Gaker* (Judge Kelley), *Starling* (Judge Kobick), and *Mantha* (Judge Sorokin). *Id.* at 13, 16, 19. *Weingrad* is not this Court's decision. It is a magistrate judge's order in a different action, by a different plaintiff, before a different district judge—not the law of this case.

Further, Plaintiff's own pleading confirms that a submission occurred. The Amended Complaint devotes more than thirty paragraphs to the March 4, 2026, session, alleging that

EverQuote's Google Tag Manager, Google Analytics, and systems generated event-level data concerning the alleged visit and form submission. FAC ¶¶ 67-99. His dispute is attribution—not whether EverQuote received a submission tied to his number. On this record, the dispute is not genuine. EverQuote's records tie the submission to Plaintiff's own number and to an email handle, "robertho," corresponding to his own name, and his bare denial cannot defeat them. At a minimum, the proper course is a summary trial under Section 4, not the outright denial Plaintiff seeks. 9 U.S.C. § 4; *Air-Con, Inc. v. Daikin Applied Latin Am., LLC*, 21 F.4th 168, 175 (1st Cir. 2021).

## II.   ARGUMENT

### A.   EverQuote's Business Records Establish Formation, and Plaintiff's Self-Serving Denial Does Not Defeat Them.

#### 1.   The Contois Declaration Makes the Threshold Showing.

The Contois Declaration establishes, through business records created and maintained in the ordinary course, that on March 4, 2026 a user visited auto.everquote.com, which EverQuote owns and operates, Contois Decl. (ECF No. 44-1) ¶¶ 6, 9, and that EverQuote's systems capture session metadata, such as the date, time, and IP address, *id.* ¶¶ 7-8. For this submission, the records establish that the user entered Plaintiff's telephone number and the email address "robertho@gmail.com," *id.* ¶¶ 9-10, and clicked the "Get My Quotes" button, *id.* ¶¶ 13, 17, and directly below that button sat a disclosure stating that, by clicking and submitting the form, the user agreed to the Terms of Use, including the arbitration provision and the E-SIGN Consent. *Id.* ¶¶ 11, 14-15. This District has upheld materially similar declarations over the same objections Plaintiff raises here. *Pan v. Experian Info. Sols., Inc.*, No. 1:24-cv-12963-DJC, 2025 WL 2607941, at *2-4 (D. Mass. Sept. 9, 2025) (Casper, C.J.) (declarant's "position," "duties," and "review of internal documents and records" established personal knowledge; no authority requires "particular evidence, such as the IP address," in the declaration); *accord Lamonaco v. Experian Info. Sols.,*

*Inc.*, 141 F.4th 1343, 1348-49 (11th Cir. 2025) (declaration describing enrollment and appending the contract is "competent evidence" satisfying the initial burden). Under *Air-Con*, the movant's initial burden is one of production. *Air-Con*, 21 F.4th at 174-75. EverQuote has met it.

Plaintiff instead asks the Court to draw an adverse inference—that records not attached to the motion "do not say what the movant needs them to say." ECF No. 63 at 9-10. Plaintiff identifies no spoliation, discovery violation, or other basis for the adverse inference he seeks. And the FAC's allegations about what EverQuote's systems "would confirm" are pleaded largely on information and belief. ECF No. 63 at 8; FAC ¶¶ 74, 81, 89, 96, 99. Speculation about the other side's records is not the specific record evidence *Air-Con* requires. *Air-Con*, 21 F.4th at 174-75 & n.8.

### 2. *Bourque* and *Katzeff* Are on Point, and Plaintiff's Attempt To Distinguish Them Fails.

Judges of this District have rejected the move Plaintiff makes here. In *Bourque*, Judge Burroughs held that a plaintiff "offering only his declaration" created no genuine dispute, because a mere "lack of memory ... is hardly affirmative evidence of non-receipt." *Bourque v. Rollins, Inc.*, 764 F. Supp. 3d 11, 16 (D. Mass. 2025) (quoting *Haag v. United States*, 485 F.3d 1, 3 (1st Cir. 2007)). And in *Katzeff*, Judge Kobick compelled arbitration despite the consumer's statement that she could not recall having "submitted [her] phone number or other personal information" on the website. *Katzeff v. Toyota of Dartmouth, Inc.*, No. 1:25-cv-12022-JEK, 2026 WL 1602100, at *2 (D. Mass. June 4, 2026); *id.* at *5-7 (compelling arbitration).

Plaintiff attempts to distinguish the cases on two grounds. ECF No. 63 at 8. First, he argues that *Bourque* and *Katzeff* involved a failure of memory, whereas he offers an unequivocal denial. That is a difference of degree, not kind—both are uncorroborated, self-serving assertions aimed at records tying the submission to his own number. A general denial of the facts on which the right to arbitration rests is not enough—the non-movant must identify specific record evidence of a

material factual dispute. *See Air-Con*, 21 F.4th at 174-75 & n.8. Plaintiff's own authority pairs an "unequivocal denial" with "supporting affidavits and evidence." ECF No. 63 at 6 (citing *Dixon v. Michael Kors Retail, Inc.*, 468 F. Supp. 3d 409, 413 (D. Mass. 2020)). Although the Opposition invokes Mr. Hossfeld's "sworn Declaration," ECF No. 63 at 2-4, 6-8, none was filed—it attaches only two orders from other actions. Plaintiff has thus offered no evidence at all—less even than the declaration *Bourque* held insufficient. Even crediting the unfiled declaration, his "corroborating" circumstances—DNC registration and a pending suit against Farmers—are an argument about likelihood, not evidence of who used the form. His second ground—that EverQuote never carried its threshold burden—restates his *Weingrad* objection and fails with it. *See infra* Section II.A.3.

Courts confronting this posture agree. In *Silva*, a TCPA plaintiff swore she "never signed any agreement" with the defendant; the court compelled arbitration because "[s]tanding alone, a self-serving affidavit is not sufficient to place the existence of an arbitration agreement in genuine dispute," and because her "matching phone number [was] sufficient to attribute the electronic signature" with the remaining identifiers undisputed. *Silva v. Better Tax Relief, LLC*, No. EP-25-CV-308-KC, slip op. at 7 n.5, 10-11 (W.D. Tex. June 23, 2026) (attached as Exhibit 1). Here, Hossfeld disputes the email address but not the telephone number.

### 3.    *Weingrad* Does Not Control and Is Distinguishable.

*Weingrad* was an interlocutory order in a different case, involving a different plaintiff and a different record. It binds no one in this action—though the Opposition presents it as this Court's own ruling. *See supra* p. 1. It is also distinguishable. *Weingrad* turned on two features, and neither is present here. The first was the record. The declaration there tied the submission to nothing but the plaintiff's number and an unrelated email address, and the court found "a dearth of information

tying Weingrad to the business record that EverQuote relies on." *Weingrad*, 2026 WL 2056767, at *3. The second was the response. The plaintiff there did not stop at a denial—he "offer[ed] an alibi," *id.*, swearing he was offline in an all-day deposition. Both are missing here. The submission carried an email handle formed from Plaintiff's own name, and Hossfeld's declaration offers no alibi and no account of his whereabouts on March 4. *Weingrad* states the standard EverQuote satisfies: arbitration follows upon "some persuasive factual showing that it was indeed Plaintiff who provided his telephone number and clicked the button in question." *Id.*

In the alternative, if a genuine factual dispute remains, the FAA's command is to "proceed summarily to the trial thereof," 9 U.S.C. § 4—not to deny the motion. *See Lamonaco*, 141 F.4th at 1347-48 (genuine formation dispute requires "a summary trial"). EverQuote renews its request that the Court proceed summarily to trial of that narrow formation question, with a jury as the parties have alternatively demanded. ECF No. 44 at 19-20; ECF No. 63 at 20-21.

**B.     The Website Interface Formed an Enforceable Agreement Under Massachusetts Law.**

Plaintiff's fallback—that even the person who clicked "Get My Quotes" formed no contract—is the second formation question, and it too is for the Court. It fails under the framework the First Circuit applied in affirming this Court's own order compelling arbitration. *Toth v. Everly Well, Inc.*, 118 F.4th 403, 406 (1st Cir. 2024). Under Massachusetts law, formation turns on whether the terms were "reasonably communicated and accepted"—reasonable notice and a reasonable manifestation of assent; labels—"browsewrap," "clickwrap," "hybrid"—decide nothing. *Toth*, 118 F.4th at 410 (quoting *Kauders v. Uber Techs., Inc.*, 486 Mass. 557, 571-72 (2021)); *Cullinane v. Uber Techs., Inc.*, 893 F.3d 53, 62 (1st Cir. 2018). One who assents "is bound by its terms whether [s]he reads and understands them or not." *Toth*, 118 F.4th at 411-12 (internal quotation marks and citations omitted).

EverQuote's Website satisfies both prongs. Directly below the "Get My Quotes" button sat a "clear, unambiguous disclosure." Contois Decl. ¶¶ 11, 13-14. Its opening words, "By clicking Get My Quotes and submitting this form," tie the click to the hyperlinked Terms of Use—blue and underlined—and the disclosure names the arbitration provision and the E-SIGN Consent. *Id.* ¶¶ 14-16. Hyperlinks presented this way provide reasonable notice. *Good v. Uber Techs., Inc.*, 494 Mass. 116, 131-32 (2024) (terms link "not buried on a cluttered screen"); *Cullinane*, 893 F.3d at 62-63 (hyperlinks are "commonly blue and underlined"; these are). Plaintiff's principal answer— no checkbox, ECF No. 63 at 12, 15—misstates Massachusetts law. *Kauders* treats button and box identically—assent may be manifested "by clicking or checking a box"—its illustration enforced an "Accept" button. *Kauders*, 486 Mass. at 574 (citing *Emmanuel v. Handy Techs., Inc.*, 442 F. Supp. 3d 385, 389 (D. Mass. 2020)). The First Circuit affirmed in *Emmanuel* itself—assent by "select[ing] 'Accept,'" no checkbox. *Emmanuel v. Handy Techs., Inc.*, 992 F.3d 1, 4-5, 8-9 (1st Cir. 2021); *see also Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 513-16 (9th Cir. 2023) (California and Massachusetts law; "Sign in" and "Place Order" button assent, no checkbox).

That design is not "browsewrap," where terms are merely "posted on the website typically as a hyperlink at the bottom of the screen." *Kauders*, 486 Mass. at 579 n.26. Here, the operative act of assent, the click, is expressly linked to the terms by the immediately adjacent disclosure, the same "direct and unambiguous" connection Judge Kobick enforced in *Schwartz v. HelloFresh SE*, No. 1:25-cv-12222-JEK, 2026 WL 161514, at *4-5 (D. Mass. Jan. 21, 2026). The notice there sat "immediately below the 'Sign Up' button" stating "[b]y clicking Sign Up, you are indicating that you have read and agree" to the linked terms. *Id.* at *5 (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 237 (2d Cir. 2016)); *see Kauders*, 486 Mass. at 580 (citing *Nicosia* with approval).

Nor does the button-above, text-below sequence defeat notice. In *Meyer v. Uber*

*Technologies, Inc.*, 868 F.3d 66, 78-79 (2d Cir. 2017)—cited approvingly in *Good*, 494 Mass. at 131-32—the notice, "By creating an Uber account, you agree" to hyperlinked terms, "appear[ed] directly below the buttons"; because "[t]he entire screen [was] visible at once" and the notice was "spatially coupled" with the click, a reasonably prudent user was on notice. This disclosure sits the same way—immediately beneath the button, its first words quoting the button's own label. *Tejon v. Zeus Networks, LLC*, 174 F.4th 1322 (11th Cir. 2026), is not to the contrary. Applying Florida law, that court refused to enforce a hyperlink "written in small, gray text" that was "among the smallest and least visible text on the page," within a notice that "does not say anything about arbitration." *Id.* at 1324-25, 1328. EverQuote's link was blue and underlined, and its disclosure names the arbitration provision on its face. Neither defect exists here.

Plaintiff's authorities involve designs bearing no resemblance to this one. *Gaker v. Citizens Disability, LLC*, 654 F. Supp. 3d 66 (D. Mass. 2023) (Kelley, J.), involved a sweepstakes page with terms "printed in small font at the very bottom of the page," "such that a user could—and in all likelihood, would—click on the button without ever reaching" them. *Id.* at 75-76. Nothing here sits at the bottom of a page or separates the button from the disclosure. *Kauders* is likewise inapposite. There, the terms link sat at the very bottom of a registration screen with nothing telling the user that proceeding constituted assent. *Kauders*, 486 Mass. at 577-78. EverQuote's disclosure says exactly that, immediately adjacent to the button. Plaintiff's out-of-circuit authorities, *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 857-58 (9th Cir. 2022) (inconspicuous text following a large colored button)—a design the Ninth Circuit has since distinguished, enforcing notices "located directly on top of or below each action button," *Oberstein*, 60 F.4th at 517—and *Rojas v. GoSmith, Inc.*, No. 2:17-cv-281-JVB-JEM, 2020 WL 831585, at *3 (N.D. Ind. Feb. 20, 2020) (button text with no reference to any agreement) involve other jurisdictions' law. Plaintiff's own

7

exhibit confirms where the line runs. The *Carter* court held that a "Submit" button "directly below language alerting the user" that clicking it "constitutes assent to the Terms and Conditions and that those Terms and Conditions include an arbitration provision" was "either clickwrap or hybridwrap falling on the clickwrap side of the spectrum"—one it "likely would" have enforced had the movant been a party. *Carter v. Health Ins. King Agency, LLC*, No. 3:25-cv-00005-SHL-WPK, 2026 WL 2057433, at *6 (S.D. Iowa July 1, 2026). *Carter* thus confirms a separate checkbox is unnecessary—and unlike the *Carter* movant, EverQuote enforces its own Terms on its own site.

**C.      The Delegation Clause Reserves Plaintiff's Remaining Challenges for the Arbitrator.**

EverQuote agrees that formation is for the Court. *Coinbase, Inc. v. Suski*, 602 U.S. 143, 149 (2024) ("the court determines whether a valid arbitration agreement exists"); *Toth*, 118 F.4th at 409-11. But once the Court resolves the two formation questions, its inquiry ends: "[W]henever parties form a valid and enforceable delegation agreement, the FAA compels courts to send the entire action to arbitration." *Toth*, 118 F.4th at 410. Section 2 provides: "All issues are for the arbitrator to decide, including, without limitation, issues relating to the applicability and enforceability of this arbitration agreement." Contois Decl. ¶ 19. That language, with the incorporation of the AAA Rules, is "clear and unmistakable" evidence of intent to delegate. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019); *Bossé v. N.Y. Life Ins. Co.*, 992 F.3d 20, 27 & n.7 (1st Cir. 2021). Unless a party specifically challenges the delegation provision itself, the Court must enforce it. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70-72 (2010). Plaintiff directs no argument at the delegation clause besides his formation theory.

Plaintiff's scope, pronoun, E-SIGN, and class waiver arguments all assume a contract was concluded and then attack its reach, meaning, or validity. Those are questions of "applicability and enforceability," assigned to the arbitrator. *Toth*, 118 F.4th at 409-10. In *Carter*, the court kept

8

arbitrability for itself only because the movant, Health Choice Now, was a stranger to the provisions it invoked. One agreement named only a different entity, and the other post-dated the dispute and never named it, so neither clearly and unmistakably delegated arbitrability as to a nonparty. *Carter*, 2026 WL 2057433, at *6-10. EverQuote is the opposite of the *Carter* movant. It is the operator of auto.everquote.com, enforcing its own Terms against the party whose number and name-based email were entered on its form, Contois Decl. ¶¶ 6, 9, 14, under Terms of Use that name EverQuote, Inc. Ex. B (ECF No. 44-2), E-SIGN Consent (defining "us" to include, "without limitation, EverQuote, Inc."). *Schein* and *Bossé* control.

**D.     Plaintiff's Remaining Arguments Belong to the Arbitrator and Fail in Any Event.**

On scope, Section 2 reaches all disputes "aris[ing] out of or relat[ing] in any way to these Terms or your use of the Site or the Content," and is "intended to be broadly interpreted." Contois Decl. ¶ 19. The challenged calls went to the number entered on the form, in purported reliance on the disclosure's consent. *Starling v. OnProcess Tech., Inc.*, No. 1:23-cv-10949-JEK, 2024 WL 1258501 (D. Mass. Mar. 25, 2024) (Kobick, J.), is misplaced. AT&T there invoked, by equitable estoppel, an internet-service agreement signed by the plaintiff's sister—a contract the plaintiff never made—and the court held her TCPA claim did not "flo[w] directly from" that agreement. *Id.* at *2, *6. Here EverQuote invokes the very submission that, on its records, supplied Plaintiff's number and consent; whether that "use of the Site" occurred or authorized the calls is a dispute "relat[ing]" to the Site. His March 9-11 carve-out fails too. By his own account, those calls resulted from resale of the March 4 lead, FAC ¶¶ 46-56, and so also relate to the submission.

On the "you" pronoun, Plaintiff isolates one word from a disclosure he says he never read. Contract language is read in context, and construction against the drafter is a last resort. The sentence Plaintiff attacks is the TCPA consent sentence, not the assent sentence. The assent

sentence states that the user "affirm[s]" agreement to "this website's" Privacy Policy and Terms of Use—and "this website" is EverQuote's own auto.everquote.com. Contois Decl. ¶¶ 6, 14. The arbitration agreement sits within those Terms, and Section 2 itself defines the parties: references to "you" and "us" expressly "include our respective subsidiaries, affiliates, agents, employees, predecessors in interest, successors and assigns." Ex. B § 2; Contois Decl. ¶ 19; *cf. Oberstein*, 60 F.4th at 510-12 (rejecting entity-identification attack on online terms). *Mantha v. QuoteWizard.com, LLC*, No. 1:19-cv-12235-LTS, 2021 WL 6061919, at *8 (D. Mass. Dec. 13, 2021) (Sorokin, J.), addressed seller identification for TCPA consent, not arbitration formation.

On E-SIGN, the statute is enabling, not restrictive: an agreement "may not be denied legal effect, validity, or enforceability solely because it is in electronic form." 15 U.S.C. § 7001(a). Its consumer-disclosure provisions apply only where a separate statute requires information "in writing," § 7001(c)(1), and Plaintiff identifies none. E-SIGN validates electronic agreements without adding formation elements—and the challenge is, in any event, for the arbitrator.

Lastly, the class waiver rises and falls with the Motion. ECF No. 63 at 19. Section 2 bars any class proceeding, Contois Decl. ¶ 20, and if the agreement was formed, the waiver is enforceable and arbitration proceeds individually. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). The non-severability clause triggers only if a formed contract's waiver is held invalid on its own terms; Plaintiff identifies no such ground—only his formation theory—and its operation is in all events an enforceability question for the arbitrator.

III.    **CONCLUSION**

For the foregoing reasons, EverQuote respectfully requests the Court compel individual arbitration of Plaintiff's claims and dismiss or stay this action, or, alternatively, proceed summarily under 9 U.S.C. § 4 to trial of the narrow question whether Plaintiff agreed to arbitrate.

Dated: July 31, 2026

Respectfully submitted,

*/s/ Christopher B. Parkerson*
Christopher B. Parkerson, (BBO#662952)
Campbell Conroy & O'Neil, P.C.
20 City Square, Suite 300
Boston, MA 02129
Telephone: (617) 241-3075
cparkerson@campbell-trial-lawyers.com

-and-

Eric J. Troutman (*pro hac vice)*
Tori L. Guidry (*pro hac vice*)
Blake H. Landis (*pro hac vice*)
Troutman Amin, LLP
400 Spectrum Center Drive
Suite 1450
Irvine, CA 92618
Telephone: (949) 350-3663
Facsimile:(949)203-8689
tori@troutmanamin.com

*Counsel for Defendant EverQuote, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 31, 2026, a copy of the foregoing was filed electronically and served by other electronic means on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by e-mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

*/s/ Christopher B. Parkerson*
Christopher B. Parkerson

11