# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| BARBARA SILVA, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | **EP-25-CV-308-KC** |
| | § | |
| BETTER TAX RELIEF, LLC, | § | |
| | § | |
| *Defendant*. | § | |

## ORDER TO COMPEL ARBITRATION AND STAY PROCEEDINGS

Before the Court is Defendant Better Tax Relief, LLC's Motion to Compel Arbitration and Stay Proceedings, ECF No. 14 [hereinafter "Mot."]. This case was assigned to United States District Judge Kathleen Cardone, who then referred the Motion to the undersigned Magistrate Judge.[1] For the reasons set forth herein, Defendant's Motion is **GRANTED**.

### I.      BACKGROUND

On August 12, 2025, Plaintiff initiated this suit against Defendant, a financial services company. Compl., ECF No. 1; *see also* Mot. 1. In her Complaint, Plaintiff alleges Defendant engaged in an unlawful telemarketing campaign beginning in April 2025, in violation of 47 U.S.C. § 227(b), Texas Business and Commerce Code § 305.053, and Texas Business and Commerce Code § 302.101. Compl. ¶¶ 35, 74–91. After appearing in this matter, Defendant moved the Court

---

[1]      As a threshold matter, this Court must determine the scope of its authority to rule on the issues presented. District judges are authorized to designate magistrate judges to hear and determine non-dispositive pretrial matters, other than those excepted by 28 U.S.C. § 636(b)(1)(A), and refer all other matters for report and recommendation. § 636(b)(1)(B); Local Rules app. C, R. 1(c)–(d). For the reasons articulated by this Court in *Apodaca v. SCI Tex. Funeral Servs., LLC*, EP-25-CV-50-KC at 3 n.2 (W.D. Tex. Dec. 3, 2025), the Court concludes it is authorized to decide the motion to compel arbitration.

to compel Plaintiff to submit to arbitration and stay the action during the pendency of any arbitration proceedings. Mot. 22.

In its Motion, Defendant states that while visiting Lendvia.com ("Website"), a website used by Defendant to market its services, Plaintiff consented to valid arbitration agreements covering Plaintiff's claims. Mot. 1–4. In support of these assertions, Defendant submitted a declaration by Chase Webb, Vice President of Business Strategies for Defendant, Decl. Chase Webb, ECF No. 14-1 [hereinafter "Decl."], accompanied by exhibits Webb identified as (1) the Terms of Use in effect as of August 1, 2023 and July 1, 2024, *id.* at ¶ 14; (2) two consent certificates generated on September 3, 2023 and March 12, 2025, *id.* at ¶¶ 24–25; and (3) the video recordings linked to each certificate, which replayed the user's activity during the registration process, *id.* at ¶ 26; *see* Mot. Ex. E [hereinafter "Ex. E"]; Mot. Ex. F [hereinafter Ex. F"].

In response, Plaintiff challenges the evidence used to support the Motion and contends Defendant did not meet its burden to prove the existence of an enforceable agreement to arbitrate. Pl.'s Opp. Def.'s Mot. Compel Arb. 5–10, ECF No. 17 [hereinafter "Resp."]. Plaintiff also submits an affidavit in which she denies signing an agreement with Defendant or its affiliates, Aff. Pl. Barbara Silva Supp. Opp. Def.'s Mot. Compel Arb. ¶ 7, ECF No. 17-1 [hereinafter "Aff."], arguing that even if Defendant met its initial burden of proof, the affidavit is sufficient to place the existence of the arbitration agreement at issue such that the Motion should not be granted, Resp. 8–9.

## II.    LEGAL STANDARD

The Federal Arbitration Act "permits an aggrieved party to file a motion to compel arbitration when an opposing 'party has failed, neglected, or refused to comply with an arbitration agreement.'" *Am. Bankers Ins. Co. of Fla. v. Inman*, 436 F.3d 490, 493 (5th Cir. 2006) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991)) (citing 9 U.S.C. § 4).

2

"[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). Determining whether parties agreed to arbitrate a dispute "involves two considerations (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Axiall Can., Inc. v. MECS, Inc.*, No. 21-30105, 2023 WL 4015229, at *2 (5th Cir. June 14, 2023) (quoting *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257–58 (5th Cir. 1996)). While both questions are typically addressed by the court, this analysis changes where the power to rule on arbitrability is delegated to an arbitrator. *See Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016) (citing *Will–Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003); *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)). In such instances, while the court undertakes the first step as it ordinarily would, its remaining task is simply to determine "whether the purported delegation clause is in fact a delegation clause." *Id.* at 202 (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010)). Where it finds a valid delegation clause exists, the court need only find that the parties agreed to arbitrate, as any remaining determinations regarding the scope of the agreement will be reserved for the arbitrator. *See id.*

After completing this first step, the court must consider "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006) (quoting *Mitsubishi Motors*, 473 U.S. at 628). However, where "no party has argued that external legal constraints have foreclosed the arbitration of the claims at issue in this case, [a court] need only conduct the first step of the analysis to resolve the arbitrability question." *Id.*; *see also Webb*, 89 F.3d at 259–60.

If the court finds an agreement to arbitrate exists and sees no legal or equitable basis for its revocation, the FAA "mandates that [the court] *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4).

## III.    DISCUSSION

Here, neither party disputes that the written agreement contains a valid delegation clause, nor do they contend that external legal constraints bar arbitration. Accordingly, if the Court determines that a valid arbitration agreement exists, it must order the parties to proceed to arbitration.[2]

In considering whether a valid arbitration agreement exists, the Fifth Circuit has held that Section 4 of the FAA places the initial burden on the moving party to present "competent evidence" of formation. *Gallagher v. Vokey*, 860 F. App'x 354, 357–58 (5th Cir. 2021). Evidence submitted in support of a motion to compel arbitration is evaluated for admissibility under the same standards that govern evidence presented in support of a motion for summary judgment. *Trujillo v. Volt Mgmt. Corp.*, 846 F. App'x 233, 236 (5th Cir. 2021) (citing *In re Jebbia*, 26 S.W.3d 753, 756–57 (Tex. App.—Houston [14th Dist.] 2000)). Accordingly, courts "typically consider evidence unless the objecting party can show that it could not be reduced to an admissible form at trial." *Matter*

---

[2]    Even if Plaintiff disputed whether a delegation clause exists, such an argument would be unavailing based on the evidence before the Court. A delegation clause contained in a valid arbitration agreement is binding where "it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated." *Kubala*, 830 F.3d at 202 (citing *Rent-A-Ctr., W., Inc.*, 561 U.S. at 68–69). Given that both clauses clearly reflect an intent to reserve questions of arbitrability for the arbitrator, *see* Decl. 25 (providing "[t]he arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute arising out of or relating to the . . . applicability . . . of [the 2023] Agreement to Arbitrate"); *id.* at 35 (stating claims arising between Plaintiff and Defendant's affiliates "are for determination by the arbitrator including, but not limited to, arbitrability of an issue, the scope of [the 2024 Agreement's] arbitration provision, and whether you or we have waived the right to arbitration."), any determinations regarding the scope of the agreement should be reserved for the arbitrator.

*of Ala. & Dunlavy, Ltd.*, 983 F.3d 766, 774 (5th Cir. 2020) (citing Fed. R. Civ. P. 56(c)(2); *Maurer v. Indep. Town*, 870 F.3d 380, 384 (5th Cir. 2017)).

Once this burden is met, the non-movant must place the existence of a contract "in issue." *Gallagher,* 860 F. App'x at 357–58. Only after the existence is placed "in issue" does the burden return to the movant "to prove the existence of an agreement to arbitrate by a preponderance of the evidence" during an evidentiary hearing. *Chester v. DirecTV, LLC*, 607 F. App'x 362, 364 (5th Cir. 2015) (citing *Banks v. Mitsubishi Motors Credit of Am., Inc.,* 435 F.3d 538, 540 (5th Cir. 2005) (per curiam)).

**A. Plaintiff's evidentiary objections to the consent videos are overruled.**

Before determining whether Defendant has met its initial burden, the Court must first address Plaintiff's objections to Defendant's evidence. Plaintiff asks that the Court exclude the video exhibits in its determinations, arguing Defendant failed to authenticate the videos or show that the recorded signatures are attributable to Plaintiff. Resp. 5–8.

**1. *The consent videos are sufficiently authenticated.***

"Authentication is a low burden, requiring only a showing 'sufficient to support a finding that the item is what the proponent claims it is.'" *Allen v. Hays*, 812 F. App'x 185, 193 (5th Cir. 2020) (citing Fed. R. Evid. 901(a)). Where a party seeks to authenticate evidence from an electronic source, the proponent need only proffer "testimony by a witness with direct knowledge of the source, stating that the exhibit fairly and fully reproduces it." *Weinhoffer v. Davie Shoring, Inc.*, 23 F.4th 579, 582 (5th Cir. 2022) (quoting *Thompson v. Bank of Am. Nat. Ass'n*, 783 F.3d 1022, 1027 (5th Cir. 2015)); *see* Fed. R. Evid. 901(b)(1).

Here, Webb testifies he has personal knowledge regarding the "function of the Website," operation of the registration process, and maintenance of records collected during that process.

5

Decl. ¶¶ 3–4.  Plaintiff's unsupported argument that Webb lacks "personal knowledge of the vendor's processes," Resp. 6, without any evidence contradicting his testimony, is insufficient to undermine Defendant's showing on this element.  Thus, given that Webb further declares the videos are true and correct "replays of the user's exact website activity during each registration process," Decl. ¶ 26, the Court finds the authentication requirements have been met.[3]

### 2. *Defendant has shown that the consent records are attributable to Plaintiff.*

In Texas, "[a]n electronic record or electronic signature is attributable to a person if it was the act of the person." Tex. Bus. & Com. Code § 322.009(a).[4]  A party may show a record is the "act" of a person "in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable."  *Id.*  Further illustrating these provisions, the Texas Supreme Court has held that security procedures sufficient to identify a signatory may include:

> requiring personal identifying information—such as a social security number or an address—to register for an account; assigning a unique identifier to a user and then tying that identifier to the user's actions; maintaining a single, secure system for tracking user activities that prevents unauthorized access to electronic records; business rules that require users to complete all steps in a program before moving on or completing it; and timestamps showing when users completed certain actions.

*Aerotek, Inc. v. Boyd*, 624 S.W.3d 199, 205–06 (Tex. 2021) (collecting cases).

Here, the Court finds Defendant employs security procedures closely tracking those deemed sufficient by the Texas Supreme Court.  As shown by Defendant, the Website begins

---

[3] Even if Defendant's use of a third-party vendor to facilitate, generate, and maintain video consent records *did* raise an authentication issue, Plaintiff has not shown that the videos could not be authenticated by other means at trial – for example, through testimony from an employee of the vendor.  Accordingly, at this stage of the litigation, a finding that Defendant failed to authenticate the videos would not necessarily require the Court to exclude them from its considerations.  *See Matter of Ala.*, 983 F.3d at 774 (citing Fed. R. Civ. P. 56(c)(2)).

[4] The term "electric signature" refers to "an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record."  Tex. Bus. & Com. Code § 322.002(8).

recording users' activity as they complete the clickwrap agreement. Decl. ¶ 18. As users proceed through the three-part registration process, the Website's registration portal requires them to provide their names, home addresses, e-mail addresses, social security numbers, and phone numbers. *Id.* at ¶¶ 8, 10, 12. Upon execution of the clickwrap agreement, the system automatically generates a consent certificate, which assigns each user a unique "Certificate ID," identifies the date and time the user visited the Website, and saves the video replay of the user's activities. *Id.* at ¶ 17. A user's consent certificate and information is not saved unless the user completes each step in the registration process. *Id.* at ¶ 19. Once created, the consent records are immediately accessible to Defendant but stored on secured servers maintained by a third-party vendor. *Id.* at ¶¶ 19, 20.

Defendant has likewise shown that it employed each of these security measures during the execution of the clickwrap agreements at issue. The evidence submitted by Defendant demonstrates that on September 3, 2024 and March 12, 2025, a user completed each prompt for personal information, supplying Plaintiff's personal identifying information to complete the application. *See* Decl. ¶¶ 24–35; Ex. E; Ex. F.[5] Thereafter, consent records were generated which recorded Plaintiff's website activity during the registration process, Decl. ¶ 26; Ex. E; Ex. F, and were then maintained pursuant to the procedures described above, Decl. ¶ 23. Accordingly, the Court finds that Defendant met its burden to prove the electronic signatures were attributable to Plaintiff. *See Aerotek, Inc.*, 624 S.W.3d at 205–06.

Defendant's objections to the consent videos are thus overruled.

---

[5]     While Defendant has not established that *all* the information entered into the application is consistent with Plaintiff's personal contact information, Defendant's uncontroverted evidence indicate that, at minimum, Plaintiff's phone number was supplied at Step 3 of each application. Ex. E; Ex. F; Decl. ¶ 33. Because Plaintiff does not assert that the remaining identifying information shown in the videos is inaccurate, the Court concludes that the matching phone number is sufficient to attribute the electronic signature to Plaintiff.

**B. Defendant produced competent evidence that an agreement to arbitrate was formed.**

"Determining whether a valid arbitration agreement exists is a question of state contract law." *Trujillo*, 846 F. App'x at 235 (citing *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 688 (5th Cir. 2018). Under Texas law, a valid contract exists where there is "(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding," and (6) consideration. *See Huckaba*, 892 F.3d at 689 (quoting *In re Capco Energy, Inc.*, 669 F.3d 274, 279-80 (5th Cir. 2012)); *see also In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006) (citing *In re AdvancePCS Health L.P.,* 172 S.W.3d 603, 607 (Tex. 2005) (per curiam); *In re Halliburton Co.*, 80 S.W.3d 566, 569–70 (Tex. 2002)).

With respect to the first requirement, Defendant's evidence shows that on September 3, 2024 and March 12, 2025, Defendant requested that Plaintiff click a "SUBMIT" button to "express her understanding and consent electronically via E-sign that [she] acknowledge[d], agree[d], and consent[ed] to the Privacy Policy and Terms of Use." Decl. ¶¶ 32–35; Ex. E; Ex. F. Embedded in each request was a hyperlink connecting Plaintiff to the Terms of Use. *See* Decl. ¶ 11. In pertinent part, the 2023 Terms of Use included an "Arbitration Agreement & Class Action Waiver" which provided:

> **You agree that any and all disputes or claims that have arisen or may arise between you and** . . . Better Tax Relief LLC . . ., including claims under 47 U.S.C. § 227 et. seq. and related state statues, **shall be resolved exclusively through final and binding arbitration, rather than in court, except that if your claims are under $1000.00 you may assert claims in small claims court, if your claims qualify. The Federal Arbitration Act governs the interpretation and enforcement of this Agreement to Arbitrate section (this "Agreement to Arbitrate").**

*Id.* at 24. The 2024 Terms of Use similarly stated:

8

**THESE TERMS PROVIDE THAT ALL DISPUTES BETWEEN YOU AND US WILL BE RESOLVED BY BINDING ARBITRATION. YOU GIVE UP YOUR RIGHT TO GO TO COURT TO ASSERT OR DEFEND YOUR RIGHTS. YOU ALSO GIVE UP YOUR RIGHT TO PARTICIPATE IN OR BRING CLASS ACTIONS. YOUR RIGHTS WILL BE DETERMINED BY NEUTRAL ARBITRATORS AND NOT A JUDGE OR JURY.**
**You agree that any and all disputes or claims that have arisen or may arise between you and** . . . Better Tax Relief LLC. . ., including claims under 47 U.S.C. § 227 et. seq. and related state statues, shall be resolved exclusively through final and binding arbitration, rather than in court, except that if your claims are under $1000.00 you may assert claims in small claims court, if your claims qualify.

*Id.* at 34.[6] Accordingly, Defendant produced competent evidence to show an offer was made.

Defendant's Declaration and exhibits next show that Plaintiff checked the box and clicked "SUBMIT" to demonstrate her understanding and acceptance of the terms of each agreement. Decl. ¶¶ 32–35; Ex. E; Ex. F; *see Ellison v. Three Rivers Acq. LLC*, No. 13-17-00046-CV, 2022 WL 17663839, at *6 (Tex. App. Dec. 15, 2022) (citing *City of the Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 720 (Tex. App. 2008)) ("A meeting of the minds occurs if there is a mutual understanding and assent to the agreement regarding the subject matter and the essential terms of the contract.").[7] Thus, Defendant has likewise produced competent evidence to establish the second, third, and fourth elements.

As to the remaining requirements, the parties' shared intention to be bound by their agreements is demonstrated by use of compulsory language in the arbitration clauses, *see* Decl. 24

---

[6] In an effort to avoid arbitration, Plaintiff further argues Defendant was not reasonably disclosed as a non-signatory to the arbitration agreement. Resp. 9–10. However, the Court finds Defendant has shown that Plaintiff's intent to confer the benefits of the arbitration agreement upon Defendant was "clearly and fully spelled out," given that both arbitration agreements explicitly designate Better Tax Relief, LLC as a party to the agreement. *See* Decl. 24, 34; *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 635 (Tex. 2018) (quoting *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999)). Accordingly, the Court finds that a valid third-party beneficiary clause exists. *See id.* (quoting *In re Palm Harbor Homes, Inc.*, 195 S.W.3d at 677) (citing *In re NEXT Fin. Grp., Inc.*, 271 S.W.3d 263, 267 (Tex. 2008)) (holding arbitration agreements may "be enforced by third-party beneficiaries, so long as 'the parties to the contract intended to secure a benefit to that third party and entered into the contract directly for the third party's benefit'").

[7] For the reasons stated above, the Court finds Defendant has produced competent evidence to show these actions were attributable to Plaintiff.

("any and all disputes or claims that have arisen or may arise between you and . . . Better Tax Relief LLC . . . *shall* be resolved exclusively through final and binding arbitration" (emphasis modified)); *id.* at 34 (same). Evidence of consideration is further found where, as here, the agreements contained bilateral promises to arbitrate. *See In re Palm Harbor Homes, Inc.*, 195 S.W.3d at 676 (citing *In re AdvancePCS,* 172 S.W.3d at 607). Defendant has therefore provided competent evidence establishing each element of contract formation for both arbitration agreements.

The burden thus shifts to Plaintiff to place the existence of the arbitration agreement "in issue."

### C. Plaintiff failed to place the existence of the arbitration agreement "in issue."

In support of her opposition brief, Plaintiff submitted an affidavit in which she declared, *inter alia*, that she "never signed any agreement with Defendant or its purported affiliates." Aff. ¶ 7. However, Plaintiff did not offer, nor does the record contain, any evidence to corroborate her declaration. *See* Resp.

To place the existence of an arbitration agreement "in issue," a non-movant must "unequivocally deny[] entering the contract" *and* "produc[e] evidence sufficient to substantiate" her denial. *Soni v. Solera Holdings, LLC*, No. 21-10428, 2022 WL 1402046, at *3 (5th Cir. 2022) (citing *T & R Enters., Inc. v. Cont'l Grain Co.*, 613 F.2d 1272, 1278 (5th Cir. 1980)); *Dillard v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1154 (5th Cir. 1992)). Standing alone, a self-serving affidavit is not sufficient to place the existence of an arbitration agreement in genuine dispute. *Butler v. Z&H Foods, Inc.*, No. 21-20086, 2021 WL 4073110, at *1 (5th Cir. Sept. 7, 2021) (citing *Am. Heritage Life Ins. Co. v. Orr,* 294 F.3d 702, 710 (5th Cir. 2002)). Therefore, Plaintiff has failed to place the existence of the agreement in issue. *See Butler*, 2021 WL 4073110,

at *1 (agreement's existence not in issue where plaintiffs offered affidavits stating they had not signed the agreement but failed to offer any corroborative evidence); *Am. Heritage Life Ins. Co.*, 294 F.3d at 710 (same).

The Court thus finds that there is a valid arbitration agreement between the parties. Accordingly, the parties shall be ordered to proceed to arbitration.

## IV.    CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant Better Tax Relief, LLC's Motion to Compel Arbitration and Stay Proceedings, ECF No. 14, is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff shall initiate arbitration proceedings within 30 days of entry of this order and all proceedings in this case will be stayed pending the outcome of arbitration.

**SIGNED** this 23rd day of June, 2026.

**ROBERT F. CASTAÑEDA**
**UNITED STATES MAGISTRATE JUDGE**